**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., CAPITAL ONE, N.A., CAPITAL ONE SERVICES, LLC, FROST BANK, and CULLEN/FROST BANKERS, INC., <br><br> Defendants. | Civil Action No. 4:25-cv-00230 <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS FROST BANK AND CULLEN/FROST BANKERS, INC.'S MOTION TO
DISMISS PLAINTIFFS WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH
CORP.'S COMPLAINT FOR PATENT INFRINGEMENT**

i

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ......................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................... 2

III.   LEGAL STANDARD .................................................................................................. 4

A.  Pleading Requirement Under *Iqbal/Twombly* ................................................. 4

B.  Inducement of Infringement ............................................................................. 5

C.  Marking Statute ................................................................................................. 5

IV.   WAPP FAILS TO PLAUSIBLY STATE ANY CLAIM FOR RELIEF ........................... 7

A.  WAPP Fails to Sufficiently Plead Direct Infringement ................................... 7

1.  WAPP's Infringement Allegations Fail to Provide Frost with Sufficient Notice of the Allegedly Infringing Activity ............................................................ 8

2.  WAPP's Complaint Fails to Sufficiently Plead Infringement of Claim 1 of the '678 Patent ........................................................................................................... 13

3.  WAPP's Complaint Fails to Sufficiently Plead Infringement of Claim 1 of the '864 Patent ........................................................................................................... 20

4.  WAPP's Complaint Fails to Sufficiently Plead Infringement of Claim 1 of the '811 Patent and Claim 15 of the '579 Patent ................................................... 13

5.  WAPP's Complaint Fails to Sufficiently Plead Infringement of Claims 1 and 60 of the '192 Patent ................................................................................................. 12

B.  WAPP Fails to Sufficiently Plead Induced Infringement ............................. 24

C.  WAPP Failed to Sufficiently Plead a Claim for Pre-Suit Damages Under the Marking Statute ............................................................................................... 27

V.   CONCLUSION .......................................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)..................................................................7

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
    6 F.3d 1523 (Fed. Cir. 1993)....................................................................7

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994)...................................................................28

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. (Arctic Cat I)*,
    876 F.3d 1350 (Fed. Cir. 2017)...........................................................6, 27

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. (Arctic Cat II)*,
    950 F.3d 860 (Fed. Cir. 2020)........................................................6, 27, 28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................4, 5, 10, 12, 13, 20, 24

*Barry v. Medtronic, Inc.*,
    914 F.3d 1310 (Fed. Cir. 2019)................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................4, 5, 9, 10, 12, 13, 20, 24

*Bos. Heart Diagnostics Corp. v. Harmonyx Diagnostics, Inc.*,
    No. 4:15-CV-378, 2015 WL 11118107 (E.D. Tex. Sept. 23, 2015).......................................24

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ............................................................4, 13

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*,
    631 F.3d 1279 (Fed. Cir. 2011)................................................................7

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)....1, 9, 10, 11, 20, 23

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-CV-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015) ....................................8

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)............................................................................5

*Dialect, LLC v. Bank of Am., N.A.*,
    No. 2:24-CV-00207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 4, 2024) ..............................25

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)...................................................................................................26

*Express Mobile, Inc. v. DreamHost LLC*,
    No. 1:18-CV-01173-RGA, 2019 WL 2514418 (D. Del. June 18, 2019)...............................28

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)......................................................................................................................5

*In re Bill Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)..........................................................................................4, 5, 26

*Lans v. Digital Equip. Corp.*,
    252 F.3d 1320 (Fed. Cir. 2001)....................................................................................................6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)....................................................................................................4

*Lubby Holdings LLC v. Chung*,
    11 F.4th 1355 (Fed. Cir. 2021) .....................................................................................................6

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007).....................................................................................................8

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014)....................................................................................................26

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
    No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) .........................26

*Mullen Indus. LLC v. Meta Platforms, Inc.*,
    No. 1:24-CV-354-DAE, 2025 WL 326402 (W.D. Tex. Jan. 29, 2025)............................13, 16

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
    No. 2:24-CV-00049-JRG, 2025 WL 1658927 (E.D. Tex. June 11, 2025) .............................25

*NorthStar Sys. LLC v. Volkswagen AG*,
    No. 2:22-CV-00486-JRG, 2023 WL 5723648 (E.D. Tex. Sept. 5, 2023) ........................10, 11

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..........................................................................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016).....................................................................................................5

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
   No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ..................................27

*Round Rock Research, LLC v. Oracle Corp.*,
   No. 4:11–CV–332, 2011 WL 11761563 (E.D. Tex. Oct. 25, 2011) ......................................11

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
   No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ..............................23

*Salazar v. HTC Corp.*,
   No. 16-CV-10960, 2018 WL 2041732 (E.D. Tex. May 1, 2018) ............................................6

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
   No. 5:19-CV-243-H, 2021 WL 3030066 (N.D. Tex. July 2, 2021) ........................................13

*Synchronoss Techs. v. Dropbox, Inc.*,
   987 F.3d 1358 (Fed. Cir. 2021) ..............................................................................................7

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
   785 F.3d 625 (Fed. Cir. 2015) ..............................................................................................24

*Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
   No. 2:13-CV-38-JRG, 2014 WL 894805 (E.D. Tex. Mar. 4, 2014) ..................................5, 24

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,
   887 F.3d 1117 (Fed. Cir. 2018)) ............................................................................................5

*VDPP, LLC v. General Motors Co.*,
   No. 1:23-CV-00956-RP, 2024 WL 4958307 (W.D. Tex. July 22, 2024)..............................10

*VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*,
   No. 2:24-CV-00093, 2024 WL 4519761 (E.D. Tex. Oct. 17, 2024) .....................................28

*WAPP Tech. Ltd. v. Bank of Am. Corp.*,
   No. 4:18-CV-519-ALM(E.D. Tex. July 20, 2018) ..............................................................2, 3

*WAPP Tech. Ltd. v. Bank of Am. N.A.*,
   No. 4:21-CV-00670-ALM (E.D. Tex. Aug. 27, 2021) .......................................................3, 29

*WAPP Tech. Ltd et al. v. Hewlett Packard Enterprise Co.*,
   No. 4:18-CV-468-ALM (E.D. Tex. July 2, 2018) ...................................................................2

*WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*,
   No. 4:23-CV-1137 (E.D. Tex. Dec. 22, 2023).....................................................................3, 4

*WAPP Tech. Ltd. v. Micro Focus Int'l PLC*,
   No. 4:18-CV-469-ALM (E.D. Tex. July 2, 2018) .........................................................2, 28, 29

*WAPP Tech. Ltd. v. Wells Fargo & Co.*,
     No. 4:18-CV -501-ALM (E.D. Tex. July 16, 2018) .............................................2, 3

*WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*,
     No. 4:21-CV -00671-ALM (E.D. Tex. Aug. 27, 2021) ......................................3, 29

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
     No. 2:17-CV-00456-JRG, 2018 WL 6787356 (E.D. Tex. Nov. 14, 2018)..............................7

## STATUTES

35 U.S.C. § 271(a)....................................................................................................7

35 U.S.C. § 271(b)....................................................................................................5

35 U.S.C. § 287...............................................................................................2, 28, 30

35 U.S.C. § 287(a)........................................................................................5, 6, 27, 28, 29

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 4, 12, 29

## I.    INTRODUCTION

Defendants Frost Bank and Cullen/Frost Bankers, Inc. (collectively, "Frost") respectfully move this Court to dismiss the Complaint (Dkt. 1) of WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP. (collectively, "WAPP" or "Plaintiffs") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The Complaint is legally deficient for at least three reasons.

*First*, WAPP has not sufficiently pleaded that Frost directly infringes any claim of the Asserted Patents.[1] Courts in this district have found that a conclusory mapping combined with screenshots is insufficient to set forth a plausible allegation of direct infringement. *See, e.g.*, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). Worse than the deficient complaint in *Chapterhouse*, WAPP's Complaint fails to even attempt a complete mapping for even *one* of the six identified claims across the five Asserted Patents. Instead, the Complaint makes generalized allegations and presents unexplained screenshots from Apple's and Google's websites related to the accused third-party products. This hand-waving description, however, does not come close to providing Frost with notice of how it allegedly infringes, and the Complaint's direct infringement allegations should be dismissed.

*Second*, the Complaint fails to plausibly allege indirect infringement, identifying no underlying direct infringer or direct act of infringement, much less offering any facts showing that Frost had the requite pre-suit knowledge of the patents or alleged infringement or the "specific intent" required to induce infringement.  WAPP's indirect allegations are insufficient as a matter of law.

---

[1] WAPP alleges that Frost infringes U.S. Patent Nos. 8,924,192 (the "'192 Patent"), 9,298,864 (the "'864 Patent"), 9,971,678 (the "'678 Patent"), 10,353,811 (the "'811 Patent"), and 10,691,579 (the "'579 Patent") (collectively, the "Asserted Patents").

***Third***, the Complaint fails to adequately plead a claim for pre-suit damages, because it does not plead compliance with the marking requirements under 35 U.S.C. § 287. The public record and the Complaint establish that WAPP has licensed others to make, use, and sell products that WAPP contends practice the Asserted Patents and that WAPP's licensees continue to implement those products. The Complaint, however, fails to allege that WAPP complied with § 287 either by providing actual notice to Frost or by having its licensees mark products that WAPP contends practice the Asserted Patents. WAPP therefore has not pleaded the necessary elements for a claim of past damages and that claim should be dismissed.

## II.    STATEMENT OF FACTS

On July 2, 2018, WAPP filed a patent infringement lawsuit against Micro Focus International PLC alleging Micro Focus's LoadRunner, Performance Center, StormRunner, and Mobile Center software products infringed three of the five Asserted Patents at issue in this case: the '192 Patent, the '864 Patent, and the '678 Patent. Dkt. 1, ¶ 102; *see also WAPP Tech. Ltd. v. Micro Focus Int'l PLC*, No. 4:18-CV-469-ALM, Dkt. 1 (E.D. Tex. July 2, 2018).[2] Around the same time, WAPP filed suit against Wells Fargo and Bank of America, asserting that their use of the accused Micro Focus software infringed the same three patents. Dkt. 1, ¶ 103; *see also WAPP Tech. Ltd. v. Wells Fargo & Co.*, No. 4:18-CV-501-ALM, Dkt. 1 (E.D. Tex. July 16, 2018); *WAPP Tech. Ltd. v. Bank of Am. Corp.*, No. 4:18-CV-519-ALM, Dkt. 1 (E.D. Tex. July 20, 2018). The Court stayed the actions against Wells Fargo and Bank of America under the customer-suit exception. Dkt. 1, ¶ 103. In 2021, WAPP entered settlement agreements with Micro Focus, Wells Fargo, and Bank of America. *Id.* ¶ 102; *WAPP Tech. Ltd. v. Wells Fargo & Co.*, No. 4:18-CV-

---

[2] WAPP also filed a lawsuit against Hewlett Packard Enterprise Company on July 2, 2018. *See WAPP Tech. Ltd et al. v. Hewlett Packard Enterprise Co.*, No. 4:18-CV-468-ALM (E.D. Tex. July 2, 2018). That case was dismissed with prejudice on September 20, 2021.

501-ALM, Dkt. 197 (E.D. Tex. Jan. 11, 2022) (dismissing case against Wells Fargo with prejudice); *WAPP Tech. Ltd. v. Bank of Am. Corp.*, No. 4:18-CV-519-ALM, Dkt. 170 (E.D. Tex. Sept. 20, 2021) (dismissing case against Bank of America with prejudice). WAPP has not pleaded that Micro Focus, Wells Fargo, or Bank of America ceased their use of the allegedly practicing Micro focus products, nor has it pleaded that those products were marked with the asserted patent numbers following WAPP's grant of license rights.

Following the Micro Focus litigation, WAPP filed a second round of lawsuits against Wells Fargo and Bank of America in 2021, this time alleging that their use of different products— Apple's Xcode and Google's Android Studio—infringed all five Asserted Patents. *See e.g.*, *WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671-ALM, Dkt. 1 (E.D. Tex. Aug. 27, 2021); *WAPP Tech. Ltd. v. Bank of Am. N.A.*, No. 4:21-CV-00670-ALM, Dkt. 1 (E.D. Tex. Aug. 27, 2021). WAPP eventually entered confidential settlements with both Wells Fargo and Bank of America and dismissed the cases with prejudice. Dkt. 1, ¶¶ 104-05; *see also WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671-ALM, Dkt. 138 (E.D. Tex. Nov. 28, 2022); *WAPP Tech. Ltd. v. Bank of Am. N.A.*, No. 4:21-CV-00670-ALM, Dkt. 159 (E.D. Tex. Jan. 25, 2023). WAPP has not pleaded that Wells Fargo or Bank of America ceased their use of the allegedly practicing Apple and Google products, nor has it plead that those products were marked with the asserted patent numbers following WAPP's grant of license rights.

WAPP filed a similar suit against JPMorgan Chase in 2023, again asserting the five Asserted Patents based on the use of Apple's Xcode and Google's Android Studio. Dkt. 1, ¶ 106; *see also WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*, No. 4:23-CV-1137, Dkt. 1 (E.D. Tex. Dec. 22, 2023). That case, too, ended in a confidential settlement and dismissal with prejudice. Dkt. 1, ¶ 106; *see also WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*, No. 4:23-CV-1137, Dkt.

3

95 (E.D. Tex. Mar. 11, 2025). WAPP has not pleaded that JPMorgan Chase ceased its use of the allegedly practicing Apple and Google products, nor has it pleaded that those products were marked with the asserted patent numbers following WAPP's grant of license rights. To the contrary, WAPP's Complaint describes Xcode and Android Studio as widely used software tools for developing mobile applications. Dkt. 1, ¶¶ 37, 40, 114.  Yet, at no point before WAPP served its Complaint—more than two months after filing and a decade after the first Asserted Patent issued—did WAPP provide notice of alleged infringement.

## III.    LEGAL STANDARD

### A.    Pleading Requirement Under *Iqbal/Twombly*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the plaintiff need not "prove its case at the pleading stage," (*In re Bill Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)), the complaint must "place the alleged infringer on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal citations and quotations omitted). A claim satisfies this standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are not enough. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."). Thus, "failure to allege facts that

plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss." *In re Bill*, 681 F.3d at 1342.

## B.    Inducement of Infringement

To state a claim for induced infringement under 35 U.S.C. § 271(b), a complaint must plausibly allege "(1) that a third party, or the defendant in combination with a third party, has performed acts sufficient to constitute infringement; (2) that the defendant knew of the patent and that the acts in question would infringe; and (3) that the defendant had specific intent to encourage the third party's infringement." *Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-CV-38-JRG, 2014 WL 894805, at *2 (E.D. Tex. Mar. 4, 2014). Induced infringement requires "knowledge of the existence of the patent that is infringed." *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015) (explaining that liability under Section 271(b) "can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement'") (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). The intent necessary for a claim of "[i]nducement can be found where there is [e]vidence of active steps taken to encourage direct infringement." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (quoting *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018)). Furthermore, a claim of induced infringement can stand only if there is direct infringement by a third party. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).

## C.    Marking Statute

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover [pre-suit] damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) (hereinafter "*Arctic*

*Cat I''*); 35 U.S.C. § 287(a). The marking obligation also arises if the patentee's licensees make or sell practicing products. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (hereinafter "*Arctic Cat II*"). "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat I*, 876 F.3d at 1366; *Salazar v. HTC Corp.*, No. 16-CV-10960, 2018 WL 2041732, at *2 (E.D. Tex. May 1, 2018) (noting that it is Plaintiff "who best knows whether its articles (or its licensees' articles) have been marked, and has the burden of pleading and proving compliance with the marking requirement."); *see also Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (holding that non-cognizable damages claims relating to marking may be ruled on at the motion to dismiss stage).

To satisfy the notice requirements of § 287(a), a patentee who makes or sells patented articles (or has licensees who purportedly practice the patents) must either provide actual notice—*i.e.*, an "affirmative communication of a specific charge of infringement by a specific accused product or device"—or constructive notice—*i.e.*, marking of the patented products. *Arctic Cat II*, 950 F.3d at 864; 35 U.S.C. § 287(a). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Id.* (internal citations and quotations omitted).

Where a patentee has licensed the patent to others, the patentee must take "reasonable efforts" to ensure that any licensees to the patent mark their practicing products with the applicable patent numbers. *Arctic Cat I*, 876 F.3d at 1366. A patentee obligated to mark that fails to comply with the marking statute bears the consequences—"he is not entitled to damages before the date of actual notice." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1359 (Fed. Cir. 2021).

The marking requirement applies where a patent includes both method and apparatus claims and the patentee does not unequivocally assert only method claims in its complaint. *See,*

*e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("[I]f a single patent contains both apparatus claims and method claims, the marking requirement applies to all the claims.") (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1539 (Fed. Cir. 1993)). Once a patentee asserts apparatus claims, the marking obligation applies even where the apparatus claim assertions later are withdrawn to leave only method claims. *See, e.g.*, *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 6787356, at *1 (E.D. Tex. Nov. 14, 2018) ("[O]nce apparatus and method claims are asserted, … the requirements of the marking statute are triggered"—even where "the apparatus claims are later dropped.").

## IV.    WAPP FAILS TO PLAUSIBLY STATE ANY CLAIM FOR RELIEF

### A.    WAPP Fails to Sufficiently Plead Direct Infringement

A plaintiff alleging direct infringement must plead facts that show the defendant "makes, uses, offers to sell, or sells" a complete patented invention. 35 U.S.C. § 271(a). "Direct infringement by 'use' of a claimed system requires use of each and every element of the system." *Synchronoss Techs. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011)).

WAPP alleges direct infringement of claims 1 and 60 of the '192 Patent, claim 1 of the '864 Patent, claim 1 of the '678 Patent, claim 1 of the '811 Patent, and claim 15 of the '579 Patent, asserting that Frost's alleged use of Apple's Xcode and Google's Android Studio infringes each of the asserted clams. However, WAPP's direct infringement allegations are fundamentally deficient. WAPP relies on conclusory assertions and unexplained screenshots from Apple's and Google's websites illustrating general functionalities of Xcode and Android Studio, without specifying how Frost's alleged use of these tools purportedly satisfies any limitation of the asserted

claims or linking the screenshots or illustrated functionalities to any limitation of the claims. For these reasons and the additional reasons detailed below, the Complaint fails to allege facts plausibly suggesting that Frost's use of the accused Xcode and Android Studio tools meets *every* element of the asserted claims. These deficiencies render WAPP's direct infringement allegations implausible.

### 1.    WAPP's Infringement Allegations Fail to Provide Frost with Sufficient Notice of the Allegedly Infringing Activity

In the context of patent infringement, WAPP must "plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at \*2 (E.D. Tex. June 3, 2015) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). Although "detailed factual allegations are not required . . . a complaint must allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id*. at \*2 (internal quotations marks and citations omitted).

The allegations in WAPP's Complaint fall far short of that standard. ***First***, the Complaint fails to adequately allege that Frost infringes each and every element of the asserted claims. Instead, in the counts of infringement sections, the Complaint merely alleges, without more, that Frost's use of the accused Xcode and Android Studio tools infringes each of the asserted claims. *See* Dkt. 1, ¶ 122 (alleging Frost infringes claim 1 of the '192 Patent when Frost's "employees or agents use Apple's Xcode or Google's Android Studio" without identifying how any such purported use meets each element of claim 1); *see also id.* ¶¶ 137, 151, 165, 179. The Complaint contains no explanation as to how Frost's purported use satisfies *any* element of the asserted claims and, for most of the patents, does not even quote or otherwise reference any claim language of the asserted claims. Such blanket assertions of "use" are insufficient to provide Frost with adequate

notice of its alleged infringing conduct. *See Chapterhouse*, 2018 WL 6981828, at *2; *see also*

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (holding that fair notice of a claim

"requires a 'showing' rather than a blanket assertion of an entitlement to relief") (citing *Twombly*,

550 U.S. 555)).

**Second**, beyond failing to assert how Frost's alleged use of the tools purportedly infringes,

the Complaint also fails to map *any* features of Xcode and Android Studio to *any* specific element

of the asserted claims. More specifically, while the Complaint purports to include broad

descriptions of Xcode and Android Studio features and seemingly random screenshots from

Apple's and Google's websites regarding those tools, the Complaint fails to explain how any of

the described features or illustrated functionalities purportedly correspond to any element of any

claim of the Asserted Patents. *See* Dkt. 1, ¶¶ 47-63. As just one example, in the Authoring Mobile

Applications subsection of the Complaint, WAPP states:

> Xcode also includes tools to monitor the performance of an
> application while it is running. Xcode provides tools to monitor the
> mobile application, regardless of whether it is executing on a
> physical device or an emulated device. Properties such as network
> characteristics, processor usage, memory usage, and disk usage can
> be monitored and displayed to enable the developer to optimize the
> performance of the mobile application: [followed by unexplained
> screenshot].

*Id.* ¶ 53. The rest of the allegations in the subsection similarly fail to provide any explanation as to

how the referenced features and relied upon screenshots purportedly map to claim elements. *See*

*id.* ¶¶ 47-63.

Although courts have acknowledged that screenshots may be useful in laying out plausible

allegations of patent infringement, a plaintiff must still "allege *how* the screenshots meet the text

of the exemplary claim in order to lay out sufficient factual allegations which might permit the

Court to find that the *Iqbal*/*Twombly* standard is met." *Chapterhouse*, 2018 WL 6981828, at *2

(emphasis added). Indeed, courts in this district and other courts within the Fifth Circuit have repeatedly dismissed complaints that fail to provide more than generic descriptions and unexplained screenshots, holding that such allegations are insufficient to plausibly state a claim for direct infringement. *See, e.g.*, *id.*; *VDPP, LLC v. General Motors Co.*, No. 1:23-CV-00956-RP, 2024 WL 4958307, at *3 (W.D. Tex. July 22, 2024) (dismissing infringement claims where the plaintiff "relie[d] only on a link to [a] [] website, a single screenshot, and select quotes" in support of its allegations; citing cases from this district and within the Fifth Circuit addressing sufficiency of pleadings and finding conclusory allegations based on unexplained screenshots deficient under *Twombly/Iqbal*).

But WAPP's method of pleading does not even rise to the level of allegations that courts in this district have dismissed. *See, e.g.*, *Chapterhouse*, 2018 WL 6981828, at *2 (dismissing plaintiff's claim even though plaintiff provided supporting screenshots for every element of the asserted claims, because it failed to explain how those screenshots "link to the claim element they purportedly illustrate"); *NorthStar Sys. LLC v. Volkswagen AG*, No. 2:22-CV-00486-JRG, 2023 WL 5723648, at *2 (E.D. Tex. Sept. 5, 2023) (granting motion under 12(b)(6) where plaintiff did not "allege *how* [defendant] uses the inventions claimed in the Patents-in-Suit"). For example, in *Chapterhouse*, the court noted that "to its credit," the plaintiff provided an exemplary claim and broke the exemplary claim into individual elements. *Chapterhouse*, 2018 WL 6981828, at *2. But the use of screenshots as purported factual allegations was not enough to lay out a plausible allegation of direct infringement. *Id.* The court explained that a plaintiff must further allege how screenshots meet the text of the exemplary claim. *Id.* Here, WAPP does not even provide a mapping to an exemplary claim or indicate how the relied upon screenshots relate to any specific claim limitation. As seen above in the reproduced example paragraph (*see also* Dkt. 1, ¶¶ 49-62),

WAPP's allegations largely do not quote any language from the Asserted Patents, do not map the described features of Xcode and Android Studio or screenshots from Apple's and Google's websites to any exemplary claim, or provide anything beyond unexplained screenshots and bare-bones assertions that each of the tools performs various functions.

Similarly, in *NorthStar*, the court noted that plaintiff did "little more than parrot the claim language." But, like in *Chapterhouse*, the court noted that plaintiff in *NorthStar* broke out the elements of the claim, copied them, and set forth bare allegations about the accused products based on the language of the claim element and allegedly supporting screenshots for each element. *NorthStar*, 2023 WL 5723648, at *3. Here, again, the Complaint does not even break out the elements of any claim. There are over twenty claim elements across the six claims identified in the Complaint. But the Complaint does not bother to identify any exemplary claim in the factual allegations section, much less break it into elements or provide factual allegations of infringement for any element of any particular claim of the Asserted Patents. Instead, the Complaint presents allegations in a confusing and indiscriminate manner and that are not specifically tied to any claim elements of any of the patents.

By failing to articulate how the accused products infringe each limitation of the asserted claims, let alone how Frost's purported use of the accused products allegedly infringes any limitation, the Complaint leaves Frost guessing as to how Frost's activities purportedly amount to infringement. But, as courts in this district have held, it is the plaintiff's burden to provide clear notice of the infringement theory, not the defendant's obligation to reverse-engineer it. *See Round Rock Research, LLC v. Oracle Corp.*, No. 4:11–CV–332, 2011 WL 11761563, at *1 (E.D. Tex. Oct. 25, 2011) ("[C]laims must include enough factual allegations 'to raise a right to relief above the speculative level.'") (citing *Twombly*, 550 U.S. at 555).

For at least these reasons, WAPP's Complaint fails to provide Frost with adequate notice of how Frost allegedly infringes and thus plead sufficient factual matter to state a plausible claim of direct patent infringement under *Iqbal* and *Twombly*. Accordingly, WAPP's direct infringement claims should be dismissed under Rule 12(b)(6).

### 2.    WAPP's Complaint Fails to Sufficiently Plead Infringement of Claims 1 and 60 of the '192 Patent

Claim 1 of the '192 Patent requires "a software authoring interface . . . configured to simulate *a network connection state* encountered by the mobile device." Dkt 1, Ex. A at 14:53-59 (emphasis added). Although the Complaint does not actually map any functionality of Apple Xcode or Google Android Studio to this limitation or any other limitation of Claim 1, in the section entitled "FACTUAL ALLEGATIONS," the Complaint appears to include generic allegations related to the purported operation of the tools. *See id.* ¶¶ 47-63. But beyond unexplained screenshots and high-level and seemingly unrelated references to device connections (Dkt. 1, ¶ 58) and network conditions (Dkt. 1, ¶¶ 48, 51–52, 58–59), WAPP's Complaint fails to explain what constitutes the claimed "network connection state" or if and how any of the cited screenshots demonstrate that either tool simulates a network connection state as required by the claim. As a result, Frost is without notice of how Xcode or Android Studio purportedly meet this limitation. Thus, WAPP's allegations regarding Claim 1 of the '192 Patent fail to meet the *Twombly*/*Iqbal* standard for pleading a plausible claim of direct infringement and dismissal is warranted.

The allegations regarding Claim 60 of the '192 Patent are also deficient because WAPP's infringement "analysis" merely parrots the claim language. *See* Dkt. 1, ¶ 125 (alleging that Frost infringes by making, using, selling, offering for sale, and/or importing infringing mobile banking applications and then asserts that the Frost application is the claimed system and was developed using the claimed "software authoring platform configured to . . ."). It is well established that such

parroting of claim language, without additional factual support, is insufficient to state a claim of infringement. *See, e.g.*, *NorthStar*, 2023 WL 5723648, at *3; *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *4 (N.D. Tex. July 2, 2021) (dismissing claim where complaint alleged that a product infringed a claim but failed to identify the parts of the product that performed or met the limitations); *Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-CV-354-DAE, 2025 WL 326402, at *5 (W.D. Tex. Jan. 29, 2025) (dismissing claim where plaintiff "'simply parrot[ed] claim language without explaining what facts show[ed] how the accused product practice[d]'" the claim); *see also Bot M8*, 4 F.4th at 1353 ("[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."). For this additional reason, dismissal is appropriate.

### 3. WAPP's Complaint Fails to Sufficiently Plead Infringement of Claim 1 of the '811 Patent and Claim 15 of the '579 Patent

WAPP's Complaint fails to address explicit elements of the asserted claims of both the '811 and '579 Patents. For example, claim 1 of the '811 Patent requires software instructions for developing a mobile application that, when executed, cause a computer to "correspond the utilization of a specific displayed resource at a given time *with one or more functions of the application* responsible for that utilization." Dkt. 1, Ex. D at 15:16-36 (emphasis added). The section of the Complaint purporting to describe the Apple Xcode and Google Android Studio tools simply parrots the claim language, stating that "Xcode[/Android Studio] can also be used to correspond the utilization of the displayed resources with the functions of the application responsible for that utilization," and then for Xcode adds that the function may be performed "by using the Time Profiler." Dkt. 1, ¶¶ 54, 62. The Complaint then includes a screenshot of the Xcode

Time Profiler feature and a screenshot of the Android Studio CPU profiler without any explanatory narrative.



*Id.* ¶ 54.

## Inspect CPU activity with CPU Profiler  🔖 ▾

| On this page
| CPU Profiler overview

Optimizing your app's CPU usage has many advantages, such as providing a faster and smoother user experience and preserving device battery life.

You can use the CPU Profiler to inspect your app's CPU usage and thread activity in real time while interacting with your app, or you can inspect the details in recorded method traces, function traces, and system traces.

The detailed information that the CPU Profiler records and shows is determined by which recording configuration you choose:

- **System Trace:** Captures fine-grained details that allow you to inspect how your app interacts with system resources.

- **Method and function traces:** For each thread in your app process, you can find out which methods (Java) or functions (C/C++) are executed over a period of time, and the CPU resources each method or function consumes during its execution. You can also use method and function traces to identify *callers* and *callees*. A caller is a method or function that invokes another method or function, and a callee is one that is invoked by another method or function. You can use this information to determine which methods or functions are responsible for invoking particular resource-heavy tasks too often and optimize your app's code to avoid unnecessary work.

When recording method traces, you can choose *sampled* or *instrumented* recording. When recording function traces, you can only use sampled recording.

*Id.* ¶ 62. But nothing in the above screenshots provides any indication that Xcode's Time Profiler or Android Studio's CPU Profiler purportedly meets the claimed "correspond" limitation. And the Complaint fails to identify what the "functions of the application responsible for that utilization" are, or how correspondence of the two is purportedly achieved at a specific point in time as required by the claim. Again, this lack of factual detail fails to establish a plausible basis for infringement.

Claim 1 of the '811 Patent further requires software instructions that cause a computer to "display a list of a plurality of mobile device models from which a user can select, wherein each model includes one or more characteristics indicative of a corresponding mobile device." Dkt. 1, Ex. D at 15:16-22. For Android Studio, the Complaint states only that Android Studio "includes tools to execute the compiled application on a variety of mobile devices or device models (Android Virtual Devices)" (Dkt. 1, ¶ 58) and provides the following screenshot.

15

# Run apps on the Android Emulator 🔖 ▾

**On this page**
Get started with the emulator
  Emulator system requirements
  Create an Android Virtual Device
  Run your app on the emulator
  Navigate the emulator
Update the emulator

The Android Emulator simulates Android devices on your computer so that you can test your application on a variety of devices and Android API levels without needing to have each physical device. The emulator offers these advantages:

- **Flexibility:** In addition to being able to simulate a variety of devices and Android API levels, the emulator comes with predefined configurations for various Android phone, tablet, Wear OS, and Android TV devices.

- **High fidelity:** The emulator provides almost all the capabilities of a real Android device. You can simulate incoming phone calls and text messages, specify the location of the device, simulate different network speeds, simulate rotation and other hardware sensors, access the Google Play Store, and much more.

- **Speed:** Testing your app on the emulator is in some ways faster and easier than doing so on a physical device. For example, you can transfer data faster to the emulator than to a device connected over USB.

In most cases, the emulator is the best option for your testing needs. This page covers the core emulator functionalities and how to get started with it.

Alternatively, you can deploy your app to a physical device. For more information, see Run apps on a hardware device.

*Id.* Nothing in the screenshot indicates how the claim requirement of displaying "a list of a plurality of mobile device models" is purportedly met. The screenshot does not suggest that Android Studio displays "a list of a plurality of mobile device models" as required, let alone a list that includes "characteristics indicative of a corresponding mobile device." Nor does the Complaint include any other allegations or evidence suggesting that Android Studio purportedly displays the claimed list. The Complaint therefore also fails to plausibly allege how Android Studio meets the "display" limitation of claim 1 of the '811 Patent. *See Mullen Indus.*, 2025 WL 326402, at *5 (dismissing

16

direct infringement claim where complaint failed to plausibly allege that the accused products performed the claimed functionality).

Similarly, claim 15 of the '579 Patent requires software instructions for developing a mobile application that, when executed, cause a computer to "select one or more characteristics associated with a mobile device." Dkt. 1, Ex. E at 24:59-62. Unlike claim 1 of the '811 Patent, this claim does not merely require displaying a list or associating characteristics with devices—it requires the computer to actively perform a selection of characteristics. WAPP's Complaint fails to identify how either Xcode or Android Studio purportedly performs such a selection, what specific characteristics are purportedly selected, or how the selection process purportedly occurs. *See* Dkt. 1, ¶¶ 47–63. In fact, the Complaint fails to even allege that either tool performs the "select" requirement. Instead, the Complaint relies on vague references to the tools' general functionalities without connecting them to the claim's requirements. As with claim 1 of the '811 Patent, WAPP's allegations are entirely devoid of the facts necessary to support a plausible inference of infringement.

### 4.    WAPP's Complaint Fails to Sufficiently Plead Infringement of Claim 1 of the '678 Patent

WAPP fails to plausibly plead direct infringement of asserted claim 1 of the '678 Patent. Claim 1 of the '678 Patent requires "a software testing interface configured to simultaneously visually simulate . . . a plurality of operator network characteristics including at least bandwidth availability . . . wherein the bandwidth availability is based at least in part on *bandwidth data predetermined from interactions between one or more mobile devices and at least one operator network*." Dkt. 1, Ex. C at 15:23-26 (emphasis added). Thus, the language of the claim demands more than general simulation. The Complaint fails to adequately address these requirements for both Apple Xcode and Google Android Studio.

17

For example, while the Complaint does not actually map any functionality of Apple Xcode to the limitations of claim 1, in the section entitled "FACTUAL ALLEGATIONS," the Complaint appears to suggest that developers using Xcode can simulate "[n]etwork properties such as bandwidth, packet loss, and latency (*see id.* ¶ 52) and includes, without further explanation, the screenshots reproduced below.



*Id.* ¶ 52 (allegedly demonstrating Xcode's "Device Conditions" feature).



*Id.* (allegedly demonstrating Xcode's "Network Link Conditioner Utility" feature). But neither this paragraph nor any other paragraph of the Complaint suggests that Xcode purportedly simulates "bandwidth availability" that "is based at least in part on *bandwidth data predetermined from interactions* between one or more mobile devices and at least one operator network," as required by claim 1.

The Complaint's description of Google's Android Studio is even less detailed, as it does not include any allegation or evidence suggesting that the tool can visually simulate bandwidth availability at all, let alone based on "predetermined" bandwidth data. *See* Dkt. 1, ¶¶ 56-63. Rather, it simply indicates that developers using the Android Studio can simulate a variety of "[n]etwork properties such as speed and latency" (*see* Dkt. 1, ¶ 59) and includes an unexplained screenshot reproduced below.



*Id.* ¶ 59 (allegedly demonstrating Android Studio's "Android Virtual Device Manager" feature).
Like the screenshots from Apple's website, nothing in the above screenshot from Google's website
provides any indication that Android Studio purportedly simulates "*bandwidth availability*" that
"is based at least in part on *bandwidth data predetermined from interactions* between one or more
mobile devices and at least one operator network," as required by claim 1.

The Complaint's utter ignoring of swaths of claim language fails to provide Frost with
notice of how the accused Xcode and Android Studio tools are alleged to infringe the '678 Patent,
and dismissal is appropriate. *See Chapterhouse*, 2018 WL 6981828, at *2 ("Plaintiff must further
allege *how* the screenshots meet the text of the exemplary claim in order to lay out sufficient factual
allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.")
(emphasis added).

### 5.  WAPP's Complaint Fails to Sufficiently Plead Infringement of Claim 1 of the '864 Patent

Claim 1 of the '864 Patent requires "software configured to simulate . . . network
characteristics" that "are *based on data of interaction [sic] with networks in non-simulated
environments*." Dkt. 1, Ex. B at 23:26-28 (emphasis added). The Complaint fails to allege that
Apple Xcode or Google Android Studio simulates network characteristics in the manner claimed.
*See id.* ¶¶ 47-63.

With respect to Apple Xcode, as explained above with respect to the '678 Patent, the
Complaint appears to suggest that developers using Xcode can simulate "[n]etwork properties such
as bandwidth, packet loss, and latency" (*see id.* ¶ 52) and then includes the same two unexplained
screenshots discussed above. *See supra* § IV.A.2. WAPP's Complaint also broadly asserts—again,
without reference to any language of the claim—that Xcode can purportedly monitor "network

characteristics" such as "processor usage, memory usage, and disk usage" (Dkt. 1, ¶ 53) and provides the following screenshots, reproduced below.



*Id.* (allegedly demonstrating Apple's "Xcode: Instruments" feature).



*Id.* (allegedly demonstrating Apple's "Xcode: CPU Report" feature). None of the relied upon screenshots, however, suggest that the alleged simulated network conditions are "based on data of interaction with networks in non-simulated environments." *See* Dkt. 1, ¶¶ 47–55. Nor does the Complaint allege otherwise. *See id.*

Similarly, the Complaint's allegations regarding Google's Android Studio also are deficient. *See* Dkt. 1, ¶¶ 56–63. At best, the Complaint merely asserts that Android Studio can simulate "[n]etwork properties such as speed and latency" (*id.* ¶ 59) and "monitor performance of the application while it is running (*id.* ¶ 60). It does not allege or even suggest that the simulated network properties are "based on data of interaction with networks in non-simulated environments." The screenshots from Google's website likewise do not show that Android Studio simulates network properties as claimed. *See supra* § IV.A.2; *see also* Dkt. 1, ¶ 60 (screenshot reproduced below).



*Id.*

Here again, the Complaint's reliance on vague descriptions and screenshots that are not linked to any claim language leaves Frost without notice of WAPP's infringement theory for the '864 Patent. As a result, Frost cannot meaningfully assess the plausibility of WAPP's allegation, and dismissal is appropriate. *See e.g.*, *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *3-4 (E.D. Tex. June 28, 2016); *Chapterhouse*, 2018 WL 6981828, at *1-2.

* * *

As detailed above, WAPP's Complaint fails to map *any* of the relied upon screenshots or referenced functionalities of the accused software development tools to any specific element of any claim of the Asserted Patents. *See* Dkt. 1, ¶¶ 47-63. Instead, the Complaint offers broad descriptions of Xcode and Android Studio features followed by seemingly random screenshots

without explaining how these features purportedly infringe any particular claim of any Asserted Patent. *Id.* But even the broad descriptions of the Xcode and Android Studio features and unexplained screenshots, as best as Frost can understand them, fail to provide any indication that the accused Xcode and Android Studio tools include functionality that purportedly meets each and every element of the asserted claims of the Asserted Patents. WAPP's direct infringement allegations for all five Asserted Patents therefore fall below the standard set forth by *Twombly* and *Iqbal* and should therefore be dismissed in their entirety.

### B.    WAPP Fails to Sufficiently Plead Induced Infringement

As an initial matter, because WAPP's direct infringement claims are insufficient as a matter of law, WAPP's indirect infringement claims likewise fail. But even if WAPP's direct infringement claims against Frost somehow are found to be sufficient, its indirect infringement claims against Frost fail for the additional reasons that WAPP has failed to identify any alleged underlying direct infringer who Frost purportedly has induced to infringe. The Complaint also fails to plead the requisite knowledge and intent to infringe the Asserted Patents. For all of these reasons, the Court should dismiss the Complaint's indirect infringement allegations.

To adequately plead induced infringement, a complaint must demonstrate that a defendant (1) had knowledge of the patent, (2) knew that the induced acts of a third party constitute infringement, and (3) had a "specific intent" to induce the third party to infringe. *Tierra Intelectual Borinquen*, 2014 WL 894805, at \*2. In addition, the complaint must identify a direct infringer and allege that the third party directly infringes the patent as a result of the inducement. *See, e.g.*, *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (explaining that direct infringement is "necessary to find liability for induced infringement"); *Bos. Heart Diagnostics Corp. v. Harmonyx Diagnostics, Inc.*, No. 4:15-CV-378, 2015 WL 11118107,

at *6 (E.D. Tex. Sept. 23, 2015) ("[T]o survive a motion to dismiss [induced infringement], [a] complaint must plead facts that plausibly allege: 1. Direct infringement . . . ."). Here, WAPP has failed to adequately plead the requisite elements of inducement.

*First*, notwithstanding that the Complaint fails to state a claim of direct infringement by Frost, WAPP's Complaint fails to plead direct infringement by any third-party. Instead, WAPP's claims of induced infringement merely state that Frost has "induced" some unknown "third parties to author mobile applications on their behalf using Apple's Xcode or Google's Android Studio" and have "encourage[d] and intend[ed] to induce infringement . . . by instructing third parties to author applications." *See, e.g.*, Dkt. 1, ¶¶ 36, 39, 124, 139, 153, 167, 181. That is insufficient to state a claim for inducement. *See Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-00049-JRG, 2025 WL 1658927, at *4 (E.D. Tex. June 11, 2025) (dismissing indirect infringement claims where plaintiff failed to plausibly plead an underlying act of direct infringement).

*Second*, the Complaint fails to allege that Frost had pre-suit knowledge of any of the Asserted Patents *and* any alleged infringement of those patents. The Complaint provides no allegations of Frost's pre-suit knowledge of the Asserted Patents. *See, e.g.*, *CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*, 2:23-CV-00311-JRG, 2024 WL 1219725, at *6-7 (E.D. Tex. Mar. 20, 2024) (dismissing pre-suit indirect infringement allegations where complaint failed to plead any facts plausibly showing that defendant knew of the asserted patents prior to the lawsuit); *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-CV-00207-JRG, 2024 WL 4980794, at *2 (E.D. Tex. Dec. 4, 2024) (granting motion to dismiss claims for pre-suit induced, contributory, and willful infringement because complaint failed to plead any facts that could show that defendant had pre-suit knowledge of the asserted patents). Furthermore, the Complaint does not allege that Frost knew of any alleged infringement of the Asserted Patents or acted with any such knowledge to

allegedly induce infringement. *See* Dkt. 1, ¶¶ 36, 39, 124, 139, 153, 167, 181. The Complaint's inducement allegations regarding pre-suit conduct should be dismissed for this reason alone.

**Third**, absent knowledge of the Asserted Patents or alleged infringement, Frost could not have possessed any specific intent to induce infringement. Other than a conclusory statement that Frost "knowingly encourage[d] and intend[ed] to induce infringement" of the Asserted Patents, the Complaint does not contain any factual allegations that could plausibly support an inference of any specific intent by Frost. Dkt. 1, ¶¶ 124, 139, 153, 167, 181. A "specific intent" to induce infringement requires "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006). Yet the Complaint alleges only encouragement and instruction of some unknown third parties "to author applications compatible with Apple's iOS or Google's Android operating systems"—not encouragement of *infringement*. Dkt. 1, ¶¶ 124, 139, 153, 167, 181. The Complaint's generic, cookie-cutter statement that Frost encourages or instructs others to use a product—without alleging any facts showing that Frost took affirmative steps to encourage or instruct a third party to use the accused instrumentalities in an infringing manner—is insufficient to show that Frost took any "affirmative act to encourage *infringement* with knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014); *see also In re Bill*, 681 F.3d at 1339 (holding that "to survive a motion to dismiss" a claim of induced infringement "must contain facts plausibly showing that [defendant] specifically intended their customers to infringe [the asserted patent] and knew that the customer's acts constituted infringement"); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (dismissing induced infringement claims where the complaint

failed to contain any "facts alleging a specific intent to induce the direct infringer").

*Fourth*, given the fatal deficiencies in WAPP's direct infringement allegations, Frost lacks notice of what activity is being accused of infringement. *See supra* § IV.A. For similar reasons, WAPP's Complaint also fails to support a claim for post-suit active inducement. *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *5 (E.D. Tex. Nov. 17, 2020) (finding induced infringement claim could not survive where direct infringement claim was dismissed).

### C.    WAPP Failed to Sufficiently Plead a Claim for Pre-Suit Damages Under the Marking Statute

Despite claiming pre-suit damages,[3] asserting apparatus claims, and explicitly acknowledging that there are licensees to the Asserted Patents that appear to still be selling and using alleged practicing products (Dkt. 1, ¶¶ 102-106, 122, 125, 137, 151) ), WAPP fails to plead compliance with 35 U.S.C. § 287(a) and, therefore, its request for pre-suit damages should be dismissed.

Under § 287(a), a plaintiff in a case like this is limited to post-complaint damages unless it provides notice of infringement, "either by providing constructive notice—*i.e.*, marking products—or by providing actual notice to an alleged infringer." *Arctic Cat II*, 950 F.3d at 864. It is WAPP's burden to plead compliance with § 287(a), including for its licensees. *Arctic Cat I*, 876 F.3d at 1366 ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s

---

[3] For each Asserted Patent WAPP alleges that, as of the date of the Complaint, Frost "without authorization *ha[s] been* and [is] directly infringing" the Asserted Patents and that "[a]s a result of Defendants' infringement of the [Asserted Patents], Plaintiffs *have suffered* monetary damages, and seek recovery in an amount adequate to compensate for Defendants' infringement." Dkt. 1, ¶¶ 121, 134, 136, 148, 150, 162, 164, 176, 178, 190 (emphasis added). In other words, WAPP seeks to recover damages for alleged infringement occurring prior to filing its Complaint against Frost. *See id.* ¶ 194 (seeking "[a]n award of damages to [WAPP] arising out of Defendants' infringement of the Patents-in-Suit).

27

marking requirement. . . . A patentee's licensees must also comply with § 287."). The Complaint, however, fails to plead that Frost had actual notice of WAPP's infringement claims (*i.e.*, an "affirmative communication of a specific charge of infringement by a specific accused product or device") prior to WAPP filing this lawsuit on March 6, 2025. *See* Dkt. 1; *Arctic Cat II*, 950 F.3d at 864; *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (actual "notice must be of 'the infringement,' not merely notice of the patent's existence or ownership."). Nor does it plead that there exist any products that are marked with the Asserted Patent numbers so as to have provided Frost with constructive notice. *See* Dkt. 1. The Complaint likewise does not establish or even allege that WAPP has no obligation to have practicing products marked. *See id.* WAPP has therefore failed to plead compliance with the marking statute and its claim for past damages should be dismissed. *See Express Mobile, Inc. v. DreamHost LLC*, No. 1:18-CV-01173-RGA, 2019 WL 2514418, at *2 (D. Del. June 18, 2019) (granting a motion to dismiss a plaintiff's claim for past damages where the plaintiff did not plead compliance with the marking statute despite there being no evidence that there were any products for it to mark); *see also VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*, No. 2:24-CV-00093, 2024 WL 4519761 at *5 (E.D. Tex., Oct. 17, 2024) (granting in part defendant's motion to dismiss for failing to plead specific facts to support its conclusory allegation that no marking is required).

WAPP's prior litigation history, as detailed in the Statement of Facts, confirms the existence of licensees obligated to comply with § 287(a). In its 2018 lawsuit against Micro Focus, WAPP alleged that Micro Focus's LoadRunner, Performance Center, StormRunner, and Mobile Center software practiced the '192, '864, and '678 Patents. Dkt. 1, ¶ 102; *see also Wapp Tech. Ltd. v. Micro Focus Int'l PLC*, No. 4:18-CV-00469, Dkt. 1, ¶ 52 (E.D. Tex. July 2, 2018). In 2021, WAPP entered into a settlement agreement with Micro Focus, which, on information and belief,

likely covered all five Asserted Patents. Dkt. 1, ¶ 102. In its complaint against Micro Focus, WAPP also touted that its "Performance Engineering Innovations" were incorporated into licensed products that won industry awards, indicating the existence of licensees selling products practicing the Asserted Patents. *Wapp Tech. Ltd. v. Micro Focus Int'l PLC*, No. 4:18-CV-00469, Dkt. 1, ¶ 14 (E.D. Tex. July 2, 2018). Yet, the Complaint does not allege that Micro Focus or any other licensee marked these products with the relevant patent numbers. *See* Dkt. 1.

Similarly, WAPP licensed Wells Fargo and Bank of America in 2022 and JPMorgan in 2023 with respect to all five Asserted Patents for their use of Apple's Xcode and Google's Android Studio. Dkt. 1, ¶¶ 104–05; *see also Wapp Tech. Ltd. v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671-ALM, Dkt. 138 (E.D. Tex. Nov. 28, 2022); *Wapp Tech. Ltd. v. Bank of Am. N.A.*, No. 4:21-CV-00670-ALM, Dkt. 159 (E.D. Tex. Jan. 25, 2023). WAPP contended (and continues to contend in this case) that continued use of those products practices the five Asserted Patents, and the Complaint does not allege that WAPP's licensees have complied with § 287(a) by marking any allegedly practicing products. *See* Dkt. 1.

Given WAPP's failure to plead any facts demonstrating compliance with § 287(a) in the face of facts clearly demonstrating that a marking obligation applies, the Complaint's claim for pre-suit damages legally fails. Accordingly, Frost respectfully requests that the Court dismiss WAPP's claim for pre-suit damages with prejudice under Rule 12(b)(6).

## V.    CONCLUSION

WAPP's Complaint suffers from multiple critical deficiencies. Its direct infringement allegations do not provide any claim mapping, much less any factual allegations to plausibly allege infringement. Its indirect infringement allegations fail to identify any direct infringer or to plead any non-conclusory facts regarding pre-suit knowledge or specific intent to induce. And the

Complaint fails to plead any facts showing compliance with the notice requirements of § 287 to state a claim for pre-suit damages. For at least these reasons, Defendant Frost respectfully requests that the Court dismiss WAPP's Complaint for failure to state a claim upon which relief can be granted.

Dated: July 25, 2025

Respectfully submitted,

By: /s/ *Morgan G. Mayne*

Morgan G. Mayne
Bar No. 24084387
morgan.mayne@bakerbotts.com

Christa Brown-Sanford
Bar No. 24045574
christa.sanford@bakerbotts.com

Douglas M. Kubehl
Bar No. 00796909
doug.kubehl@bakerbotts.com

Emily Deer
Bar No. 24116352
emily.deer@bakerbotts.com

Alexis Robison
Bar No. 24137217
alexis.robison@bakerbotts.com

**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
(214) 953-6500
(214) 661-6503 – Fax

***ATTORNEYS FOR DEFENDANTS***
***FROST BANK AND CULLEN/FROST***
***BANKERS, INC.***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on the 25th day of July 2025. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

<u>*/s/ Morgan G. Mayne*</u>
Morgan G. Mayne

31