# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., CAPITAL ONE, N.A., CAPITAL ONE SERVICES, LLC, FROST BANK, and CULLEN/FROST BANKERS, INC., <br><br> Defendants. | Civil Action No.: 4:25-cv-00230 <br><br> **JURY TRIAL DEMANDED** |

## <u>CAPITAL ONE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)</u>

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ISSUE TO BE DECIDED ......................................................................................3

FACTUAL BACKGROUND ..................................................................................3

    A.    The Patent Specification ...........................................................3

    B.    The Patent Claims ....................................................................5

    C.    Procedural Background.............................................................6

LEGAL STANDARDS ..........................................................................................7

    A.    Motions To Dismiss Under Rule 12(b)(6) ..............................7

    B.    Patent Eligibility Under 35 U.S.C. § 101 ...............................7

ARGUMENT .........................................................................................................10

I.    THE ASSERTED CLAIMS ARE INELIGIBLE UNDER § 101 .................10

    A.    *Alice* Step One: The Asserted Claims Are Directed To An Abstract Idea ............10

        1.    The Asserted Claims Recite Result-Oriented Functional Language, Like The Ones In *Aftechmobile*, *Simio*, And Other Cases ........................10

        2.    The Asserted Claims Seek To Solve A Human Problem By Displaying Information To Assist Human Programmers ........................15

        3.    Claim 60 Of The '192 Patent Is Abstract For An Additional Reason ........................17

    B.    *Alice* Step Two: The Asserted Claims Add Nothing Inventive .............................19

II.    THE OTHER CLAIMS ARE INELIGIBLE UNDER § 101 .........................22

    A.    The Other Claims For Testing And Displaying Information Are Ineligible .........22

        1.    The Other Independent Claims For Testing And Displaying Information Are Materially The Same........................23

        2.    The Dependent Claims For Testing And Displaying Information Add Nothing Significant................25

    B.    The Server Storage Claims Are Ineligible .........................27

C.    The Cooperative Authoring Claims Are Ineligible................................................28

III.    THERE IS NO REASON TO DELAY HOLDING THE CLAIMS INELIGIBLE .........28

CONCLUSION.....................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) .................................................................................30

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ........................................................................ *passim*

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ........................................................................ *passim*

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
  853 F. App'x 669 (Fed. Cir. 2021) ................................................................... *passim*

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) ...........................................................7, 14, 18, 20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ......................................................................................... *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020) .................................................................................9

*Angel Techs. Grp., LLC v. Meta Platforms, Inc.*,
  2024 WL 4212196 (Fed. Cir. 2024) ........................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ...............................................................................22

*In re Bd. of Trs.*,
  991 F.3d 1245 (Fed. Cir. 2021) ...............................................................................17

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) .............................................................................20

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ...................................................................................................1

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ..........................................................................27

*CardioNet, LLC v. InfoBionic, Inc.*,
    2021 WL 5024388 ...........................................................................................................29

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019).........................................................................................19

*Chewy, Inc. v. Int'l Bus. Machines Corp.*,
    94 F.4th 1354 (Fed. Cir. 2024) .........................................................................................17

*Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)....................................................................................19, 23

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)..........................................................................................27

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016).................................................................................. *passim*

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)....................................................................................15, 28

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020).........................................................................................18

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016).........................................................................................28

*Ficep Corp. v. Peddinghaus Corp.*,
    No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) ..........................................16

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021)...................................................................................2, 20, 29

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ..........................................................................................14

*Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*,
    2024 WL 89642 (Fed. Cir. 2024)........................................................................................26

*Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ....................................................................................17, 26

*Intell. Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*,
    792 F.3d 1363 (Fed. Cir. 2015)......................................................................................9, 18

*Intell. Ventures I LLC v. Capital One Financial Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)......................................................................................8, 27

*Intell. Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017)..........................................................................8, 18

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)................................................................................9

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018)...............................................................8, 14, 26

*Longitude Licensing Ltd. v. Google LLC*,
  2025 WL 1249136 (Fed. Cir. 2025).......................................................................18

*Medicines Co. v. Hospira, Inc.*,
  827 F.3d 1363 (Fed. Cir. 2016)..............................................................................18

*Mobile Acuity Ltd. v. Blippar Ltd.*,
  110 F.4th 1280 (Fed. Cir. 2024) ............................................................................23

*MyMail, Ltd. v. ooVoo, LLC*,
  2021 WL 3671364 (Fed. Cir. 2021)........................................................................27

*In re Nuijten*,
  500 F.3d 1346 (Fed. Cir. 2007)..............................................................................18

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ..................................................................21, 28, 30

*Recentive Analytics, Inc. v. Fox Corp.*,
  134 F.4th 1205 (Fed. Cir. 2025) ......................................................................14, 21

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017)..........................................................................8, 10

*Restem, LLC v. Jadi Cell, LLC*,
  130 F.4th 941 (Fed. Cir. 2025) ..............................................................................18

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ........................................................................ *passim*

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)...................................................................... *passim*

*Simio, LLC v. FlexSim Software Products, Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)...................................................................... *passim*

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)..............................................................................15

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016).......................................................................12, 27

*Torus Ventures LLC v. Cawley Partners, LLC*,
    No. 2:24-CV-00552-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025) ...............7

*Trading Technologies International, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019)......................................................... *passim*

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019).............................................................15, 16, 20

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)......................................................... *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)........................................7

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    139 F.4th 1332 (Fed. Cir. 2025) .............................................................18, 19

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 2023-1778, 2025 WL 1662737 (Fed. Cir. June 12, 2025).........................18, 19

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019).............................................................15, 17

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ...........................................................................22

*WAPP Tech. v. JPMorgan Chase Bank, N.A.*,
    No. 23-cv-1137 (E.D. Tex.) ...............................................................................18

*WAPP Tech. v. Wells Fargo Bank, N.A.*,
    No. 21-cv-671, D.I. 96 (E.D. Tex. July 6, 2022) ...............................................24

## STATUTES

35 U.S.C. § 101............................................................................... *passim*

## RULES

Rule 12 ...........................................................................................2, 14, 29, 30

Rule 12(b)(6)................................................................................. *passim*

Plaintiffs WAPP Tech Limited Partnership and WAPP Tech Corp. (collectively, "WAPP") allege infringement of five related patents: U.S. Patent Nos. 8,924,192 (the "'192 patent"), 9,298,864 (the "'864 patent"), 9,971,678 (the "'678 patent"), 10,353,811 (the "'811 patent"), and 10,691,579 (the "'579 patent") (the "Asserted Patents").  D.I. 1 ("Complaint").  This case is the latest installment in WAPP's broad litigation campaign asserting, at bottom, that any company that develops or offers a mobile application infringes WAPP's patents.  But these patents are ineligible for patent protection under 35 U.S.C. § 101 in the first place.  For that reason, Defendants Capital One, N.A. and Capital One Services, LLC (collectively, "Capital One") respectfully move to dismiss with prejudice under Rule 12(b)(6).

## INTRODUCTION

Abstract ideas are ineligible for patent protection under § 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216-18 (2014).  These ideas cannot be patented because they are basic tools in the "storehouse of knowledge" that are "free to all … and reserved exclusively to none." *Bilski v. Kappos*, 561 U.S. 593, 601-02 (2010) (citation omitted).  And this critical patent law principle cannot be circumvented merely by implementing an idea in a particular technological environment with generalized computer functions.  *Alice*, 573 U.S. at 221-27.  The Supreme Court's now-familiar two-part step from *Alice* governs patent-eligibility of computer claims under § 101, which is a threshold requirement for any patent suit.  *Id.*  Claims are ineligible if they (1) are, at root, directed to an abstract idea notwithstanding their computer implementation and (2) add nothing significant (an inventive concept) to that idea.  *Id.*

WAPP's patent claims fail that test.  At *Alice* step one, the claims are directed to an abstract idea—testing and displaying information about how mobile applications perform in different devices or networks—because they are recited in purely functional, result-oriented language, untethered to any particular technological advance or details for achieving that goal.  That is the

1

essence of an abstract idea, not a patent-eligible advance.  Moreover, the patents expressly state that they aim to solve a *human* problem—the time-consuming effort otherwise required for developers to manually test their applications in each type of mobile device and in each potential network environment—by providing purportedly useful information to aid human developers. Those are additional, key indicia of abstraction.  And, at *Alice* step two, the claims add nothing inventive, instead requiring only basic computer functionality (*e.g.*, using a generic computer, such as a "personal computer," to test and simulate mobile applications) that the patents themselves treat as conventional.

As a result, WAPP's claims are squarely ineligible under *Alice* and its progeny.  These are precisely the kind of generic, result-oriented computer functions the Federal Circuit has repeatedly held ineligible, including far-more-detailed claims for "enabling the creation of mobile applications without coding by combining pre-coded software components" in a "mobile application creation interface" in *Aftechmobile Inc. v. Salesforce.com, Inc*., 853 F. App'x 669, 669-70 (Fed. Cir. 2021) (Appx. B); "using graphics instead of programming to create object-oriented simulations" in *Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (Appx. C); and "[p]rocessing an 'embedded object' … or rendering targeted data 'through a sandboxed application of a mobile device'" in *Free Stream Media Corp. v. Alphonso Inc*., 996 F.3d 1355, 1366 (Fed. Cir. 2021) (reversing Rule 12 denial).  Notably, in each case (and numerous others) the Federal Circuit held the claims ineligible *as a matter of law at the Rule 12 stage*, despite the patentees' insistence they constituted technological advances or raised material fact issues.

The same outcome is warranted here.  WAPP's Complaint does not, and cannot, make any serious effort to allege eligibility; nor could any plausible claim construction save its claims.  *See Sanderling Mgmt. Ltd. v. Snap Inc*., 65 F.4th 698, 704-06 (Fed. Cir. 2023) (affirming a Rule

12(b)(6) dismissal with prejudice for lack of eligibility under § 101. There is no reason to further burden the Court or the parties. The Complaint should be dismissed with prejudice.

## ISSUE TO BE DECIDED

Whether the Asserted Patents' claims are ineligible under 35 U.S.C. § 101.

## FACTUAL BACKGROUND

The Asserted Patents are related, and each claims priority to a 2005 provisional application. Each describes systems for testing and displaying information about how mobile applications operate in different networks and/or mobile device conditions, to assist software developers. The specification of each Asserted Patent is materially the same for purposes of this § 101 motion.[1]

### A.    The Patent Specification

When software developers create applications for mobile devices, they want them to work on numerous types of mobile devices and networks. The specification explains that "[a]pplications for mobile devices are typically developed on a personal computer (PC) or workstation" and existing tools allow developers to "simulate operation of the application playing on the targeted mobile device." *Id.* at 1:40-42, 1:55-56. But these tools do not show whether "the application will play correctly on the targeted mobile device based upon resource usage"—*e.g.*, these simulation tools do not show how the application is impacted by a specific mobile device's or network's processing capacity. *Id.* at 1:58-59.

This meant developers had to test the application in the physical mobile devices themselves

---

[1] The specifications of three patents—the '192, '678, and '811—are essentially identical, because they are continuations of each other. The specifications of the other two patents—the '864 and '579—are also essentially identical to each other, and materially the same as the other three, except (1) adding a paragraph on common software development practices, *see* '864 patent at 3:52-65, (2) adding various supplemental examples as Figures 15-26, *see id.* at 3:17-48, 14:21-23:8, and (3) removing a general discussion about mobile commerce, *see* '192 patent at 3:29-4:52. The '192 specification is generally cited herein.

3

(by "transfer[ring] the application to the device[s]") and in different operator networks around the world (by "travel[ing] to a ... network location when testing each mobile device"). *Id.* at 1:58-2:3, 13:61-63. Developers could then use standard profiling tools to see how the applications performed in those real-life circumstances. *See id.* at 1:58-2:3; '864 patent at 3:52-65. But this "transferring and testing process" is a "time-consuming," "burden[some]," and "costly" manual undertaking. '192 patent at 2:2-3, 11:44, 13:52-14:18. Indeed, "[d]uring development of an application for a mobile device, an application author may transfer and play the application hundreds of times (development life cycles) on the targeted mobile device before identifying and correcting all system resource problems within the application." *Id.* at 1:61-65. And the developer had to repeat that iterative process for each mobile device and network. *Id.* at 1:66-2:8, 13:60-64.

The Asserted Patents purport to "alleviate[]" that "burden" by allowing the developer to test applications in *simulated* mobile devices and *simulated* network environments. *Id.* at 1:66-2:8, 11:41-48, 13:59-63. But the specification does not describe any technological details— hardware or software—on *how* to accomplish that sophisticated goal. Also, it admits that any generic "computer" can perform the simulation, *id.* at 5:39-42; that any mobile devices or networks can be simulated, *see id.* at 10:46-11:4, 11:39-12:2; and that any number and type of device and network characteristics can be used, *id.* at 6:44-47. Further, far from any improved technology, the end result is simply displaying information about the application's operation in simulated environments, such as a bar graph showing the application's use of device or network resources over time, as in Figure 3:



4

### B.    The Patent Claims

The claims—which define the scope of the purported invention—are even more generic. The Complaint specifically addresses only the following: '192 patent claims 1 and 60, '864 patent claim 1, '678 patent claim 1, '811 patent claim 1, and '579 patent claim 15 (the "Asserted Claims"). Each recites, in non-specific terms, developing and/or testing mobile applications using simulated networks and/or mobile devices and displaying information about how the mobile applications operate in those environments.  All six are similar.  *See* Appx. A (reproducing all six claims).

For example, claim 1 of the '192 patent recites:

**1.** A system for developing an application for a mobile device comprising:

a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

Claim 60 of the '192 patent recites a photo app that was developed using such a system:

**60.** A system comprising:

an application configured to enable a user to modify a photo on the mobile device, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of the mobile device when executing the application.

Claim 1 of the '864 patent and claim 1 of the '678 patent are similar to claim 1 of the '192 patent.  *See* Appx. A.  Claim 1 of the '811 patent and claim 15 of the '579 patent recite similar concepts, albeit broken into more steps.  *See id*.  For example, claim 1 of the '811 patent recites:

**1.** A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

display a list of a plurality of mobile device models from which a user can select, wherein each model includes one or more characteristics indicative of a corresponding mobile device;

simulate at least one of the one or more characteristics indicative of the mobile device corresponding to the selected mobile device model;

simulate one or more characteristics indicative of a network on which the mobile device corresponding to the selected mobile device model can operate;

monitor utilization of a plurality of resources over time as the application is running;

display simultaneously two or more graphical images of the application's resource utilization, wherein each graphical image relates to a different resource;

correspond the utilization of a specific displayed resource at a given time with one or more functions of the application responsible for that utilization.

### C.    Procedural Background

This is one of several cases WAPP has brought against companies that develop and test mobile applications using everyday software authoring tools such as Apple's Xcode and Google's Android Studio.  In other actions, WAPP sued several companies asserting combinations of the same patents at issue here.  *See* D.I. 1 at ¶¶ 102-106.  In this suit, WAPP sued Apple, two Frost Bank entities, and two Capital One entities on March 6, 2025, alleging infringement of six Asserted Claims across the five Asserted Patents.  WAPP's Complaint does not distinguish among the claims in any relevant sense for § 101 purposes.

WAPP's Complaint states that the Asserted Patents' purported invention "enables developers to create the applications and ensure they will function correctly on a variety of mobile devices with varying device and network performance characteristics by emulating and monitoring specific characteristics of the devices and the networks to which they could connect."  D.I. 1 at ¶ 44.  For each Asserted Patent, the Complaint states, in conclusory fashion, that the claims constitute "[t]echnological improvements" that "were not conventional, well-known, or routine," and instead are "novel and non-obvious approaches to problems and shortcomings prevalent in the art."  *Id*. ¶¶ 73, 80, 87, 94, 100; *see id*. ¶¶ 72-75, 79-82, 86-89, 93-95, 99-101.

## LEGAL STANDARDS

### A.    Motions To Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).    Patent-ineligibility under § 101 is a threshold "question of law" that is "frequently … resolved on a Rule 12(b)(6) … motion," where—as is often the case—there are no relevant factual disputes.    *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327, at *11 (E.D. Tex. June 30, 2025).    The Court accepts well-pleaded factual allegations but disregards conclusory statements and legal conclusions on § 101 eligibility.    *See, e.g.*, *Sanderling*, 65 F.4th at 706; *Simio*, 983 F.3d at 1365.

Resolving eligibility on the pleadings minimizes "expenditure of time and money by the parties and the court," and protects against illegitimate patents that improperly monopolize basic tools and inhibit innovation.    *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (citation omitted).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act delineates the categories of patent eligible subject matter: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."    35 U.S.C. § 101.    But § 101 "contains an important implicit exception" for abstract ideas—such as generalized computer processing steps, automation of human activities, and long-prevalent practices—which are not patent eligible.    *Alice*, 573 U.S. at 219-20; *see also, e.g.*, *Simio*, 983 F.3d at 1359; *Aftechmobile*, 853 F. App'x at 669-70. "'[M]onopolization of those tools" would "'inhibit further discovery by improperly tying up the

future use of' these building blocks of human ingenuity" and "'impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Alice*, 573 U.S. at 216-20 (citation omitted). The Supreme Court's two-step *Alice* test governs whether computer-based patent claims are ineligible under § 101. *Id.* at 217-27.

At step one, the Court determines whether the claims are, at root, directed to an abstract idea. *Id.* at 218. The Court evaluates "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to" an abstract idea. *Intell. Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) ("*Capital One II*") (cleaned up); *see also Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) ("*Erie*"). In making this inquiry, courts consider whether the patent claims focus on a "specific implementation of a solution to a problem in the software arts"—"'a specific means or method' for improving technology"—or instead focus on "an abstract end result" or "generalized steps to be performed on a computer using conventional computer activity." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017).

Accordingly, "[t]he purely functional nature of [a] claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("*Affinity Labs II*"); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257-58 (Fed. Cir. 2016) ("*Affinity Labs I*"). Indeed, the Federal Circuit has repeatedly held that computer claims reciting "desired functions without corresponding recitations on how to achieve or implement" them are directed to abstract ideas. *Aftechmobile*, 853 F. App'x at 669-70; *see also*, *e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018) (claims "recited only at the broadest, functional level, without explaining how that is accomplished" are abstract); *Two-Way Media Ltd. v. Comcast*

*Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims reciting "result-based functional language" for performing computer processes without "sufficiently describ[ing] how to achieve these results" are abstract).

At step two, the Court determines whether the other claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that transforms the idea into a patent-eligible application. *Alice*, 573 U.S. at 217-22.  Implementing an abstract idea with "well-understood," "routine," or "conventional" activities—or adding peripheral or inconsequential limitations—contributes nothing inventive. *Id*. at 225-26.  Use of an abstract idea itself cannot supply the requisite inventive concept. *SAP*, 898 F.3d at 1163.  Nor is it inventive to recite "generic functional language to achieve the[] purported solutions" without claiming "'how the desired result is achieved.'" *Two-Way Media*, 874 F.3d at 1339 (citation omitted).

At both steps, even if claims are limited to "a particular field of use or technological environment," that does not make the core idea "any less abstract" and adds nothing inventive. *Intell. Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*, 792 F.3d 1363, 1366-67 (Fed. Cir. 2015) ("*Capital One I*").  In addition, "technological details set forth in the patent's specification and not set forth in the claims" cannot confer eligibility. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016); *see also Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[F]eatures … not claimed are irrelevant as to [*Alice*] step 1 or step 2").  And even if the "claims are novel and nonobvious in light of prior art"—indeed, "'[g]roundbreaking, innovative, or even brilliant,'"—"that is not enough for eligibility." *SAP*, 898 F.3d at 1163; *see also, e.g.*, *Simio*, 983 F.3d at 1364 ("'[A] claim for a *new* abstract idea is still an abstract idea.'" (citation omitted)).

9

**ARGUMENT**

## I.    THE ASSERTED CLAIMS ARE INELIGIBLE UNDER § 101

The Asserted Claims are ineligible as a matter of law under § 101 and *Alice* because they are directed to an abstract idea (testing and displaying information about how mobile applications perform in different devices or networks) and add nothing inventive to that abstract idea.

### A.    *Alice* Step One: The Asserted Claims Are Directed To An Abstract Idea

WAPP's Asserted Claims focus on the abstract idea of testing and displaying information about how mobile applications perform in different devices or networks.  That is evident from the claim language, specification, and Complaint—for two reasons.

#### 1.    The Asserted Claims Recite Result-Oriented Functional Language, Like The Ones In *Aftechmobile*, *Simio*, And Other Cases

Each of WAPP's Asserted Claims recites, in highly generic terms, steps for testing and displaying information about how mobile applications would perform in different environments, with no details on *how* to accomplish or implement those goals.  Appx. A.  That is, each "focuses on an abstract end-result," not "'a specific means or method' for improving technology"—which means they are abstract at *Alice* step one.  *RecogniCorp*, 855 F.3d at 1326 (citation omitted).

Claim 1 of the '192 patent recites a "system for developing an application" with a "software authoring interface" that displays information about how the application would perform in a simulated network ("visually emulate," via "display windows," "network characteristics indicative of performance of the mobile device when executing the application" in "simulate[d]" network conditions).[2]  Claim 1 of the '864 patent (a "system for testing an application" with "software") and claim 1 of the '678 patent (a "system for testing an application" with a "software testing

---

[2] Claim 60 of the '192 patent merely recites using a similar process to create a generic photo application; that claim is addressed further below.  *See infra* at 17-19.

interface") are very similar, except the "network characteristics" can be drawn from real-world networks (data from "non-simulated environments," '864 patent cl. 1, or "bandwidth data" based on mobile device interactions with an operator network, '678 patent cl. 1).

Claim 1 of the '811 patent (a "medium" with "software instructions for developing an application") recites additional generic steps focusing on the same mobile application testing and display concepts: (1) allow the user to select a mobile device model in which to test the application, (2) "simulate" the device's characteristics and a network's characteristics, (3) "monitor" the application's use of resources (*e.g.*, bandwidth or memory) as it runs in the simulated setting, and (4) "display simultaneously … graphical images" of the application's resource utilization over time, corresponding to the application's functions. Claim 15 of the '579 patent recites similar functions, but adds a final step of transmitting the application on a simulated or real mobile device.

In short, each Asserted Claim recites generic computer steps for testing and displaying information about how a mobile application would perform in different device and network environments. They require only generic computer components (*e.g.*, an "interface" and "display windows") and provide no details explaining *how* to implement the recited functions. The claims require no technologically improved way to achieve those functional results—no particular rules, algorithms, or explanation of how to implement them. Therefore, the claims focus on abstract end results, not any improved technology—and the "purely functional nature of [the] claim[s] confirms that [they are] directed to an abstract idea" for testing and displaying information about mobile application performance. *See Affinity Labs II*, 838 F.3d at 1269.

The patentee's own statements further confirm that the purported invention is directed to this abstract concept. As discussed, the specification and Complaint emphasize that the purported invention is simulating (or emulating) how applications behave in different devices or networks—

alleviating the need to physically test them in those environments—and providing purportedly useful information. *See, e.g.*, '192 patent at 1:52-2:8, 11:44, 13:52-14:18, Fig. 3; D.I. 1 at ¶ 44; *supra* at 3-6. But neither the specification nor the Complaint—let alone the claims—provide any technological details for doing so. Indeed, the sheer asserted scope of WAPP's claims—purportedly applying to anyone conducting "modern mobile application development" (D.I. 1 at ¶ 46)—underscores the purely functional nature of the claim language and confirms WAPP seeks to improperly own an abstract idea. *See Affinity Labs I*, 838 F.3d at 1259 (claim "breadth" confirms abstraction); *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 610 (Fed. Cir. 2016) (same). Therefore, the patentee's own assertions make clear that its claims are abstract.

WAPP's claims are far more abstract than the mobile application development claims that the Federal Circuit found abstract and ineligible in *Aftechmobile*, 853 F. App'x at 669, and the graphical programming simulation claims that the Federal Circuit found abstract and ineligible in *Simio*, 983 F.3d at 1357, 1359-60. *Compare* Appx. A (WAPP claims) *with* Appx. B (ineligible *Aftechmobile* claim), *and* Appx. C (ineligible *Simio* claim).

In *Aftechmobile*, the remarkably "lengthy" and detailed claims recited a mobile application development environment that "allowed technically unsophisticated users to create mobile applications without coding by integrating pre-coded software with new applications." 853 F. App'x at 669-70. The claims recited network-based "mobile application development software" with a "mobile application creation interface" that allowed a user to select and place "software components," "interactive elements," and "hierarchical layers of data" to create a mobile application that is backend-integrated with an application programming interface. *Aftechmobile Inc. v. Salesforce, Inc*., 2020 WL 6129139, at *3-4 (N.D. Cal. 2020), *aff'd*, 853 F. App'x 669, 669-70 (Fed. Cir. 2021). Yet the Federal Circuit found the claims recited only "desired functions

without corresponding recitations on how to achieve or implement those functions"—and thus were directed to "the abstract idea of enabling the creation of mobile applications without coding by combining pre-coded software components."  853 F. App'x at 669 (citation omitted).

In *Simio*, the claims recited graphics-based "object-oriented simulations"—including "'base objects created from … graphical processes,'" a "'new object'" with a particular "'3-tier structure,'" and an "'executable process to add a new behavior directly to an object instance'"—to assist users.  983 F.3d at 1357, 1359-60.  The patents "ma[de] object-oriented simulation easier and more accessible by letting users build simulations with graphics instead of programming."  *Id.* at 1356.  Even so, the claims did not sufficiently explain "how the computer's functionality is improved" or any "'specific rules' to achieve 'an improved technological result.'"  *Id.* at 1361 (citation omitted).  So, despite detailed claim language and patentee assertions of "'improvements to computer-implemented simulation,'" the claims were directed to the "abstract idea of using graphics instead of programming to create object-oriented simulations."  *Id*. at 1360-61.

WAPP's claims are even more generic here.  Whereas the ineligible *Aftechmobile* claims recited a "mobile application creation interface" with multiple interconnected features and functions allowing users to select and manipulate components to generate new applications, WAPP's claims at most recite a basic component (*e.g.*, "software authoring interface," "software authoring platform," or "software testing interface," '192 patent cls. 1, 60; '811 patent cl. 1) or simply "software" ('864 patent cl. 1; '678 patent cl. 15) that generically displays information about how the applications operate in different user-selected environments.  And whereas the ineligible *Simio* claims recited particular objects, behaviors, and executable processes for object-oriented simulations to facilitate programming, WAPP's claims at most recite "emulating" (or "simulating") and displaying how applications would behave.  *See supra* at 5-6, 10-13.  Therefore,

based on those decisions alone, WAPP's far more generic claims are also abstract.

There are countless other examples of seemingly-detailed claims with interfaces for receiving user interaction and providing useful information that the Federal Circuit found abstract and ineligible.  In *Affinity Labs I*, the claims recited a "downloadable application" "configured to" retrieve remote information with an interactive "user interface" that displayed a user-selectable list of media sources.  838 F.3d at 1255-57.  But the claims were "entirely functional in nature" and "untethered to any specific or concrete way of implementing" the desired results—and thus directed to the abstract idea of "providing out-of-region access to regional broadcast content."  *Id*. at 1258; *see also Affinity Labs II*, 838 F.3d at 1269 (abstract idea of "delivering user-selected media content to portable devices").  And in *AI Visualize*, the detailed claims recited creating "virtual views" by combining frames from local and remote sources to conserve bandwidth.  97 F.4th at 1374-76.  But the claims were abstract because they recited "functionally-oriented steps" with "no recitation … about *how* to create frames or virtual views, much less in a manner that would meaningfully support a technical solution to a technical problem."  *Id.* at 1378-79.[3]

In each of these cases (*Aftechmobile*, *Simio*, *Affinity Labs I & II*, and *all* the others discussed and cited above in this section, *supra* at 10-14 & n.3), the Federal Circuit found the claims abstract and ineligible *as a matter of law at the Rule 12 stage*.  WAPP's even more generic claims for developing mobile applications are likewise abstract.[4]

---

[3] *See also, e.g.*, *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1212-14 (Fed. Cir. 2025) (training machine learning models); *Sanderling Mgmt.*, 65 F.4th at 703-04 (providing software functionality based on location); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356-58 (Fed. Cir. 2023) (converting and displaying multiple video streams); *Interval Licensing*, 896 F.3d at 1342-46 (displaying information using software modules).

[4] The claims here are unlike the type of specific technological improvements that the Federal Circuit has held eligible because the claims in this case do not recite particular improvements that alter the underlying technology itself and, instead, only claim their desired functions.  *See, e.g.*,

### 2.    The Asserted Claims Seek To Solve A Human Problem By Displaying Information To Assist Human Programmers

WAPP's claims are also abstract because they address a *human* problem—the tedious work of "manual[ly]" testing an application in different physical devices and different network locations—not a *technological* problem, and aim to provide information to assist a *human* programmer.  Those are additional indications of abstraction.  *See, e.g.*, *Trading Technologies International, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("*Trading Techs. I*"); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) ("*Trading Techs. II*").

The patentee's own statements demonstrate as much.  As discussed, the specification explains that existing mobile application development tools already allowed programmers to test the application's performance, but it was "burden[some]" and "time-consuming" to transfer the application to physical mobile devices and travel to different wireless network locations.  *Supra* at 3-4.  And, per the specification, the purported advance was automating those otherwise manual processes using a generic computer to simulate the testing scenarios and display useful information to assist a human programmer (not any technological solution).  *Supra* at 4; *see* D.I. 1 at ¶ 44.  That confirms the claim is directed to an abstract idea.  *See, e.g.*, *Trading Techs. II*, 921 F.3d at 1384 ("automation of manual processes using generic computers" and providing purportedly new and useful information display is abstract) (citation omitted); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co*., 916 F.3d 1363, 1367 (Fed. Cir. 2019) (same).

It is no answer to say that the claims are useful.  Even if the claimed invention does make a human programmer's task more efficient—by visually depicting how an application uses

---

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292-97 (Fed. Cir. 2020) (improved encryption using multi-layer nesting and labeling); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (advanced storage technology using self-referential database were a "specific improvement to the way computers operate").

resources as it operates in different circumstances—it provides no patent-eligible advance in the computer technology itself.  Instead, it falls squarely in the category of computer claims that the Federal Circuit has found ineligible—claims for collecting, analyzing, and displaying information to assist humans.  For example, in *Electric Power Group, LLC v. Alstom S.A.*, the claims recited "lengthy" steps for analyzing and displaying information (including "concurrent visualization of measurements") for an operator to more effectively identify power grid anomalies in "real-time" resource utilization.  830 F.3d 1350, 1351-52 (Fed. Cir. 2016).  But the Federal Circuit affirmed that the claimed steps for collecting, analyzing, and "presenting the results" of a "particular" type of technical data are abstractions.  *Id*. at 1353-54.  Likewise, even if the purported invention here does make it easier for human programmers to assess how mobile applications are using resources, it is still directed to an abstract idea for collecting, analyzing, and displaying useful information.

Additionally, many other recent cases have also found claims directed to the collection, analysis, and/or display of information ineligible, despite any potential usefulness.  For example, in *Trading Techs. I*, the patents disclosed "a user interface for an electronic trading system" that provided "a purportedly new arrangement" of information that "assist[ed] traders in processing information more quickly"—"an easy to see and interpret graphical format" on a particular unified axis.  921 F.3d at 1087-93.  In *Trading Techs. II*, the claims analyzed and display "'highly relevant information' that is 'not normally provided in an electronic exchange's data feed nor displayed by a trading screen.'"  921 F.3d at 1381-83.  In *Ficep Corp. v. Peddinghaus Corp*., the claims for "automat[ing] the identification, extraction, and transfer of information from a design model" to "eliminate … operator error."  No. 2022-1590, 2023 WL 5346043, at *3 (Fed. Cir. Aug. 21, 2023).  And in *CardioNet, LLC v. InfoBionic, Inc*., the claims provided heart monitoring systems for analyzing and presenting data on a "common time scale" that "improve[d] accuracy" and "may be

very useful to physicians." 816 F. App'x 471, 475-76 (Fed. Cir. 2020).[5]

Yet the claims in each case were ineligible nonetheless because they "d[id] not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Trading Techs*. *I*, 921 F.3d at 1091-93.  Put simply, "usefulness alone does not necessarily negate abstractness." *CardioNet*, 816 F. App'x at 476.  So too here.  Even if the claimed processes and systems for displaying resource information might "assist [programmers] in [developing applications] more quickly," that is not a *technological* advance.  *Trading Techs. I*, 921 F.3d at 1091-93.  At most, that might impact whether the claims are *novel* (*i.e.*, "new" over prior art), but does not render the analysis and display of information non-abstract at *Alice* step one.  *See In re Bd. of Trs*., 991 F.3d 1245, 1252 (Fed. Cir. 2021) (claims ineligible even if providing new information); *Simio*, 983 F.3d at 1364 (simulation claims ineligible even if new); *SAP*, 898 F.3d at 1163 (information-based claims ineligible even if "innovative" and "brilliant").

### 3.    Claim 60 Of The '192 Patent Is Abstract For An Additional Reason

Claim 60 of the '192 patent warrants additional discussion.  It recites essentially the same process for testing and displaying information as the other Asserted Claims, except claim 60 specifies that that the process is used to develop a generic photo app (one that "enable[s] a user to modify a photo on the mobile device").  That is, at best, a "field of use" limitation, which does not

---

[5] *See also Chewy, Inc. v. Int'l Bus. Machines Corp.*, 94 F.4th 1354, 1366 (Fed. Cir. 2024) (ineligible claims "improve[ed] the specificity and relevancy" of application information); *Int'l Bus. Mach. Corp. v. Zillow Grp., Inc*., 50 F.4th 1371, 1377 (Fed. Cir. 2022) ("'[I]mproving a user's experience while using a computer application is not … sufficient to render the claims' patent-eligible …." (citation omitted)); *In re Bd. of Trs*., 991 F.3d 1245, 1251-52 (Fed. Cir. 2021) (ineligible claims for detailed mathematical computations and specific data structure to "yield[] more accurate haplotype predictions than previously achievable under the prior art"); *Univ. of Fla.*, 916 F.3d at 1366-67 (claims for "converting" data  into a "machine independent format" and "standardiz[ing] … for display" were ineligible despite allowing "laudable" and "life altering" improvement in medical diagnoses) (cleaned up).

make the claim "any less abstract." *Capital One I*, 792 F.3d at 1366-67; *see, e.g.*, *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020); *Erie*, 850 F.3d at 1330. Therefore, in that sense, claim 60 is directed to the same abstract idea, for the reasons discussed.

But claim 60 is flawed for another reason. Because it recites an end product (a photo app) that is "defined, at least in part, in terms of the process by which it is made," the claim's validity turns on "the product and not on the process of making it." *Restem, LLC v. Jadi Cell, LLC*, 130 F.4th 941, 947 (Fed. Cir. 2025) (citations omitted); *see Medicines Co. v. Hospira, Inc*., 827 F.3d 1363, 1374 (Fed. Cir. 2016) ("For validity purposes, the 'invention' in a product-by-process claim is the product."). As the Federal Circuit has held, for purposes of § 101, "[s]uch [product-by-process] claims are … directed to the ultimate product, not the underlying process." *In re Nuijten*, 500 F.3d 1346, 1355 (Fed. Cir. 2007). Here, the end product—a generic photo app allowing photo modifications—is itself a high-level abstraction: altering photos is something humans have long done and the claim language is, again, purely functional. *See*, *e.g.*, *AI Visualize*, 97 F.4th at 1378-81 (ineligible claims for rendering 3D images from multiple data sources); *Longitude Licensing Ltd. v. Google LLC*, 2025 WL 1249136, at *1 (Fed. Cir. 2025) (ineligible digital image modification claims); *Angel Techs. Grp., LLC v. Meta Platforms, Inc*., 2024 WL 4212196, at *5 (Fed. Cir. 2024) (ineligible photo tagging claims).

Notably, WAPP has broadly asserted this claim against "mobile banking applications," in this case and others. D.I. 1 at ¶ 125; *see id*. at ¶¶ 65-66, 102-106; *WAPP Tech. v. JPMorgan Chase Bank, N.A.*, No. 23-cv-1137 (E.D. Tex.). But in a pair of recent decisions, the Federal Circuit held ineligible far more specific mobile banking-app claims enabling customers to take a photo of a check, orient the photo, submit for deposit, and recognize errors. *See United Servs. Auto. Ass'n v. PNC Bank N.A*., 139 F.4th 1332, 1335 (Fed. Cir. 2025); *United Servs. Auto. Ass'n v. PNC Bank*

*N.A.*, No. 2023-1778, 2025 WL 1662737, at *1-3 (Fed. Cir. June 12, 2025).  There, both the district court (in this District) and the jury found the claims *not* invalid, but the Federal Circuit reversed, holding they *were* abstract and ineligible as a matter of law.  139 F.4th at 1336-40; 2025 WL 1662737, at *2-3.  And over a decade ago the Federal Circuit held that claims for scanning digital photos and recognizing and extracting information, including for banking, were abstract and ineligible on the pleadings.  *See Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014).  Claim 60 is equally abstract as a matter of law.

### B.    *Alice* Step Two: The Asserted Claims Add Nothing Inventive

At *Alice* step two, the Court must determine whether the claims add something significant "apart from" the abstract idea of testing and displaying information about how mobile applications perform in different devices or networks—an inventive concept that "transform[s] the abstract idea … into a patent-eligible application."  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019); *see Simio*, 983 F.3d at 1363 (claims must add "'significantly more'" than use of "abstract idea itself" (citation omitted)).  WAPP's Asserted Claims do not.

WAPP's claims recite only generic computing components (a computer running a software development "interface" and "display windows") and generic computing functions (user-selection of options, running applications, and transmitting, receiving data, monitoring, and displaying data) for implementing the abstract idea.  *See* '192 patent cls. 1, 60; '864 patent cl. 1; '678 patent cl. 1; '811 patent cl. 1; '579 patent cl. 15.  The specification treats these as conventional.  It acknowledges that software authoring interfaces were well-known ("typically" implemented on any generic computer, such as "a personal computer (PC) or workstation") and allowed mobile application developers to "simulate operation of the application playing on the targeted mobile device."  *Id*. at 1:40-41, 1:55-56.  Further, the specification admits that developers could test applications in mobile devices, monitor how they operate, and display resource usage.  *Id.* at 1:58-

2:1; *see also* '864 patent at 3:52-65 (admitting that "software developer[s] often utilize[] a software profiler" to display "mobile device resource utilization by an application running on that mobile device"). And the specification otherwise describes using standard user-interface features, such as a "pull-down list" for making selections and display windows for presenting data. *See*, *e.g.*, '192 patent at 9:5-17, Fig. 5. Therefore, because "the specification 'describes the components and features listed in the claims generically,' it 'support[s] the conclusion that these components and features are conventional.'" *Beteiro, LLC v. DraftKings Inc*., 104 F.4th 1350 (Fed. Cir. 2024).

In addition, the claimed components and functions are the same "basic functions of a computer" and "functional and generic" computer components that courts have found merely implement the abstract idea in a "particular technological environment"—which is insufficient to add an inventive concept. *Alice*, 573 U.S. at 225-26. The Federal Circuit has held that precisely such limitations add nothing inventive as a matter of law, including: a mobile application authoring interface (in *Aftechmobile*, 853 F. App'x at 669-70), software simulations (in *Simio*, 983 F.3d at 1363-64), downloading and displaying user-selected content (in *Affinity Labs I*, 838 F.3d at 1262-65 and *Affinity Labs II*, 838 F.3d at 1271-72), and graphically displaying data on resources (in *Electric Power*, 830 F.3d at 1354-56, *Trading Techs. I*, 921 F.3d at 1092-95, and *Trading Techs. II*, 921 F.3d at 1385). *See also, e.g.*, *Two-Way Media*, 874 F.3d at 1339 (multiple network components and protocols for sending, receiving, and monitoring network data).

Indeed, other computer limitations even more detailed than those in the Asserted Patents have been found non-inventive—including "[p]rocessing an 'embedded object' … or rendering targeted data 'through a sandboxed application of a mobile device[],'" *Free Stream Media*, 996 F.3d at 1366; rendering 3D data models stored in multiple locations, *AI Visualize*, 97 F.4th at 1379-81; and training and using machine learning models based on various parameters to optimize

scheduling, *Recentive*, 134 F.4th at 1208-09 & n.2.  The elements here—which are even more basic than those in *Free Stream Media* and *AI Visualize*—likewise add nothing inventive.

The purported invention here seeks to alleviate the "time-consuming" process of testing applications in multiple environments—*i.e.*, transferring applications to each type of mobile device and testing in each network location—by emulating and displaying how the application would operate in those settings using generic computer functions and components.  *See, e.g.*, '192 patent at 2:2-8, 11:39-48; 13:46-14:18.  But that is the abstract idea itself, which "cannot supply the inventive concept."  *Simio*, 983 F.3d at 1363.  And using "computer functionality to increase the speed or efficiency" of that "traditional" process is insufficient.  *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021).

Moreover, the specification provides no details about how to simulate or model the characteristics of different mobile devices or networks.  The specification describes purely functional, results-oriented components for achieving the desired goal, such as unspecified "model algorithms," which "generate [a] mobile device model to emulate [a] mobile device while executing [an] application," *id.* at 5:48-54, and undefined "live mobile profiles," "handset profiles," and "live network profiles" for storing the characteristics, *see id* at 10:46-47; 10:66-11:4; 13:35-39.  The specification further acknowledges that *any* type and number of characteristics can be used, *see, e.g.*, '192 patent at 5:55-6:9, 6:45 (listing sample characteristics but noting that "additional or fewer characteristics may be included"), and can be stored in any generic "data structure," *id.* at 6:35.  Because the claims recite only "generic functional language to achieve these purported solutions"—without explaining "'how the desired result is achieved'"—they add nothing inventive.  *Two-Way Media*, 874 F.3d at 1339 (quoting *Electric Power*, 830 F.3d at 1355).

Even when the claims' basic features are viewed "as an ordered combination," the claims

"ad[d] nothing ... that is not already present when the steps are considered separately." *Alice*, 573 U.S. at 225 (citation omitted).  There is no "specific implementation" or "specific improvement" in computer technology that might provide an inventive concept.  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016).  The claims' arrangements reflect conventional computer functionality and "achieve[] only expected results," *Universal Secure Registry LLC v. Apple Inc*., 10 F.4th 1342, 1352 (Fed. Cir. 2021)—namely, testing and displaying information about applications to alleviate the need to manually test them in numerous physical mobile devices and physical network locations.  Indeed, "it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources [that WAPP] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process." *SAP*, 898 F.3d at 1169-70.

Lacking any inventive concept, the Asserted Claims are ineligible as a matter of law.

## II.     THE OTHER CLAIMS ARE INELIGIBLE UNDER § 101

Apart from the six Asserted Claims, WAPP's Complaint does not specifically address any other patent claims.  But Capital One addresses them here for completeness.  The other claims fall into three groups: (a) other claims for testing and displaying information about application performance (the vast majority of the other claims), (b) claims for storing profile data on a server (claims 39-41 of the '864 patent), and (c) claims for cooperation among multiple authoring environments (claims 42-50 of the '864 patent).  These are also ineligible under § 101.

### A.     The Other Claims For Testing And Displaying Information Are Ineligible

The other claims for testing and displaying information about application performance are materially the same as the Asserted Claims for purposes of § 101: the independent claims mirror the Asserted Claims and dependent claims make insignificant additions.  They are directed to the same abstract idea as the Asserted Claims at step one and add nothing inventive at step two, as

22

discussed below.  Accordingly, the Court can appropriately treat the Asserted Claims as representative.  *See Mobile Acuity Ltd. v. Blippar Ltd*., 110 F.4th 1280, 1290 (Fed. Cir. 2024) (court can use representative claims where there is no "distinctive significance" of other claim limitations); *Content Extraction*, 776 F.3d at 1348 (holding 242 claims ineligible based on two representative claims because they were "substantially similar and linked to the same abstract idea").  WAPP effectively acknowledges as much by treating its claims collectively in its Complaint (*supra* at 6), but if WAPP disagrees it must "present non-frivolous arguments as to why the eligibility of the identified representative claim[s] cannot fairly be treated as decisive of the eligibility of all claims in the group."  *Mobile Acuity*, 110 F.4th at 1290.  Regardless, the other claims are ineligible even if the Court elects to consider them individually, for the reasons below.

### 1.    The Other Independent Claims For Testing And Displaying Information Are Materially The Same

The other independent claims for testing and displaying application information closely track the Asserted Claims—with minor variations—and are, therefore, ineligible for the same reasons discussed above.  *See* '192 patent cls. **1**, 17, 35, 40, **60**; '864 patent cls. **1**, 20, 29, 31, 32, 36, 37, 39; '678 patent cls. **1**, 26, 37, 45; '811 patent cls. **1**, 9, 15, 22; '579 patent cls. 1, **15** (independent claims, with Asserted Claims in bold); *see supra* at 10-22.

In the '192 patent, the other independent claims (claims 17, 35, and 40) recite an "online marketplace" for distributing applications—or information for applications—that were developed in a similar fashion as using claim 1's process for testing and displaying application performance.  Similar to claim 60, these claims at most add a field of use limitation (a generic online marketplace with unspecified applications), which does not confer eligibility.  *See supra* at 17-18.  Moreover, like claim 60, these too are product-by-process claims—ultimately directed to an online marketplace, which is an abstract economic concept. *See supra* at 18; *Alice*, 573 U.S. at 220 ("The

23

use of a third-party … 'clearing house' … is also a building block of the modern economy.").

In the '864 patent, the other independent claims are similar to claim 1 of the '864 patent. For example, claim 20 recites, in equally generic terms, a method for (1) "retrieving" mobile device characteristics, (2) "emulating mobile devices in real time" using "models" based on mobile device characteristics, (3) "monitoring" the application's "resource utilization" as it runs in an "application player," and (4) "displaying the resource utilization." The others are essentially the same, again reciting steps for testing and displaying information about how applications operate in different settings, with minor variations: selecting a mobile device from a list (claim 29); identifying and displaying the point (frame) at which an application exceeds the available resources (claim 31); repeatedly determining resource utilization (claim 32); phrasing the claim as a "software product" or "emulator" instead of a method (claims 36-37).[6]

The same is true of the other Asserted Patents. In the '678 patent, the other independent claims are almost identical to claim 1, except reciting that the system displays "application performance" and/or "network performance" (claim 26), "interact[s] with a network" (claim 37), and uses "real-world mobile network profiles" (claim 45). In the '811 patent, the other independent claims recite essentially the same steps as claim 1, except varying the verbiage (claim 9), adding downloading mobile device characteristics (claim 15), and reciting certain device characteristics (e.g., "processor speed") and transmitting the application to a physical device (claim 22). Likewise, in the '579 patent, claim 1 is like claim 15, but with less specificity.[7]

None of these differences matter for § 101. At most, the other claims recite aspects of the abstract idea itself, the type or source of the data (e.g., the device or network characteristics), other

---

[6] The other '864 patent independent claims (39, 42, and 47) are discussed below. *Infra* at 27-28.

[7] The Court held claim 1 of the '579 patent invalid for indefiniteness in another proceeding. *WAPP Tech. v. Wells Fargo Bank, N.A.*, No. 21-cv-671, D.I. 96 (E.D. Tex. July 6, 2022).

routine steps (*e.g.*, transmitting the application to a physical device or allowing user selections), or other generic computer features.  These variations do not make the claims non-abstract at step one or add anything inventive at step two.  *See Simio*, 983 F.3d at 1364 (abstract idea cannot confer eligibility); *Electric Power*, 830 F.3d at 1354-56 (functional language and "source" or "type" of information adds nothing eligible); *Affinity Labs I*, 838 F.3d at 1258-65 (ineligible claims reciting downloading application); *Affinity Labs II*, 838 F.3d at 1268 (ineligible claims reciting user selection from list).  Those claims are, therefore, all directed to the same abstract idea (at step one) and non-inventive (at step two).

### 2.    The Dependent Claims For Testing And Displaying Information Add Nothing Significant

The dependent claims also add only incidental limitations that do not make them eligible.

<u>First</u>, numerous dependent claims merely recite the type, content, or source of information.[8] For example, the simulated network environments for testing the mobile devices can draw on any number of generic types and sources of information, such as "one or more profiles," "data representing one or more mobile devices," simulated network events, and even real-world ("non-simulated") conditions such as "real-time bandwidth."  *See, e.g.*, '192 patent cls. 4, 8-13.  But these claims provide no technical details for implementing the simulations or processes to test applications.  And reciting the particular "content or source" of information for collection and analysis, "which does not change its character as information," leaves the claims abstract and non-inventive.  *Electric Power*, 830 F.3d at 1354-55.

<u>Second</u>, another large group of claims recite standard user interface features, such as

---

[8] *See* '192 patent cls. 3-13, 15-16, 23, 41-44, 62-64; '864 patent cls. 2, 6-11, 18, 23-24; '678 patent cls. 3-13, 15-16, 17, 20, 28-29, 31-32, 47-50; '811 patent cls. 4-8, 11-14, 16, 19-21, 24-27, 30; '579 patent cls. 3-4, 7-8, 10-12, 18-21, 23, 30-36.

allowing user selections from a "drop-down list," "drop-down menu," or "map" ('811 patent cl. 27), and basic formats or arrangements for displaying data, such as "graphically" ('678 patent cls. 27, 30), in a "timeline" ('864 patent cl. 21), or "simultaneously" ('579 patent cls. 6, 27).[9]  But the specification does not suggest any of those require improved technology, and the Federal Circuit has repeatedly held such inconsequential limitations do not confer eligibility.  *See, e.g.*, *Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1375-76 (Fed. Cir. 2022) ("map display" for user "selection" and a "customizable list"; "synchronizing" the display); *Affinity Labs I*, 838 F.3d at 1256 ("graphical user interface" for user selection); *Electric Power*, 830 F.3d at 1355 ("displaying concurrent visualization" of multiple types of information with "time-synchronized display").[10]

Third, some claims recite assessing the application's performance and use of resources— *e.g.*, identifying when an application exceeds the available resources (*e.g.*, '864 patent cl. 28).[11] But that data analysis is an aspect of the abstract idea itself, which cannot confer eligibility, *see, e.g.*, *Simio*, 983 F.3d at 1363-64, and at most requires admittedly existing tools for assessing and displaying an application's use of resources, *see* 864 patent at 3:52-65 (discussing existing software "profilers"); *supra* at 3-4, 19-20.

Finally, the remaining claims also recite insignificant limitations: (1) standard data storage (*e.g.*, "server," "library," "file," "database," "library");[12] (2) transmitting software for updating and

---

[9] *See* '192 patent cls. 2, 6-7, 14, 24, 61, 65-66; '864 patent cls. 5, 13, 17, 19, 21-22, 24, 26, 33, 38; '678 patent cls. 2, 6-7, 14, 18-19, 21-22, 27, 30, 36, 39-41, 46; '811 patent cls. 18, 27-28; '579 patent cls. 6, 25-27.

[10] *See also Interval Licensing*, 896 F.3d at 1338 (displaying data "in a non-overlapping" format); *Trading Techs. I*, 921 F.3d at 1092-93 (displaying data along a "scaled axis" in a "purportedly new arrangement" that "assists [users] in processing information more quickly"); *Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*, 2024 WL 89642, at *2 (Fed. Cir. 2024) ("pull-down menus").

[11] *See* '864 patent cls. 12, 25-28, 30; '678 patent cls. 33-35; '579 patent cls. 2, 17.

[12] *See* '864 patent cls. 3-4, 15, 22; '678 patent cl. 48; '811 patent cls. 3, 10, 25, 28-29; '579 patent cls. 9, 22, 24, 28-29.

testing;[13] (3) peripheral economic features (*e.g.*, charging "fees");[14] and (4) routine marketplace activities (*e.g.*, distributing applications).[15]  These do not change the analysis.  *See, e.g.*, *TLI*, 823 F.3d at 610 (server receiving and storing data); *Affinity Labs II*, 838 F.3d at 1268 (content library) *Affinity Labs I*, 838 F.3d at 1257 ("downloadable application" for mobile device); *MyMail, Ltd. v. ooVoo, LLC*, 2021 WL 3671364, at *3 (Fed. Cir. 2021) ("updating toolbar software").

Therefore, like the Asserted Claims, all of the other claims for testing and displaying information are directed to the same abstract idea and add nothing inventive.

### B.    The Server Storage Claims Are Ineligible

Claims 39-41 of the '864 patent recite a "development server" with a "network profile library" and a "device model library" to store the data used to emulate the devices and networks. But storing data is a classic abstract idea.  *See, e.g.*, *Alice*, 573 U.S. at 225-26 (ineligible claims stored data in "shadow records" and "data storage unit"); *Capital One II*, 850 F.3d at 1340 (ineligible claims stored data in "specific data structures and objects (PRTs and MRTs)"); *Affinity Labs II*, at 1267-68 (ineligible claims stored data in "library of content").

Storing a particular data type—network and device profiles—does not make it less abstract or add anything inventive.  *See*, *e.g.*, *Electric Power*, 830 F.3d at 1353-54 (claims ineligible despite limited to "particular content"); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 886 (Fed. Cir. 2019) (network-based claims ineligible despite reciting generating and storing "profile" with "characteristics of the access device"); *Digitech Image Techs., LLC v. Elecs. for*

---

[13] *See* '192 patent cls. 14, 30; '864 patent cl. 14; '678 patent cl. 38; '811 patent cls. 2, 10, 17, 23; '579 patent cls. 5, 13-14, 16.

[14] *See* '192 patent cls. 25-34, 36-39, 49, 51-56, 67-69; '864 patent cls. 16, 34-35; '678 patent cls. 23-25, 42-44.

[15] *See* '192 patent cls. 18-22, 45-48, 50, 57-59.

*Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (digital "device profile" that "describes properties of a device" is ineligible).  Nor does using a server to store and provide information impart eligibility.  *Supra* at 26-27.  The claims here do not purport to specifically improve data storage technology, unlike the self-referential database found eligible in *Enfish*, 822 F.3d at 1336.

The dependent claims (claims 40-41) recite limitations for emulating the application and outputting the results, similar to the claims discussed—which do not confer eligibility as they are entirely functional limitations aimed at assisting human programmers.  *See supra* at 10-22.

### C.    The Cooperative Authoring Claims Are Ineligible

Finally, the remaining claims (claims 42-50 of the '864 patent) recite "multiple authoring environments cooperating to author the application"—what the patent labels a "para-authoring environment."  But three of those claims (claims 42-44) do not even recite testing and displaying information about how an application performs, which is the patents' central focus.  Those claims are directed to the abstract idea of cooperation—many hands make light work—and reciting that in the context of authoring software does not make the claims non-abstract or inventive.  Beyond that, the other "para-authoring" claims (claims 45-50) recite similar limitations for testing and displaying information about application performance, which are abstract and ineligible for the reasons discussed above.  Limiting those to the "particular technological environment" of a "para-authoring" environment does not confer eligibility.  At most, it "[a]dd[s] one abstract idea ... to another," which is still ineligible.  *PersonalWeb*, 8 F.4th at 1317 (citation omitted).

Accordingly, all of WAPP's patent claims in this case are ineligible under § 101.

## III.    THERE IS NO REASON TO DELAY HOLDING THE CLAIMS INELIGIBLE

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility … on a Rule 12(b)(6) motion."  *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (citation omitted); *see also, e.g.*, *SAP*, 898 F.3d at 1166

(claims "frequently" ineligible on Rule 12(b)(6) motions). In fact, as discussed, the Federal Circuit held that claims like, or even more complex than, WAPP's were ineligible on Rule 12 motions in cases involving mobile application development interfaces (*Aftechmobile*), simulations to assist programmers (*Simio*), and downloadable mobile device apps (*Affinity Labs I & II*); *see also Free Stream Media*, 996 F.3d at 1357 (holding ineligible claims for bypassing mobile device security; reversing Rule 12 motion denial); *CardioNet, LLC v. InfoBionic, Inc.*, 2021 WL 5024388, at *1 (holding ineligible claims for analyzing and filtering heartbeats; reversing Rule 12 motion denial).

That is the proper result here, too. There is no plausible allegation of inventiveness apart from the abstract ideas. As discussed, the specification demonstrates the claims are directed to an abstract idea and add nothing inventive, *supra* at 3-4, 10-28, and no plausible claim construction could change that. *See Sanderling*, 65 F.4th at 704.

In addition, WAPP's Complaint does not (and cannot) identify any genuine technological improvements or inventive computer features apart from the abstract ideas. The Complaint's cursory attempts to avoid this conclusion fail for three reasons.

First, the Complaint acknowledges that its purported invention seeks to assist developers in assessing whether applications "will function correctly on a variety of mobile devices with varying device and network performance characteristics by emulating and monitoring specific characteristics of the devices and the networks." D.I. 1 at ¶ 44. But that reflects the abstract idea itself, which "cannot confer eligibility." *Simio*, 983 F.3d at 1363-64.

Second, WAPP's Complaint asserts, in cursory and repetitive fashion, that its patent claims are a "[t]echnological improvement[]" and "not conventional, well-known, or routine." D.I. 1 at ¶¶ 73, 80, 87, 94, 100; *see id.* ¶¶ 72-75, 79-82, 86-89, 93-95, 99-101. But this Court "disregard[s]" such "conclusory statements" that "a feature 'improves the functioning and operations of the

computer'"—those merely "repackage[] assertions of non-abstractness," including claims of "improved 'efficiency.'"  *Simio*, 983 F.3d at 1365 (affirming Rule 12(b)(6) grant).  Nor should the Court credit WAPP's "conclusory statements that the claimed steps were not well-known, routine, and conventional."  *Sanderling*, 65 F.4th at 706 (affirming Rule 12(b)(6) grant).  These allegations do not prevent dismissal.  *Id.*

Third, WAPP's Complaint asserts that its claims are "novel and non-obvious."  D.I. 1 at ¶¶ 73, 80, 87, 94, 100.  But even if the claims are "novel and nonobvious in light of prior art," "that is not enough for eligibility."  *SAP*, 898 F.3d at 1163; *see also, e.g.*, *Simio*, 983 F.3d at 1364 (claims ineligible on Rule 12 motion even assuming novelty); *Two-Way Media*, 874 F.3d at 1339-40 (same; § 101 eligibility is "separate inquir[y]" from "novelty and obviousness").  Therefore, the Complaint includes no plausible allegations precluding a motion to dismiss under § 101.

In the handful of cases where the Federal Circuit has found that factual issues precluded a finding ineligibility on a motion to dismiss, the patents and complaints provided detailed allegations explaining how claimed features specifically improve computer or other technology itself.  *See, e.g.*, *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1127 (Fed. Cir. 2018) (complaint had "numerous allegations related to the inventive concepts").  That is not so here.  WAPP's patent claims do not focus on any specific improvement in computer technology but instead on an abstract idea for assisting programmers by testing and displaying information about how applications would operate in different mobile device or network environments.  As in *Aftechmobile*, *Simio*, *Affinity Labs I* & *II* and numerous other cases, WAPP's Complaint does not, and cannot, "plausibly allege[]" facts showing § 101 eligibility.  *PersonalWeb Techs*., 8 F.4th at 1319.  The parties and Court should not expend further resources litigating these ineligible claims.

## CONCLUSION

The Complaint should be dismissed with prejudice under § 101

Dated: July 25, 2025

Respectfully submitted,

*/s/ Melissa R. Smith*

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

Matthew J. Moore
  D.C. Bar No. 453773
Gabriel K. Bell *(pro hac vice)*
  D.C. Bar No. 987112
Rachel L. Weiner Cohen *(pro hac vice)*
  D.C. Bar No. 1000414
  NJ Bar No. 012422008
  NY Bar No. 4664850
Tiffany C. Weston
  D.C. Bar No. 1720987
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
matthew.moore@lw.com
gabriel.bell@lw.com
rachel.cohen@lw.com
tiffany.weston@lw.com

John K. Svendsen *(pro hac vice)*
  NY Bar No. 6001895
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
john.svendsen@lw.com

Brian Kim *(pro hac vice)*
  CA Bar No. 357934
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

brian.kim@lw.com

*Attorneys for Defendants Capital One, N.A.*
*and Capital One Services, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 25th day of July 2025.


 */s/  Melissa R. Smith*
Melissa R. Smith

## APPENDIX A: Six Claims Asserted In WAPP's Complaint

Claim 1 of U.S. Pat. No. 8,924,192:

**1**. A system for developing an application for a mobile device comprising:
 a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

Claim 60 of U.S. Pat. No. 8,924,192:

**60**. A system comprising:
 an application configured to enable a user to modify a photo on the mobile device, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of the mobile device when executing the application.

Claim 1 of U.S. Pat. No. 9,298,864:

**1**. A system for testing an application for a mobile device comprising:
 software configured to simulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the network characteristics are based on data of interaction with networks in non-simulated environments.

Claim 1 of U.S. Pat. No. 9,971,678:

**1**. A system for testing an application for a mobile device comprising:
 a software testing interface configured to simultaneously visually simulate, via one or more profile display windows, a plurality of operator network characteristics including at least bandwidth availability indicative of performance of the mobile device when executing the application; wherein the bandwidth availability is based at least in part on bandwidth data predetermined from interactions between one or more mobile devices and at least one operator network.

Claim 1 of U.S. Pat. No. 10,353,811:

**1**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:
 display a list of a plurality of mobile device models from which a user can select, wherein each model includes one or more characteristics indicative of a corresponding mobile device;
 simulate at least one of the one or more characteristics indicative of the mobile device corresponding to the selected mobile device model;
 simulate one or more characteristics indicative of a network on which the mobile device corresponding to the selected mobile device model can operate;
 monitor utilization of a plurality of resources over time as the application is running;
 display simultaneously two or more graphical images of the application's resource utilization, wherein each graphical image relates to a different resource;
 correspond the utilization of a specific displayed resource at a given time with one or more functions of the application responsible for that utilization.

Claim 15 of U.S. Pat. No. 9,971,678:

**1**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:
 display a list of one or more mobile device types from which a user can select;
 simulate one or more characteristics of a selected mobile device type;
 initiate loading of at least one of the selected characteristics from at least one of a remote server and a computer-readable media;
 monitor utilization of one or more resources of the selected mobile device type over time as an application is running;
 display a representation of one or more of the monitored resources.

## APPENDIX B: Example ineligible claim in *Aftechmobile*

Claim 1 of U.S. Pat. No. 8,813,028:

1. A computer implemented method for creating a mobile application for a user device, comprising:

provide a mobile application development software executable by at least one processor configured to create said mobile application, wherein said mobile application development software is accessible by said user device via a network;

providing a plurality of pre-coded software components executable by said at least one processor and encapsulated in a mobile application creation interface, wherein said pre-coded software components are fully developed applications that can be assembled to build apps in the mobile application creation interface, wherein said mobile application creation interface is accessible at the user device via the network to download and deploy mobile apps in any mobile interface, device or wearables, wherein said pre-coded software components are adaptable based on context and behavioral elements, wherein said pre-coded software components comprise hierarchical layers of data, interactive elements configured to enable interactions with said data, and predetermined criteria, and wherein said pre-coded software components dynamically create multiple pages within said pre-coded software components based on data and mapping defined by a user;

dynamically mapping said data to be rendered in said mobile application with one or more of a plurality of data sources by said mobile application development software; receiving a selection of one of preconfigured user interfaces and a list of predefined user interfaces from said user device by said mobile application development software via said network for launching said mobile application creation interface;

receiving an indication of each of one or more of said pre-coded software components from said user device, by said mobile application development software via said network;

creating one or more composite software components by combining more than one of distinct software components selected from a plurality of component sources and/or said pre-coded software components by said mobile application development software;

receiving inputs from said user for inserting one or more of said each of said one or more of said pre-coded software components and said created one or more composite software components into said launched mobile application creation interface on said user device by said mobile application development software~ wherein said received inputs comprise inputs for dragging and dropping one or more of said each of said one or more of said pre-coded software components and said created one or more composite software components;

generating one or more recommendations for addition of one or more characteristic objects associated with said mobile application by said mobile application development software based on a real time analysis and dynamic learning of selective data of similar mobile applications developed based on one or more of functionality, an industry, and a category related to said mobile application;

adaptively configuring one or more application programming interfaces for a backend integration of said mobile application with said user device by said mobile application development software for operating said mobile application on said user device; and

creating said mobile application in said launched mobile application creation interface by said mobile application development software using one or more of said inserted one or more of said each of said one or more of said pre-coded software components and said created one or more composite software components, said generated one or more recommendations, said dynamically mapped data, and said adaptively configured one or more application programming interface.

## APPENDIX C: Example ineligible claim in *Simio*

### Claim 1 of U.S. Pat. No. 8,156,468:

**1**. A computer-based system for developing simulation models on a physical computing device, the system comprising:

one or more graphical processes;

one or more base objects created from the one or more graphical processes,

wherein a new object is created from a base object of the one or more base objects by a user by assigning the one or more graphical processes to the base object of the one or more base objects;

wherein the new object is implemented in a 3-tier structure comprising:

an object definition, wherein the object definition includes a behavior,

one or more object instances related to the object definition, and

one or more object realizations related to the one or more object instances;

wherein the behavior of the object definition is shared by the one or more object instances and the one or more object realizations; and

an executable process to add a new behavior directly to an object instance of the one or more object instances without changing the object definition and the added new behavior is executed only for that one instance of the object.