**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br>                 Plaintiffs, <br><br> v. <br><br> APPLE INC., CAPITAL ONE, N.A., CAPITAL ONE SERVICES, LLC, FROST BANK, and CULLEN/FROST BANKERS, INC., <br><br>                 Defendants. | Civil Action No. 4:25-cv-00230 <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS FROST BANK AND CULLEN/FROST BANKERS, INC.'S PARTIAL
MOTION TO DISMISS PLAINTIFFS WAPP TECH LIMITED PARTNERSHIP AND
WAPP TECH CORP.'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 4

    A.  Pleading Requirement Under *Iqbal/Twombly* ............................................ 4

    B.  Inducement of Infringement ....................................................................... 5

    C.  Marking Statute ......................................................................................... 6

IV.   THE FAC FAILS TO CURE SEVERAL FATAL FLAWS IN ITS CLAIMS FOR
     RELIEF .............................................................................................................. 7

    A.  The FAC Fails to Sufficiently Plead Direct Infringement of Claim 60 of the '192
       Patent ...................................................................................................... 7

    B.  The FAC Fails to Sufficiently Plead Induced Infringement ...................... 10

    C.  The FAC Fails to Sufficiently Plead a Claim for Pre-Suit Damages Under the
       Marking Statute ..................................................................................... 12

V.    CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)......................................................................................7

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
    6 F.3d 1523 (Fed. Cir. 1993).........................................................................................7

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. (Arctic Cat I)*,
    876 F.3d 1350 (Fed. Cir. 2017).................................................................6, 27, 13, 15

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. (Arctic Cat II)*,
    950 F.3d 860 (Fed. Cir. 2020)..................................................................................6, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5

*Barry v. Medtronic, Inc.*,
    914 F.3d 1310 (Fed. Cir. 2019)....................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................4, 5

*Bos. Heart Diagnostics Corp. v. Harmonyx Diagnostics, Inc.*,
    No. 4:15-CV-378, 2015 WL 11118107 (E.D. Tex. Sept. 23, 2015)......................10

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ....................................................................................5, 9

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)....................................................................................................5

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-CV-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015) ................7, 8

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)....................................................................................11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)......................................................................................8

*Express Mobile, Inc. v. DreamHost LLC*,
    No. 1:18-CV-01173-RGA, 2019 WL 2514418 (D. Del. June 18, 2019)...............13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................5

*In re Bill Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012).................................................4, 5, 11

*Lans v. Digital Equip. Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001)................................................................6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)................................................................4

*Lubby Holdings LLC v. Chung*,
  11 F.4th 1355 (Fed. Cir. 2021) ................................................................7

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007)................................................................7

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)...............................................................11

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
  No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) .........................12

*Mullen Indus. LLC v. Meta Platforms, Inc.*,
  No. 1:24-CV-354-DAE, 2025 WL 326402 (W.D. Tex. Jan. 29, 2025)...................................9

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
  No. 2:24-CV-00049-JRG, 2025 WL 1658927 (E.D. Tex. June 11, 2025) ............................11

*NorthStar Sys. LLC v. Volkswagen AG*,
  No. 2:22-CV-00486-JRG, 2023 WL 5723648 (E.D. Tex. Sept. 5, 2023) ................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  843 F.3d 1315 (Fed. Cir. 2016)................................................................6

*Salazar v. HTC Corp.*,
  No. 16-CV-10960, 2018 WL 2041732 (E.D. Tex. May 1, 2018)............................6

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
  785 F.3d 625 (Fed. Cir. 2015)...............................................................10

*Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
  No. 2:13-CV-38-JRG, 2014 WL 894805 (E.D. Tex. Mar. 4, 2014)...................................5, 10

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018)) ................................................................6

*VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*,
   No. 2:24-CV-00093, 2024 WL 4519761 (E.D. Tex. Oct. 17, 2024) .....................................13

*WAPP Tech. Ltd et al. v. Hewlett Packard Enterprise Co.*,
   No. 4:18-CV-468-ALM (E.D. Tex. July 2, 2018) ...................................................................2

*WAPP Tech. Ltd. v. Bank of Am. Corp.*,
   No. 4:18-CV-519-ALM(E.D. Tex. July 20, 2018) .................................................................3

*WAPP Tech. Ltd. v. Bank of Am. N.A.*,
   No. 4:21-CV-00670-ALM (E.D. Tex. Aug. 27, 2021) ...........................................................3

*WAPP Tech. Ltd. v. Bank of Am. N.A.*,
   No. 4:21-CV-00670-ALM, Dkt. 159 (E.D. Tex. Jan. 25, 2023)........................................3, 14

*WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*,
   No. 4:23-CV-1137 (E.D. Tex. Dec. 22, 2023)........................................................................4

*WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*,
   No. 4:23-CV-1137, Dkt. 95 (E.D. Tex. Mar. 11, 2025) ........................................................4

*Wapp Tech. Ltd. v. Micro Focus Int'l PLC*,
   No. 4:18-CV-00469, Dkt. 1 ................................................................................................14

*WAPP Tech. Ltd. v. Micro Focus Int'l PLC*,
   No. 4:18-CV-469-ALM (E.D. Tex. July 2, 2018) ...................................................................2

*WAPP Tech. Ltd. v. Wells Fargo & Co.*,
   No. 4:18-CV -501-ALM (E.D. Tex. July 16, 2018) ................................................................3

*WAPP Tech. Ltd. v. Wells Fargo & Co.*,
   No. 4:18-CV-501-ALM, Dkt. 197 (E.D. Tex. Jan. 11, 2022)..................................................3

*WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*,
   No. 4:21-CV -00671-ALM (E.D. Tex. Aug. 27, 2021) ...........................................................3

*WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*,
   No. 4:21-CV-00671-ALM, Dkt. 138 (E.D. Tex. Nov. 28, 2022) .......................................3, 14

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
   No. 2:17-CV-00456-JRG, 2018 WL 6787356 (E.D. Tex. Nov. 14, 2018).............................7

*WiTricity Corp. v. Momentum Dynamics Corp.*,
   563 F. Supp. 3d 309 (D. Del. 2021).......................................................................................9

**STATUTES**

35 U.S.C. § 271(b)...................................................................................................................5

35 U.S.C. § 287.................................................................................................2, 13, 15

35 U.S.C. § 287(a).....................................................................6, 7, 12, 13, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 15

## I.     INTRODUCTION

Plaintiff WAPP responded to defendant Frost's Motion to Dismiss the Original Complaint (Dkt. 41) by filing a First Amended Complaint ("FAC") (Dkt. 55).  The FAC, however, fails to address the issues raised in Frost's Motion to Dismiss.  Frost, therefore, respectfully moves this Court under Fed. R. Civ. P. 12(b)(6) to dismiss the FAC's claims against Frost for (1) direct infringement of Claim 60 of the '192 Patent, (2) indirect infringement, and (3) past damages.

*First*, Frost's Motion to Dismiss identified that the Original Complaint merely parroted claim language for asserted Claim 60 of the '192 Patent.[1]  The FAC amends the Original Complaint to include a chart (FAC Exhibit H) for the '192 Patent.  That chart, however, merely states that "*upon information and belief*, . . . Frost applications are configured to enable a user to modify a photo on the mobile device.  These modifications may include (but are not limited to):  resizing, scaling, cropping, filtering, reformatting, and color adjustment."  Dkt. 55-8 at PDF page 64 (emphasis added).  Whether Frosts' application can or cannot modify a photo on a mobile device is readily ascertainable from simply using that application.  Yet, the FAC includes *zero* factual support for the conclusory allegation that Frost's application supposedly practices this claim requirement.  The FAC is insufficient to state a claim of direct infringement against Frost regarding Claim 60 of the '192 Patent and should be dismissed as to that issue.

*Second*, the FAC fails to cure any of the deficiencies in the allegations of indirect infringement that Frost's Motion to Dismiss identified.  Like the Original Complaint, the FAC fails to identify any underlying direct infringer or direct act of infringement, much less provide any facts suggesting that Frost had the "specific intent" required to induce infringement.  The

---

[1] WAPP alleges that Frost infringes U.S. Patent Nos. 8,924,192 (the "'192 Patent"), 9,298,864 (the "'864 Patent"), 9,971,678 (the "'678 Patent"), 10,353,811 (the "'811 Patent"), and 10,691,579 (the "'579 Patent") (collectively, the "Asserted Patents").

FAC's indirect allegations remain insufficient as a matter of law and should be dismissed.

**Third**, the FAC likewise fails to adequately plead compliance with the marking requirements under 35 U.S.C. § 287 and thus fails to state a claim for pre-suit damages.  The FAC alleges for the first time that WAPP does not have a duty to mark any products because it has not made, offered for sale, sold, or imported any article covered by the claims of the Asserted Patents and therefore has complied with § 287.  But that is insufficient where, as here, there are licensees to the Asserted Patents.  Again, the public record, the Original Complaint, and the FAC establish that WAPP has licensed others to make, use, and sell products that WAPP contends practice the Asserted Patents and that WAPP's licensees continue to implement those products.  It is well established that a patentee with licensees to its asserted patents must plead and establish that its licensees have complied with the marking statute for the patentee to be entitled to past damages.  Yet, despite Frost previously raising this fatal flaw and identifying several licensed products that WAAP itself has contended are practicing the asserted patents, the FAC fails to allege that WAPP complied with § 287 by having its licensees mark those products.  The FAC fails to plead the necessary elements for a claim of past damages and that claim should be dismissed.

## II.    STATEMENT OF FACTS

On July 2, 2018, WAPP filed a patent infringement lawsuit against Micro Focus International PLC alleging Micro Focus's LoadRunner, Performance Center, StormRunner, and Mobile Center software products infringed three of the five Asserted Patents at issue in this case: the '192 Patent, the '864 Patent, and the '678 Patent.  Dkt. 55, ¶ 184; *see also WAPP Tech. Ltd. v. Micro Focus Int'l PLC*, No. 4:18-CV-469-ALM, Dkt. 1 (E.D. Tex. July 2, 2018).[2]  Weeks later,

---

[2] WAPP also filed a lawsuit against Hewlett Packard Enterprise Company on July 2, 2018. *See WAPP Tech. Ltd et al. v. Hewlett Packard Enterprise Co.*, No. 4:18-CV-468-ALM (E.D. Tex. July 2, 2018). That case was dismissed with prejudice on September 20, 2021.

WAPP filed suit against Wells Fargo and Bank of America asserting that their use of the accused Micro Focus software infringed the same three patents. Dkt. 55, ¶ 185; *see also WAPP Tech. Ltd. v. Wells Fargo & Co.*, No. 4:18-CV-501-ALM, Dkt. 1 (E.D. Tex. July 16, 2018); *WAPP Tech. Ltd. v. Bank of Am. Corp.*, No. 4:18-CV-519-ALM, Dkt. 1 (E.D. Tex. July 20, 2018). In 2021, WAPP entered settlement agreements with Micro Focus, Wells Fargo, and Bank of America. *Id.* ¶ 184; *WAPP Tech. Ltd. v. Wells Fargo & Co.*, No. 4:18-CV-501-ALM, Dkt. 197 (E.D. Tex. Jan. 11, 2022) (dismissing case against Wells Fargo with prejudice); *WAPP Tech. Ltd. v. Bank of Am. Corp.*, No. 4:18-CV-519-ALM, Dkt. 170 (E.D. Tex. Sept. 20, 2021) (dismissing case against Bank of America with prejudice). Frost's Motion to Dismiss identified the Micro Focus product as a licensed product represented by WAPP as practicing the asserted patents. Yet the FAC does not plead that Micro Focus, Wells Fargo, or Bank of America ceased their use of the allegedly practicing Micro focus products, nor that those products were marked with the asserted patent numbers following WAPP's grant of license rights.

Following the Micro Focus litigation, WAPP filed a second round of lawsuits against Wells Fargo and Bank of America in 2021, this time alleging that their use of different products—Apple's Xcode and Google's Android Studio—infringed all five Asserted Patents. *See e.g.*, *WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671-ALM, Dkt. 1 (E.D. Tex. Aug. 27, 2021); *WAPP Tech. Ltd. v. Bank of Am. N.A.*, No. 4:21-CV-00670-ALM, Dkt. 1 (E.D. Tex. Aug. 27, 2021). WAPP eventually entered confidential settlements with both Wells Fargo and Bank of America and dismissed the cases with prejudice. Dkt. 55, ¶¶ 186-87; *see also WAPP Tech. Ltd. v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671-ALM, Dkt. 138 (E.D. Tex. Nov. 28, 2022); *WAPP Tech. Ltd. v. Bank of Am. N.A.*, No. 4:21-CV-00670-ALM, Dkt. 159 (E.D. Tex. Jan. 25, 2023). Frost's Motion to Dismiss identified Apple's Xcode and Google's Android Studio products as

licensed to Wells Fargo and Bank of America for all Asserted Patents and that WAPP has represented those as practicing all Asserted Patents. Yet the FAC does not plead that Wells Fargo or Bank of America has ceased their use of these products, nor that those products were marked with the asserted patent numbers following WAPP's grant of license rights.

WAPP filed a similar suit against JPMorgan Chase in 2023, again asserting the five Asserted Patents based on the use of Apple's Xcode and Google's Android Studio. Dkt. 55, ¶ 188; *see also WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*, No. 4:23-CV-1137, Dkt. 1 (E.D. Tex. Dec. 22, 2023). That case, too, ended in a confidential settlement and dismissal with prejudice. Dkt. 55, ¶ 188; *see also WAPP Tech. Ltd. v. JPMorgan Chase Bank, NA*, No. 4:23-CV-1137, Dkt. 95 (E.D. Tex. Mar. 11, 2025). The FAC does not plead that JPMorgan Chase ceased its use of the allegedly practicing Apple and Google products, nor has it pleaded that those products were marked with the asserted patent numbers following WAPP's grant of license rights. To the contrary, WAPP's FAC describes Xcode and Android Studio as widely used software tools for developing mobile applications. Dkt. 55, ¶¶ 39, 42, 196. The FAC also does not plead that WAPP provided Frost notice of alleged infringement before filing the Original Complaint.

## III.    LEGAL STANDARD

### A.    Pleading Requirement Under *Iqbal/Twombly*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the plaintiff need not "prove its case at the pleading stage," (*In re Bill Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)), the complaint must "place the alleged infringer on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal citations and

quotations omitted). A claim satisfies this standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are not enough. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."). Thus, "failure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss." *In re Bill*, 681 F.3d at 1342.

## B.    Inducement of Infringement

To state a claim for induced infringement under 35 U.S.C. § 271(b), a complaint must plausibly allege "(1) that a third party, or the defendant in combination with a third party, has performed acts sufficient to constitute infringement; (2) that the defendant knew of the patent and that the acts in question would infringe; and (3) that the defendant had specific intent to encourage the third party's infringement." *Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-CV-38-JRG, 2014 WL 894805, at *2 (E.D. Tex. Mar. 4, 2014). Induced infringement requires "knowledge of the existence of the patent that is infringed." *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015) (explaining that liability under Section 271(b) "can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement'") (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). The intent necessary for a claim of "[i]nducement can be found where there is [e]vidence of active steps taken to encourage direct infringement." *Barry v. Medtronic, Inc.*, 914

F.3d 1310, 1334 (Fed. Cir. 2019) (quoting *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018)).  Furthermore, a claim of induced infringement can stand only if there is direct infringement by a third party.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).

### C.    Marking Statute

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover [pre-suit] damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) (hereinafter "*Arctic Cat I*"); 35 U.S.C. § 287(a).  The marking obligation also arises if the patentee's licensees make or sell practicing products. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (hereinafter "*Arctic Cat II*").  "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat I*, 876 F.3d at 1366; *Salazar v. HTC Corp.*, No. 16-CV-10960, 2018 WL 2041732, at *2 (E.D. Tex. May 1, 2018) (noting that it is Plaintiff "who best knows whether its articles (or its licensees' articles) have been marked, and has the burden of pleading and proving compliance with the marking requirement."); *see also Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (holding that non-cognizable damages claims relating to marking may be ruled on at the motion to dismiss stage).

To satisfy the notice requirements of § 287(a), a patentee who makes or sells patented articles (or has licensees who purportedly practice the patents) must either provide actual notice—*i.e.*, an "affirmative communication of a specific charge of infringement by a specific accused product or device"—or constructive notice—*i.e.*, marking of the patented products. *Arctic Cat II*, 950 F.3d at 864; 35 U.S.C. § 287(a).  "Actual notice requires the affirmative communication of a

specific charge of infringement by a specific accused product or device." *Id.* (internal citations and quotations omitted).

Where a patentee has licensed the patent to others, the patentee must take "reasonable efforts" to ensure that any licensees to the patent mark their practicing products with the applicable patent numbers. *Arctic Cat I*, 876 F.3d at 1366. A patentee obligated to mark that fails to comply with the marking statute bears the consequences—"he is not entitled to damages before the date of actual notice." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1359 (Fed. Cir. 2021).

The marking requirement applies where a patent includes both method and apparatus claims and the patentee does not unequivocally assert only method claims in its complaint. *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("[I]f a single patent contains both apparatus claims and method claims, the marking requirement applies to all the claims.") (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1539 (Fed. Cir. 1993)). Once a patentee asserts apparatus claims, the marking obligation applies even where the apparatus claim assertions later are withdrawn to leave only method claims. *See, e.g.*, *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 6787356, at *1 (E.D. Tex. Nov. 14, 2018) ("[O]nce apparatus and method claims are asserted, … the requirements of the marking statute are triggered"—even where "the apparatus claims are later dropped.").

## IV. THE FAC FAILS TO CURE SEVERAL FATAL FLAWS IN ITS CLAIMS FOR RELIEF

### A. The FAC Fails to Sufficiently Plead Direct Infringement of Claim 60 of the '192 Patent

In the context of patent infringement, WAPP must "plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at *2 (E.D. Tex. June 3, 2015) (quoting *McZeal*

*v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).   Although "detailed factual allegations are not required . . . a complaint must allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  *Id*. at *2 (internal quotations marks and citations omitted).

The allegations regarding Claim 60 of the '192 Patent in the FAC fall far short of that standard.  Claim 60 of the '192 Patent requires "[a] system comprising:  an application configured to *enable a user to modify a photo on the mobile device*."  Dkt. 55, Ex. H at 63 (emphasis added). Like the Original Complaint, Count I of the FAC simply alleges that Frost infringes this claim "by making, using, selling, offering for sale, and/or importing infringing mobile banking applications" and then asserts that the Frost application is the claimed system and was developed using the claimed "software authoring platform configured to . . ." recited in the claim.  Dkt. 55, ¶ 216.  In the claim charts appended to the FAC, WAPP again parrots the claim language, asserting "upon information and belief . . . the check deposit feature of the [] Frost application[] [is] configured to enable a user to modify a photo on the mobile device."  Dkt. 55, Ex. H at 63, Ex. I at 37.  WAPP then concludes—without any factual support—that "[t]hese modifications may include (but are not limited to):  resizing, scaling, cropping, filtering, reformatting, and color adjustment."  *Id.*

WAPP's reliance on "information and belief" does not excuse its failure to provide any factual support.  A plaintiff may plead "on information and belief" "when essential information lies uniquely within another party's control, *but only if* the pleading sets forth the specific facts upon which the belief is reasonably based."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) (emphasis added).  Courts have acknowledged that "it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or

confidential data such as source code." *WiTricity Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 328 (D. Del. 2021). But that does not obviate the requirement that a complaint set out "facts to support each allegation of infringement," thereby providing "*factual information* about the performance of the accused products based on publicly-available information and on *plausible inferences* from the underlying performance attributes of Defendant's products." *Id.* at 328-29 (emphasis added).

Here, WAPP's FAC fails to meet this requirement. It does not plead a single fact concerning Frost's systems or methods that would allow the Court to draw a "plausible inference" of infringement. Although the FAC cites a Frost web page that states users can "[s]nap a picture to deposit your checks" (Dkt. 55, ¶ 39, n. 17), the FAC recites *zero* facts that the Frost application "enables a user to *modify a photo* on a mobile device" (*see id.* ¶¶ 214-30, Ex. H at 63, Ex. I at 37). This omission is striking given that Frost's mobile application is publicly available and could have simply been tested to determine whether there is any support for the conclusory infringement allegations.

Where, as here, a claim for direct infringement merely parrots claim language and relies on conclusory assertions without any factual support, courts have routinely granted dismissal for failure to meet the *Iqbal/Twombly* standard. *See, e.g.*, *NorthStar v. Volkswagen AG*, No. 2:22-CV-00486-JRG, 2023 WL 5723648, at *3 (E.D. Tex. Sept. 5, 2023) (dismissing claim where plaintiff set forth bare allegations about the accused products based on the language of the claim element); *Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-CV-354-DAE, 2025 WL 326402, at *5 (W.D. Tex. Jan. 29, 2025) (dismissing claim where plaintiff "'simply parrot[ed] claim language without explaining what facts show[ed] how the accused product practice[d]'" the claim); *see also Bot M8*, 4 F.4th at 1353 ("[A] plaintiff cannot assert a plausible claim for infringement under the

*Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."). Because The FAC's claim of direct infringement of Claim 60 of the '192 Patent is devoid of any facts necessary to support a plausible inference of infringement by Frost, the Court should dismiss that claim.

### B.    The FAC Fails to Sufficiently Plead Induced Infringement

The FAC's indirect infringement claims against Frost are insufficient to survive a motion to dismiss because they fail to identify any alleged underlying direct infringer who Frost purportedly has induced to infringe, and because they fail to plead the requisite intent to induce infringement of the Asserted Patents.[3] Thus, the Court should dismiss the FAC's indirect infringement allegations.

To adequately plead induced infringement, a complaint must demonstrate that a defendant (1) had knowledge of the patent, (2) knew that the induced acts of a third party constitute infringement, and (3) had a "specific intent" to induce the third party to infringe. *Tierra Intelectual Borinquen*, 2014 WL 894805, at *2. In addition, the complaint must identify a direct infringer and allege that the third party directly infringes the patent as a result of the inducement. *See, e.g.*, *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (explaining that direct infringement is "necessary to find liability for induced infringement"); *Bos. Heart Diagnostics Corp. v. Harmonyx Diagnostics, Inc.*, No. 4:15-CV-378, 2015 WL 11118107, at *6 (E.D. Tex. Sept. 23, 2015) ("[T]o survive a motion to dismiss [induced infringement], [a]

---

[3] The FAC only alleges post-suit indirect infringement by Frost and does not include any allegations that Frost had notice of the Asserted Patents, let alone any purported infringement, prior to the filing date of the Original Complaint. Dkt. 55, ¶¶ 215, 284, 266, 285, 304. In addition, the FAC's indirect infringement allegations are limited to induced infringement.

complaint must plead facts that plausibly allege:  1. Direct infringement . . . .").  Here, the FAC fails to adequately plead the requisite elements of inducement.

*First*, the FAC fails to plead direct infringement by any third party.  Instead, the claims of induced infringement merely state that Frost has "induced" some unknown "third parties to author mobile applications on their behalf using Apple's Xcode or Google's Android Studio" and have "encourage[d] and intend[ed] to induce infringement . . . by instructing third parties to author applications."  *See, e.g.*, Dkt. 55, ¶¶ 38, 41, 215, 247, 266, 285, 304.  That is insufficient to state a claim for inducement.  *See Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-00049-JRG, 2025 WL 1658927, at *4 (E.D. Tex. June 11, 2025) (dismissing indirect infringement claims where plaintiff failed to plausibly plead an underlying act of direct infringement).

*Second*, the FAC fails to adequately plead any specific intent to induce infringement.  Other than a conclusory statement that Frost "knowingly encourage[d] and intend[ed] to induce infringement" of the Asserted Patents, the FAC does not contain any factual allegations that could plausibly support an inference of any specific intent by Frost.  Dkt. 55, ¶¶ 215, 247, 266, 285, 304. A "specific intent" to induce infringement requires "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  Yet the FAC alleges only encouragement and instruction of some unknown third parties "to author applications compatible with Apple's iOS or Google's Android operating systems"—not encouragement of *infringement*.  Dkt. 55, ¶¶ 215, 247, 266, 285, 304.  The FAC's generic, cookie-cutter statement that Frost encourages or instructs others to use a product—without alleging any facts showing that Frost took affirmative steps to encourage or instruct a third party to use the accused instrumentalities in an infringing manner—is insufficient to show that Frost took any

11

"affirmative act to encourage *infringement* with knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014); *see also In re Bill*, 681 F.3d at 1339 (holding that "to survive a motion to dismiss" a claim of induced infringement "must contain facts plausibly showing that [defendant] specifically intended their customers to infringe [the asserted patent] and knew that the customer's acts constituted infringement"); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (dismissing induced infringement claims where the complaint failed to contain any "facts alleging a specific intent to induce the direct infringer").

For at least these reasons, the Court should dismiss the FAC's claims of induced infringement.

### C.    The FAC Fails to Sufficiently Plead a Claim for Pre-Suit Damages Under the Marking Statute

Despite explicitly acknowledging that there are licensees to the Asserted Patents that appear to still be selling and using alleged practicing products (Dkt. 1, ¶¶ 184-188) and despite Frost's Motion to Dismiss identifying the licensed products that WAPP contends practice the Asserted Patents and highlighting the well-established precedent that a patentee must plead that its licensees have complied with the marking statute by marking their practicing products (Dkt. 41 at 27-29), the FAC wholly ignores these issues.  Instead, the FAC only alleges that WAPP has no duty to mark because it does not directly sell or import products and thus WAPP has complied with the marking statute.  That is wrong as a matter of law and is insufficient to state a claim for pre-suit damages.

Under § 287(a), a plaintiff in a case like this is limited to post-complaint damages unless it provides notice of infringement, "either by providing constructive notice—*i.e.*, marking

products—or by providing actual notice to an alleged infringer."[4] *Arctic Cat II*, 950 F.3d at 864. It is WAPP's burden to plead compliance with § 287(a), *including for its licensees*. *Arctic Cat I*, 876 F.3d at 1366 ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement. . . . A patentee's licensees must also comply with § 287."). In its FAC, WAPP alleges for the first time that because it has not made, offered for sale, sold, or imported any articles covered by the patents, it has "never had any duty to mark products under Section 287(a)" and therefore has complied with the marking statute. Dkt. 55, ¶¶ 239-240, 258-259, 277-278, 296-297, 315-316. The FAC, however, does not plead that any of its licensees' products are marked with the Asserted Patent numbers. *See* Dkt. 55. Nor does it plead that any of the licensees to the Asserted Patents has complied with the marking statute. *See id.* The FAC likewise does not establish or even allege that WAPP's licensees have no obligation to mark their licensed products. *See id*. WAPP has therefore failed to adequately plead compliance with the marking statute and its claim for past damages should be dismissed. *See Express Mobile, Inc. v. DreamHost LLC*, No. 1:18-CV-01173-RGA, 2019 WL 2514418, at *2 (D. Del. June 18, 2019) (granting a motion to dismiss a plaintiff's claim for past damages where the plaintiff did not plead compliance with the marking statute despite there being no evidence that there were any products for it to mark); *see also VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*, No. 2:24-CV-00093, 2024 WL 4519761 at *5 (E.D. Tex., Oct. 17, 2024) (granting in part defendant's motion to dismiss for failing to plead specific facts to support its conclusory allegation that no marking is required).

WAPP's prior litigation history, as detailed in the Statement of Facts, confirms the

---

[4] The FAC alleges that Frost was only aware of the infringement allegations from the filing date of the original Compliant. Dkt. 55, ¶¶ 232, 251, 270, 289, 308. This concession forecloses actual notice as a basis for pre-suit damages. Accordingly, WAPP can recover pre-suit damages only if it plausibly pleads constructive notice through compliance with the marking statute.

existence of licensees obligated to comply with § 287(a) under WAPP's own allegations that the licensed products practice the Asserted Patents.  In its 2018 lawsuit against Micro Focus, WAPP alleged that Micro Focus's LoadRunner, Performance Center, StormRunner, and Mobile Center software practiced the '192, '864, and '678 Patents.  *See e.g.*, Dkt. 55, ¶ 184; *see also Wapp Tech. Ltd. v. Micro Focus Int'l PLC*, No. 4:18-CV-00469, Dkt. 1, ¶ 52 (E.D. Tex. July 2, 2018).  In 2021, WAPP entered into a settlement agreement with Micro Focus, which, on information and belief, likely covered all five Asserted Patents.  Dkt. 55, ¶ 184.  In its complaint against Micro Focus, WAPP also touted that its "Performance Engineering Innovations" were incorporated into licensed products that won industry awards, indicating the existence of licensees selling products practicing the Asserted Patents.  *Wapp Tech. Ltd. v. Micro Focus Int'l PLC*, No. 4:18-CV-00469, Dkt. 1, ¶ 14 (E.D. Tex. July 2, 2018).  Frost's Motion to Dismiss identified all of these unmarked products and the fact that WAPP has represented them as practicing the Asserted Patents.  Yet the FAC fails to allege that Micro Focus or any other licensee marked these products with the relevant patent numbers.  *See* Dkt. 55.

Similarly, WAPP licensed Wells Fargo and Bank of America in 2022 and JPMorgan in 2023 with respect to all five Asserted Patents for their use of Apple's Xcode and Google's Android Studio.  Dkt. 55, ¶¶ 186–87; *see also Wapp Tech. Ltd. v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671-ALM, Dkt. 138 (E.D. Tex. Nov. 28, 2022); *Wapp Tech. Ltd. v. Bank of Am. N.A.*, No. 4:21-CV-00670-ALM, Dkt. 159 (E.D. Tex. Jan. 25, 2023).  WAPP contended (and continues to contend in this case) that continued use of those products practices the five Asserted Patents, yet the FAC fails to allege that WAPP's licensees have complied with § 287(a) by marking any allegedly practicing products.  *See* Dkt. 55.

Finally, against this backdrop and in view of Frost's Motion to Dismiss the Original Complaint, the FAC's statement that "[n]o defendant has yet met or attempted to meet [the] burden" of identifying unmarked patented articles is unfounded.  Dkt. 55, ¶¶ 241, 260, 279, 298, 317.  To the contrary, Frost's prior motion to dismiss specifically identified licensee products—including Micro Focus's LoadRunner, Performance Center, StormRunner, Mobile Center software, Apple Xcode, and Google's Android Studio—that WAPP has represented practice the Asserted Patents, thus satisfying the burden laid out in *Arctic Cat*.  *See Arctic Cat I*, 876 F.3d at 1368-69 (holding that although the alleged infringer bears the "initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287," once it does so the burden then shifts to the patentee "to prove those products [] do not practice the patent-at-issue"); *see also* Dkt. 41 at 27-29.

Given the FAC's failure to allege that its licensees complied with § 287(a) by marking the licensed products that WAAP contends practice the Asserted Patents, WAPP's claim for pre-suit damages legally fails and should be dismissed with prejudice under Rule 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons, Frost respectfully requests that the Court dismiss WAPP's claims of direct infringement of Claim 60 of the '192 Patent, indirect infringement, and pre-suit damages.

Dated:  September 5, 2025

Respectfully submitted,

By:  /s/ *Morgan G. Mayne*

Morgan G. Mayne
Bar No. 24084387
morgan.mayne@bakerbotts.com

Christa Brown-Sanford
Bar No. 24045574
christa.sanford@bakerbotts.com

Douglas M. Kubehl
Bar No. 00796909
doug.kubehl@bakerbotts.com

Emily Deer
Bar No. 24116352
emily.deer@bakerbotts.com

Alexis Robison
Bar No. 24137217
alexis.robison@bakerbotts.com

**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
(214) 953-6500
(214) 661-6503 – Fax

***ATTORNEYS FOR DEFENDANTS FROST BANK AND CULLEN/FROST BANKERS, INC.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on the 5th day of September 2025.  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).


*/s/ Morgan G. Mayne*
Morgan G. Mayne