# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | |
| Plaintiffs, | |
| v. | Civil Action No. 4:25-cv-00230-ALM |
| | JURY TRIAL DEMANDED |
| APPLE INC., CAPITAL ONE, N.A., CAPITAL ONE SERVICES, LLC, FROST BANK, and CULLEN/FROST BANKERS, INC., | ██████████████ |
| Defendants. | |


## DEFENDANT APPLE INC.'S RENEWED MOTION TO DISMISS

# TABLE OF CONTENTS

I.      Introduction ......................................................................................................... 1

II.     Statement of the Issue ......................................................................................... 2

III.    Factual Background and Procedural History ....................................................... 2

        A.      The Parties .............................................................................................. 2

        B.      Wapp's Infringement Allegations ........................................................... 3

        C.      Venue Allegations Against Apple ........................................................... 4

                1.      Apple's Relationship with Best Buy ........................................... 4

                2.      Apple's Relationship with Target ............................................... 6

IV.     Legal Standard .................................................................................................... 8

V.      Argument ............................................................................................................. 9

        A.      The Claims Against Apple Should Be Dismissed For Improper Venue
                Because Wapp Has Not Pleaded Facts Showing Any Regular And
                Established Place Of Business "Of The Defendant" In This District. ................. 10

                1.      Apple does not own or lease any space in Best Buy's or Target's
                        stores, or otherwise exercise possession or control over them. ................ 12

                2.      Apple does not require Community Specialists to live in the
                        District or to store materials to be distributed or sold within the
                        District ........................................................................................... 18

                3.      Apple does not hold out Best Buy or Target stores as its places of
                        business ......................................................................................... 19

                4.      Apple's places of business in other venues differ significantly from
                        Best Buy's and Target's stores. ................................................... 23

        B.      If Not Dismissed Outright, This Case Should Be Transferred To A Proper
                Venue ....................................................................................................... 24

VI.     Conclusion ......................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*4WEB, Inc. v. NuVasive, Inc.*,
    No. 2:23-cv-00192-JRG, 2024 WL 1932416 (E.D. Tex. May 2, 2024)...............15, 16, 18, 21

*Agis Software Dev. LLC v. T-Mobile USA, Inc.*,
    No. 2:21-cv-24-JRG-RSP, 2021 WL 6616856 (E.D. Tex. Nov. 10, 2021).......................9, 24

*AlexSam, Inc. v. Simon Prop. Grp. (Tex.), L.P.*,
    No. 19-cv-331-JRG, 2021 WL 9816147 (E.D. Tex. Aug. 19, 2021) .......................................9

*AptusTech LLC v. Trimfoot Co.*,
    No. 4:19-cv-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020)............................21

*Auguste v. Elementree Inc.*,
    No. 3:23-CV-0364-B, 2024 WL 264687 (N.D. Tex. Jan. 24, 2024) .....................................13

*Blue Spike, LLC v. Caterpillar, Inc.*,
    No. 6:16-cv-01361-RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017)............................24

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017).....................................................10, 11, 17, 18, 21, 22, 23, 26

*Dubin v. United States*,
    380 F.2d 813 (5th Cir. 1967) ..............................................................................................26

*Duke Univ. v. Sandoz Inc.*,
    No. 2:17-cv-528-JRG, 2018 WL 4258520 (E.D. Tex. Apr. 3, 2018)....................................26

*EMA Electromechanics, Inc. v. Siemens Corp.*,
    No. 6:21-cv-1001-ADA, 2022 WL 1241967 (W.D. Tex. Apr. 26, 2022) ................................8

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
    No. 2:17-cv-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018) ...................10, 11

*Fractus, S.A. v. ZTE Corp.*,
    No. 2:17-cv-00561-JRG, 2018 WL 11363369 (E.D. Tex. Sept. 28, 2018) ...........................17

*In re Google LLC*,
    949 F.3d 1338 (Fed. Cir. 2020)..................................................................................10, 14, 18

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
    No. SA CV 17-1748-DOC, 2018 WL 4963129 (C.D. Cal. June 22, 2018)......................11, 22

*IOT Innovations LLC v. Monitronics Int'l, Inc.*,
  No. 2:22-cv-0432-JRG-RSP, 2023 WL 6318049 (E.D. Tex. Sept. 11, 2023)........................18

*Koss Corp. v. Bose Corp.*,
  No. 6-20-cv-661-ADA, 2021 WL 7541417 (W.D. Tex. June 22, 2021)...........................12, 15

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) .................................8

*Magnacoustics, Inc. v. Resonance Tech. Co.*,
  132 F.3d 49 (Fed. Cir. 1997) (unpublished table decision) ......................................3

*Phillips v. Baker*,
  121 F.2d 752 (9th Cir. 1941) ............................................................17

*Seville v. Maersk Line, Ltd.*,
  53 F.4th 890 (5th Cir. 2022) ....................................................9, 25, 26

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  581 U.S. 258 (2017)..............................................................9, 11

*Tiare Tech., Inc. v. Dine Brands Glob., Inc.*,
  No. 2:22-cv-490-JRG-RSP, 2024 WL 607407 (E.D. Tex. Jan. 4, 2024) ...............................8

*Uniloc USA, Inc. v. Nutanix, Inc.*,
  No. 2:17-cv-00174-JRG, 2017 WL 11527109 (E.D. Tex. Dec. 6, 2017)..............................18

*In re Volkswagen Grp. of Am., Inc.*,
  28 F.4th 1203 (Fed. Cir. 2022) .......................................................14, 23

*Westech Aerosol Corp. v. 3M Co.*,
  927 F.3d 1378 (Fed. Cir. 2019)....................................................8, 26

*Westport Fuel Sys. Canada Inc. v. Ford Motor Co.*,
  No. 2:21-CV-00453-RWS, 2022 WL 4280490 (E.D. Tex. Sept. 15, 2022)...........................17

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018)..................................................10, 26

**Statutes**

28 U.S.C. § 1391(c) ..........................................................................9

28 U.S.C. § 1400(b) ...........................................................2, 3, 8, 9, 10, 26

28 U.S.C. § 1406(a) ..........................................................1, 2, 9, 25, 26

## I.    INTRODUCTION

The patent venue statute mandates dismissing this case against Apple. Apple is not incorporated here or headquartered here, and it has no physical presence in this District—no warehouses, facilities, or stores. In fact, Apple closed its physical stores here more than five years ago. Put succinctly, it does not reside here, and has no place of business here. As a matter of law, this is not a proper venue to file suit against Apple, and the claims against Apple should be dismissed in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).

Plaintiffs know this, and do not allege that Apple is based here or has any Apple Stores in the District. Instead, Wapp Tech Limited Partnership and Wapp Tech Corp. (collectively "Wapp") base the entirety of their venue allegations on the presence of Apple products in, and sporadic visits by Apple employees to, third-party Best Buy and Target stores (collectively, "Retailers"). According to Wapp, an Apple section within the Retailers' stores, and occasional visits by Apple employees to Best Buy, transform the Retailers' stores into Apple's physical places of business.

That is not the law. It is well established that the presence of third-party retailers in the District does not make venue proper as to a supplier like Apple. Here, Apple's declarations and other evidence bear out this business reality. Indeed, the Retailers' stores, including any displays within those stores, are the property of, and are under the control of, the Retailers. Apple does not own or lease any space in the stores or otherwise exercise possession or control over them. The Retailers, not Apple, determine where to place Apple merchandise displays within their stores. The Retailers, not Apple, own all the merchandise and fixtures within their stores. The Retailers even set the prices for the Apple products that they sell, and staff their stores with Best Buy or Target employees who complete all sales transactions. Apple does not send its employees to Target stores. The accused Apple technology, Xcode, is not pre-loaded onto Apple products available at the

Retailers' stores, nor can anyone walk into a Best Buy or Target and buy Xcode. And, naturally, Apple does not advertise the Retailers' stores as Apple's places of business, because they are not.

Venue is improper. Dismissal of the claims against Apple is the appropriate remedy here.[1]

## II.    STATEMENT OF THE ISSUE

Whether the Court should dismiss the claims against Apple under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a), or transfer the claims to a proper venue, because Wapp has not established that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400(b).

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Parties

Apple is a California corporation. Dkt. 55 ¶ 3. It designs, manufactures, and sells a wide range of consumer products. It sells those products directly to consumers through its website and Apple Stores, and to third-party retailers and distributors. Apple has not had any Apple Stores in the Eastern District of Texas since 2019. Declaration of Stephanie Dockendorf ("Dockendorf Decl.") ¶ 14. Wapp does not allege otherwise. Its first amended complaint avers that Apple "is a company organized and existing under the laws of the State of California with one of its principal places of business at 6900 W Parmer Ln, Austin, TX 78729." Dkt. 55 ¶ 3. Austin is not in this District, and in any event, Wapp does not allege that Apple's facility in Austin has any connection to this case or its allegations of infringement.[2]

---

[1] Apple respectfully recognizes this Court's experience with Wapp and its patents in prior cases. However, such experience has no bearing on whether venue is proper as to Apple.

[2] In addition to Apple, Wapp accuses four other entities of infringement in its first amended complaint: Capital One, N.A.; Capital One Services, LLC (together, "Capital One"); Frost Bank; and Cullen/Frost Bankers, Inc. (together, "Frost") (collectively, the "Bank Defendants"). Capital One is headquartered in McLean, Virginia. Frost is headquartered in San Antonio, Texas. The (continued…)

According to the first amended complaint, plaintiff Wapp Tech Limited Partnership is a Delaware limited partnership. Dkt. 55 ¶ 1. The other plaintiff entity, Wapp Tech Corp., is a corporation "organized and existing under the laws of the Province of Alberta, Canada" with a registered agent for service of process in Delaware. *Id.* ¶ 2. Wapp does not appear to have any employees or physical places of business in this District. Nor does it appear that Wapp produces any products or engages in any business outside of filing lawsuits for patent infringement.

### B.     Wapp's Infringement Allegations

On August 15, 2025, Wapp filed its first amended complaint, accusing Apple and the Bank Defendants of infringing five patents. Dkt. 55 ¶¶ 211–318. Wapp's infringement allegations against Apple relate to Apple's Xcode software. *Id.* ¶¶ 49, 189, 214, 229, 246, 248, 265, 267, 284, 286, 305. Wapp also asserts infringement allegations against the Bank Defendants relating to Xcode. *Id.* ¶¶ 213, 215, 245, 247, 264, 266, 283, 285, 302, 304. But, Wapp's infringement allegations against the Bank Defendants are not limited to Xcode: Wapp also alleges that the Bank Defendants (but not Apple) are liable for infringement based on their use of Android Studio, which is software created by non-party Google. *Id.* ¶¶ 49, 122, 213, 245, 247, 264, 266, 283, 285, 302, 304. As to one of the patents, Wapp further alleges that the Bank Defendants directly infringe "by making, using, selling, offering for sale, and/or importing infringing mobile banking applications." *Id.* ¶ 216.

---

headquarters of the non-movant co-defendants are not relevant to the venue analysis as to Apple under 28 U.S.C. § 1400(b). *See, e.g.*, *Magnacoustics, Inc. v. Resonance Tech. Co.*, 132 F.3d 49, at *1 (Fed. Cir. 1997) (unpublished table decision) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants venue and jurisdiction requirements must be met as to each defendant.").

The chart below summarizes the players and their locales:

| Party | Based In | Role |
|---|---|---|
| Wapp | Canada & Delaware | Plaintiff |
| Apple | California | Defendant (Xcode) |
| Bank Defendants | Virginia & San Antonio, Texas | Defendants<br>(Xcode, Android Studio, bank apps) |
| Google | California | Non-party supplier (Android Studio) |

## C.    Venue Allegations Against Apple

Wapp's venue allegations identify no physical location within this District that is a regular and established place of business of Apple's. *See* Dkt. 55 ¶¶ 16–24. Instead, the first amended complaint relies entirely on "Apple Shops at Best Buy stores within this district," *id.* ¶ 17, and "'Apple at Target shop-in-shops' within this district," *id.* ¶ 24.

### 1.    Apple's Relationship with Best Buy

Contracts between Apple and Best Buy define their precise relationship. Apple and Best Buy entered into a ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Ex. 1.[3] Nothing in the ███████████████ provides Apple control over Best Buy's stores or the Apple Shops within them. *See generally* Exs. 1–6.

Apple and Best Buy also entered into ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ Ex. 2 § ██ Wapp's venue allegations with respect to

---

[3] "Ex. __" refers to the exhibits to the Declaration of Michael E. Bowlus filed with this motion.

Best Buy depend entirely on this ██████████████████████ *id.*, or "Apple Shops" in Best Buy's stores. *See* Dkt. 55 ¶ 17.

　　　As reflected in the ████████████████ and in practice, Apple Shops are part of Best Buy's stores and are owned and operated solely by Best Buy. The Apple Shops provide a dedicated space with Apple's logo and branding on shelving and display cases where Best Buy sells Apple products. *See* Dockendorf Decl. ¶¶ 4–5. Best Buy determines where the Apple Shop is located within Best Buy's stores. *Id.* ¶ 9; *see* Ex. 2 §§ ████████████████████ ████████████████████████████████████████████ ██████. Best Buy owns all merchandise, demonstration units, and fixtures in each Apple Shop. Ex. 2 §§ ██████ Ex. 1 § ███; Dockendorf Decl. ¶¶ 8, 12. Best Buy decides what Apple products to order and how to allocate that inventory to individual stores. Declaration of Jack Leslie ("Leslie Decl.") ¶¶ 3–4; *see also* Ex. 1 § █. Best Buy also sets the prices for the Apple products sold in Best Buy stores, manages the inventory, establishes the hours of operation, and staffs the store (including the Apple Shop) with Best Buy employees who complete all sales transactions. Declaration of Stephanie Calhoun Jemmings ("Calhoun Jemmings Decl.") ¶¶ 11–14; Dockendorf Decl. ¶ 12; *see also* Ex. 2 § ███.

　　　████████████████████████████████████████████ ██████████████████████████████████. *See, e.g.*, Ex. 2 §§ ██████. Best Buy reviews and authorizes any contractor who installs the fixtures for the Apple Shops in Best Buy's stores. Dockendorf Decl. ¶ 10. Best Buy ████████████████████████ ██████████████████████, and Best Buy can close its stores, including those with Apple Shops, without consulting Apple—as it has done on several occasions. Dockendorf Decl. ¶ 13.

Certain Apple employees, known as "Community Specialists," visit third-party retailers including Best Buy locations. Calhoun Jemmings Decl. ¶¶ 4, 6–7. Community Specialists engage with Best Buy's employees and customers to educate them about Apple's products, advocate for Apple's brand, and help customers find the Apple product that best suits their needs. *Id.* ¶ 4; *see* Ex. 5 § ■. Apple's current Community Specialist staffing model has been in effect since November 6, 2024—nine months before Wapp filed its first amended complaint on August 15, 2025. Calhoun Jemmings Decl. ¶ 5; Dkt. 55. Approximately seven Community Specialists visit Best Buy's stores in the Eastern District of Texas, with no more than one Community Specialist assigned to a given store. *Id.* ¶ 6. Not every Best Buy location in the Eastern District of Texas has a Community Specialist assigned to it. *Id.*

Community Specialists are present in Best Buy stores on a limited and irregular basis. *Id.* ¶ 7. Under the staffing model in place at the time of the first amended complaint, there is no fixed schedule for a Community Specialist to visit any particular Best Buy store. *Id.* Rather, the timing and duration of a Community Specialist's visits to any particular store vary from week to week. *Id.* Wapp's first amended complaint refers to a declaration submitted by an Apple employee in July 2024 in an unrelated case, Dkt. 55 ¶ 19, but that declaration described the staffing model in place before November 2024.

Community Specialists do not have a role in the management or operation of Best Buy's stores. *See id.* ¶ 4. Community Specialists do not complete sales transactions with Best Buy's customers. *Id.* ¶ 8. Best Buy has the right to remove them from its stores if it deems necessary. *Id.* ¶ 14. Apple does not require Community Specialists to live in this District. *Id.* ¶ 15.

### 2.    Apple's Relationship with Target

Wapp's first amended complaint includes three sentences referring to "Apple at Target shop-in-shops," including a particular Target store in this District that includes an Apple "shop-in-

shop." Dkt. 55 ¶ 24 (identifying a Target store in Frisco, TX). Apple has contracts defining its relationship with Target, including with respect to Target locations that have Apple merchandise displays.



Ex. 7. Apple and Target entered into ████ ████ ████ Ex. 8 ████████ ; Ex. 9 ████████ . Nothing in the ████ ████ provides Apple control over Target stores, including the "Apple at Target" shop-in-shops. *See generally* Exs. 7–10. As reflected in ████████ , and in practice, "Apple at Target" shop-in-shops are part of Target's stores and are owned and operated solely by Target.

The shop-in-shops include certain merchandise display fixtures co-designed by Apple and Target that are inside a Target store and located among other displays for non-Apple merchandise. Declaration of Eddy Simonian ("Simonian Decl.") ¶ 5. Target initially identifies locations within its own stores to install a shop-in-shop. *Id.* ¶ 11. Apple sets general requirements for where an "Apple at Target" shop-in-shop may be located within Target's stores and reviews any proposed location to ensure that fixtures are used consistently across retail locations. *Id.*; *see* Ex. 9 § ███ ████ ████ . Target owns all merchandise, demonstration units, and fixtures in each shop-in-shop. Ex. 7 at ███ , § ███ ; *id.* at p. ██ , § ████ ; *id.* at p. ██ , §§ ████ ; Ex. 8 § ██ ; Simonian Decl. ¶¶ 9–10. Target decides what Apple products to order and how to allocate that inventory to individual stores. Leslie Decl. ¶ 7.

Target also sets the prices for the Apple products sold in Target stores, manages the inventory, establishes the hours of operation, and staffs the store (including the shop-in-shop) with Target employees who complete all sales transactions. Simonian Decl. ¶ 12; *see also* Ex. 7 at p. 3, § ███.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 8 § ██; Ex. 9 § ██. In addition, Target ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ Ex. 8 § ██; *see* Ex. 9 § ██. Target can terminate a shop-in-shop by providing thirty days' written notice to Apple (Ex. 8 § IV; Ex. 9 § III), and Target can close its stores, including those with shop-in-shops, without consulting Apple. Simonian Decl. ¶ 14.

Apple ████████████████████████████████████████████, Ex. 8 § ██, ████████████████████████. Apple does not send its employees to visit shop-in-shops or any other Apple displays at Target locations. Simonian Decl. ¶ 13.

## IV.   LEGAL STANDARD

"[P]laintiff has the burden of establishing proper venue under 28 U.S.C. § 1400(b)." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019); *see also Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 2:22-cv-490-JRG-RSP, 2024 WL 607407, at *3 (E.D. Tex. Jan. 4, 2024). "In determining whether venue is proper, the Court may look beyond the complaint to evidence submitted by the parties." *Tiare Tech.*, 2024 WL 607407, at *3 (citation omitted).

"'[T]he majority of circuit courts, including the Fifth Circuit, accept' all of the plaintiff's well-pleaded facts as true, 'at least initially.'" *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-cv-1001-ADA, 2022 WL 1241967, at *6 (W.D. Tex. Apr. 26, 2022) (quoting *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017)). "The

trend among circuit courts is to accept well-pleaded facts 'only to the extent that such facts are uncontroverted by [a] defendant's affidavit.'" *Id.* (quoting *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)). The Court "need not credit conclusory allegations." *AlexSam, Inc. v. Simon Prop. Grp. (Tex.), L.P.*, No. 19-cv-331-JRG, 2021 WL 9816147, at *1 (E.D. Tex. Aug. 19, 2021). "When unsubstantiated allegations are controverted by affidavit or declaration, the affidavit or declaration trumps the allegation." *Id.* (citation omitted).

"Where venue is improper, the district court should generally dismiss the case. But the court retains discretion to transfer it to a proper venue if such a transfer would serve 'the interest of justice.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (quoting 28 U.S.C. § 1406(a)); *see also Agis Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-24-JRG-RSP, 2021 WL 6616856 (E.D. Tex. Nov. 10, 2021) (Payne, M.J.), *report and recommendation adopted,* 2022 WL 178804 (E.D. Tex. Jan 19, 2022) (Gilstrap, J.) (dismissing complaint without prejudice for improper venue).

## V.    ARGUMENT

The "sole and exclusive provision controlling venue in patent infringement actions" is 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citation omitted). Section 1400(b) is more restrictive than the general venue provisions of 28 U.S.C. § 1391(c) and limits venue in patent cases to "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." § 1400(b). Under § 1400(b), a defendant "resides" only in its state of incorporation. *TC Heartland*, 581 U.S. at 268. As Wapp acknowledges, Apple is a California corporation (Dkt. 55 ¶ 3) and thus does not reside in the Eastern District of Texas. Wapp therefore relies exclusively on the second prong of § 1400(b) for venue—a purported "regular and established place of business" of Apple.

9

The venue analysis in this case thus turns on whether Apple "has a regular and established place of business" in the District. The Federal Circuit has identified "three general requirements" relevant to this analysis: "(1) there must a be physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). It is the plaintiff's burden to show that these requirements are met. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). And "the Supreme Court has cautioned against a broad reading of the venue statute" so as to give effect to "the clear intent of Congress in enacting the statute to restrict venue." *In re Google LLC*, 949 F.3d 1338, 1346–47 (Fed. Cir. 2020) (collecting cases). If any of the three requirements for demonstrating a regular and established place of business of the defendant is not met, then "venue is improper under § 1400(b)." *Cray*, 871 F.3d at 1360. Here, Wapp cannot establish the second or third requirements, making venue improper in this District.

### A.    The Claims Against Apple Should Be Dismissed For Improper Venue Because Wapp Has Not Pleaded Facts Showing Any Regular And Established Place Of Business "Of The Defendant" In This District.

Apple has no regular and established place of business in the Eastern District of Texas, and Wapp has not alleged facts sufficient to carry its burden on this issue. The statutory requirement that "'the regular and established place of business' must be 'the place *of the defendant*'" is dispositive. *Cray*, 871 F.3d at 1363 (emphasis added).

Apple has not had any stores in the District for over five years. Dockendorf Decl. ¶ 14. Wapp's first amended complaint identifies no physical places of business of Apple in the District and instead relies exclusively on "Best Buy stores within this district" and "Target stores in this judicial district" to plead venue. Dkt. 55 ¶¶ 17, 24. But as the complaint states, these are "Best Buy and/or Target stores" (*id.* ¶ 15)—not Apple locations. It is well-established that "a distributor's place of business cannot establish venue for its supplier" under § 1400(b). *EMED Techs. Corp. v.*

*Repro-Med Sys., Inc.*, No. 2:17-cv-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (collecting cases). Accepting Wapp's position that third-party retailers may establish venue for product manufacturers "would largely overturn the decisions in *TC Heartland* and *Cray*, converting the test for venue in patent cases into one similar to the test for personal jurisdiction," *id.* at *3, which is exactly what the Federal Circuit has warned against, *see Cray*, 871 F.3d at 1361 ("Courts should … be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases.").

The Federal Circuit has provided a non-exhaustive list of considerations for evaluating whether a location is "the place of the defendant." Those considerations include (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (2) "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; (3) "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself"; and (4) "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Id.* at 1363–64.

These considerations overwhelmingly demonstrate that Best Buy and Target stores are not Apple's places of business, and other courts have rejected the same type of allegations Wapp makes here. For example, one court rejected an argument that Best Buy stores that sold the defendant Samsung's products in a Samsung-branded section of the store qualified as "the place of the defendant." *See Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, No. SA CV 17-1748-DOC (JDEx),

2018 WL 4963129, at *7 (C.D. Cal. June 22, 2018). Another court concluded that "interactive display units for demonstration" of a defendant's products at third-party retailers did not constitute a "place of the defendant." *Koss Corp. v. Bose Corp.*, No. 6-20-cv-661-ADA, 2021 WL 7541417, at *3–4 (W.D. Tex. June 22, 2021). This Court should reach the same conclusion here.

### 1. Apple does not own or lease any space in Best Buy's or Target's stores, or otherwise exercise possession or control over them.

As discussed above in Section III.C.1, the physical spaces within the Retailers' stores, including where Apple products are sold, are owned and controlled by the Retailers. Apple does not own or lease space in the Retailers' stores. Dockendorf Decl. ¶ 7; Simonian Decl. ¶ 9. All fixtures and merchandise within those stores are property of the Retailers, and they control the process for installing any fixtures in their stores, including the ultimate decision as to where to locate these fixtures. Dockendorf Decl. ¶¶ 8–12,[4] Simonian Decl. ¶¶ 9–12.[5] As a result, the Retailers bear full responsibility for losses within their stores (e.g., theft or personal injury). Dockendorf Decl. ¶ 8; Ex. 2 §§ ██████████████████████████████████ ██████████████████████████████████████████; Ex. 8 § ████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████; Ex. 9 § ███████████████

---

[4] *See also* Ex. 2 § ███████████████████████████████████████ ████████████████████████████████████, §§ ████████████████ ██████, §§ ████████████████████████████ ██████████████████████████████████████.

[5] *See also* Ex. 8 § ████████████████████████████████████████ ██████████████████; *id.* at page ████████████████ █████████████████████████████████; *id.* § █████████████████ ██████████████████████████████; Ex. 9 § █████████ ████████████████████████████████████████████ ████████████████████████████.

████████████████████████████████████████████████████

████████; Simonian Decl. ¶ 10. Because Apple has no ownership or control over the Retailers' stores, the Retailers can close their stores permanently without consulting Apple. Dockendorf Decl. ¶ 13; Simonian Decl. ¶ 14. Best Buy has done so several times. Dockendorf Decl. ¶ 13.

Apple also does not exercise control over operations at the Retailers' stores. Apple does not manage the inventory within these stores. Leslie Decl. ¶¶ 3, 7. Apple ships its products to one of six distribution centers for Best Buy and three distribution centers for Target—none of which is located in this District. *Id.* ¶¶ 3, 7. Best Buy or Target—not Apple—is then responsible for shipping Apple products from their distribution centers to their stores. *Id.* On occasion, Apple may ship its products to a Best Buy store directly. But these shipments are initiated at Best Buy's request and become Best Buy's property as soon as they leave Apple's warehouses. *Id.* ¶¶ 4–5; Ex. 1 § ███. Apple does not ship its products directly to any Target stores. Leslie Decl. ¶ 6.

The Retailers set the hours of operation for their stores, *see* Calhoun Jemmings Decl. ¶ 14, Simonian Decl. ¶ 12, meaning that the Apple merchandise displays in the stores are physically inaccessible to customers at times chosen by the Retailers, and not Apple. *See Auguste v. Elementree Inc.*, No. 3:23-CV-0364-B, 2024 WL 264687, at *4 (N.D. Tex. Jan. 24, 2024) (holding that third-party Target stores were not places of business of the defendant because customer access to the defendant's product at Target was "contingent on Target's operating hours"). In addition, the Retailers  provide security for their stores, Dockendorf Decl. ¶ 8, Simonian Decl. ¶ 10, and set the prices of the Apple products that they sell. Simonian Decl. ¶ 12; Calhoun Jemmings Decl. ¶ 11; *see also* Ex. 2 § ████████████████████████████████████████; Ex. 8 § █████████████████████████████████████; Ex. 7 at p. █,

§ ████████████████████████████████████████████████

████████████████████████████████████████.

Wapp refers to "Apple-designed outlets" within Best Buy's stores called "Apple Shops" and alleges that these outlets "are dedicated to selling Apple products using Apple branded furniture, fixtures, and display cases prominently featuring Apple logos." Dkt. 55 ¶¶ 17, 20. Wapp alleges that Apple pays for the installation and maintenance of these Apple-branded fixtures, and reviews and approves of the location of Apple Shops in Best Buy stores. *Id.* ¶ 20. Furthermore, Wapp alleges that there is an Apple "shop-within-a-shop" located at a Target store in this District. *Id.* ¶ 24. But these allegations simply reflect Apple's control over its trade dress and brand, and not control over Best Buy or Target stores that would be sufficient for venue. *See, e.g.*, *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1211 (Fed. Cir. 2022) ("*Volkswagen III*") (setting standards for store "appearance and use of signs and brand logos" insufficient for venue).

████████████████████████████████████████████████

████████████████████████████████████████. Dockendorf Decl. ¶ 9; Simonian Decl. ¶ 11. However, it is ultimately up to the Retailers to identify locations in their stores to install the fixtures. Dockendorf Decl. ¶¶ 9–10; *see* Ex. 2 §§ ████████; Simonian Decl. ¶ 11; Ex. 9 § ████. Once installed, the fixtures are the property of the Retailers, and they control the fixtures. Dockendorf Decl. ¶ 8; Ex. 2 § ████; Simonian Decl. ¶ 11; Ex. 8 § ████. While Apple provides routine maintenance for the fixtures at Best Buy (*e.g.*, to repair a damaged display case), Best Buy requires that Apple use Best Buy-approved vendors to do that work. Dockendorf Decl. ¶ 11. In any event, such maintenance does not constitute the "conduct of business in the sense of production, storage, transport, and exchange of goods or services" required under the venue statute. *Google*,

14

949 F.3d at 1347. Apple does not maintain fixtures for "Apple at Target" shop-in-shops. Simonian Decl. ¶ 11; Ex. 8 § █████.

Although Apple has general requirements regarding use of Apple co-designed or branded fixtures at third-party retailers, that cannot establish those fixtures as places of business of Apple. *See Koss Corp. v. Bose Corp.*, No. 6-20-CV-00661-ADA, 2021 WL 7541417, at *4 (W.D. Tex. June 22, 2021). In *Koss*, the plaintiff asserted that the defendant "control[led] many aspects" of "interactive displays through contractual agreements with third-party retailers." *Id.* For example, according to the plaintiff, the defendant controlled "design, installation, maintenance, enforcement of various advertising standards, and payment of taxes and insurance for the displays." *Id.* But that degree of control was insufficient to establish the stores and the interactive displays as places of business of the defendant. *Id.* For the same reason, Apple's contractual provisions governing the use of Apple-branded fixtures at third-party retailers are insufficient for venue.

Aside from fixtures, Wapp also relies on Apple employees, known as Community Specialists, who visit Best Buy stores. *See* Dkt. 55 ¶¶ 17, 19. But the mere presence of Apple employees in the District does not satisfy the statutory requirements for venue, which focus on control over a physical location, not on who is at that location. *See 4WEB, Inc. v. NuVasive, Inc.*, No. 2:23-cv-00192-JRG, 2024 WL 1932416, at *6–10 (E.D. Tex. May 2, 2024). For example, this Court found that venue was not proper in *4WEB*, even though plaintiff 4WEB alleged that defendant NuVasive's employees conducted business "including sales, marketing, sales operations, logistics, regulatory, quality control, research and development (when surgeons are engaged as consultants), training and education and finance" at various medical facilities in the District and had to live close enough to commute to those facilities. 2024 WL 1932416, at *1–2. The court reasoned that "NuVasive (1) does not own or lease any place in this District, (2) has not represented

15

that it has a place of business in this District, and (3) conducts its business in San Diego, California." *Id.* at *3.

Venue is improper here for the same reason as in *4WEB*. The first amended complaint contains no allegations establishing that Apple or its employees exercise possession or control over Best Buy or Target stores. If anything, the role of Apple employees who visit Best Buy stores reinforces Apple's lack of possession or control over those stores. Unlike Nuvasive's employees in *4WEBB*, 2024 WL 1932416, at *4, Apple's employees do not control even the Apple inventory that is sold at Best Buy stores in this District. Calhoun Jemmings Decl. ¶¶ 8, 12. The Apple employees here are only "occasional[ly]" present within the stores and necessarily "transient," *4WEBB*, 2024 WL 1932416, at *2, because their presence within the Best Buy stores in this District is at the whim of Best Buy, not Apple. *See* Calhoun Jemmings Decl. ¶ 14. Apple does not send employees to Target stores. Simonian Decl. ¶ 13.

As explained above, *see* Section III.C.1, under Apple's current staffing plan implemented in November 2024, its Community Specialists visit some (not all) of the Best Buy stores in the Eastern District of Texas on a limited and irregular basis. Calhoun Jemmings Decl. ¶¶ 6–7. There is no fixed schedule for a Community Specialist to visit any particular Best Buy store in the District. *Id.* Best Buy has complete control over who can be present within its stores, and Best Buy has the right to remove Apple's employees from its stores. *Id*. ¶ 14. Community Specialists are not involved in management or operation of Best Buy stores, do not complete sale transactions with customers, do not have access to cash registers, do not manage inventory, do not set prices for Apple products, and do not have access to locked inventory or Best Buy's inventory systems. *Id.* ¶¶ 4, 10–12; *see also* Ex. 6 § ███████████████████████ ███████████████████████████████████████████.

16

Sporadic visits by Community Specialists to third-party Best Buy locations in the District are insufficient to establish venue. *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017) ("[S]poradic activity cannot create venue.") (citing *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941)). For example, this Court held that a defendant sending employees to visit third-party dealerships 588 times over the course of a year was insufficient to establish the dealerships as regular and established places of business of the defendant because the dealership visits were "discretionary" and not "steady, uniform, orderly, and methodical." *Westport Fuel Sys. Canada Inc. v. Ford Motor Co.*, No. 2:21-CV-00453-RWS, 2022 WL 4280490, at *1–*2 & n.1 (E.D. Tex. Sept. 15, 2022). So too here; visits by Apple employees to third-party Best Buy stores occur at different times and vary from week to week. Calhoun Jemmings Decl. ¶ 7.

Even where a defendant's employees have entered a third-party's location on a regular basis several times a week, this Court has held that the third-party facility does not constitute a regular and established place of business of the defendant. *See Fractus, S.A. v. ZTE Corp.*, No. 2:17-cv-00561-JRG, 2018 WL 11363369, at *2 (E.D. Tex. Sept. 28, 2018). In *Fractus*, two of the defendant's employees worked at a third-party call center in the District three to four days a week, every week, and typically spent the entirety of those days at the call center. *Id.* This Court noted that no employee of the defendant maintained an office at the third-party call center, and that the "intermittent" visits were insufficient to establish the call center as a place of the defendant. *Id.* Here, Apple's Community Specialists do not maintain offices at Best Buy locations in the District, and their visits to Best Buy stores vary and are irregular, unlike the employee visits at issue in *Fractus*. Calhoun Jemmings Decl. ¶¶ 7, 10.

In sum, the presence of Apple employees in Best Buy stores does not make Apple Shops a place of business of Apple because Apple does not own or exercise control over those spaces.

17

*4WEB*, 2024 WL 1932416, at *4. Moreover, because Apple does not even send its employees to visit "Apple at Target" shop-in-shops, there is no Apple employee presence at those Target locations that could even possibly suggest ownership or control by Apple. *See In re Google*, 949 F.3d at 1345 (concluding that "a 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business'").

   **2.    Apple does not require Community Specialists to live in the District or to store materials to be distributed or sold within the District.**

The second consideration outlined in *Cray* ("whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place," 871 F.3d at 1363) is primarily relevant to assessing whether an employee's home constitutes a place of business of the defendant. *See, e.g.*, *Uniloc USA, Inc. v. Nutanix, Inc.*, No. 2:17-cv-00174-JRG, 2017 WL 11527109, at *3–4 (E.D. Tex. Dec. 6, 2017). Wapp has made no such allegation here. *See* Dkt. 55 ¶¶ 16–24. Regardless, to the extent relevant, this consideration likewise shows that venue is improper.

Apple does not require that Community Specialists live in the District. Calhoun Jemmings Decl. ¶ 15. Nor does Apple provide Community Specialists with any literature or sellable Apple products to bring with them to Best Buy's stores. *Id.* ¶ 9. Apple also does not store any literature or sellable Apple products within Best Buy's stores. *Id. Compare IOT Innovations LLC v. Monitronics Int'l, Inc.*, No. 2:22-cv-0432-JRG-RSP, 2023 WL 6318049, at *4 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted*, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023) (finding venue proper when defendant's employees "store[d] a leased vehicle and tens of thousands of dollars of [defendant's] equipment at their homes ... [to] take[] directly to customer locations for

installation and servicing" by those same employees). Instead, the Retailers control and own their respective inventories of Apple products. Calhoun Jemmings Decl. ¶¶ 9, 12; Ex. 1 §§ ████; Ex. 2 § ██; Simonian Decl. ¶ 12; Ex. 7 at p. ██, § ██; *id.* at p. ██, §§ ████████; *id.* at p. ██, § ████.

> ### 3. Apple does not hold out Best Buy or Target stores as its places of business.

Apple does not list Best Buy or Target stores as places of business of Apple on Apple's website or on any signage associated with those stores. Wapp points to a screenshot of a retail locator feature on Apple's website, showing Best Buy and other third-party retail locations in the District. Dkt. 55 ¶ 18. But Apple unmistakably identifies the locations as third-party resellers, not as Apple's stores (*e.g.*, "BEST BUY - 0202"). *Id.* Indeed, one cannot even reach the page shown in Wapp's complaint through the "Find a Store" function on apple.com. Searching the "Find a Store" function shows clearly that there are no Apple Stores within the District. Bowlus Decl. ¶¶ 19–21. To reach the page on which Wapp relies (Dkt. 55 ¶ 18), one must specifically choose the "other retailer" search function at the very bottom of apple.com. One must then click additional links and enter location and product search information to see third-party retail locations with Apple merchandise, such as Best Buy. *Id.* ¶¶ 22–25.



Bowlus Decl. ¶ 22 (annotated). The obscurity of the third-party retailer search, as compared to the prominently featured Apple Store search, demonstrates that Apple's website does not hold out third-party retail locations as places of business of Apple.

Wapp does not point to any listing of a Target store on Apple's website. *See id.* ¶¶ 18, 24. Apple's website explains that some reseller or retail locations have "Apple Shops," which again are clearly described as "Apple-designed outlets **located within select Apple resellers and other retail stores**." *Id.* ¶ 18 (emphasis added).

This type of website listing does not demonstrate that third-party locations are Apple's places of business. *See AptusTech LLC v. Trimfoot Co.*, No. 4:19-cv-00133-ALM, 2020 WL 1190070, at *4 (E.D. Tex. Mar. 12, 2020) ("[Defendant] listed stores within the district on its website under a 'store locator' tab. However, the locations all have the names of the independent retailers on them. The website listings do not indicate that they are [defendant's] stores. Thus, [defendant] does not attempt to hold these stores out as its own on its website.").

Best Buy's website reinforces that Apple Shops are part of Best Buy. The Best Buy webpage at the URL in Wapp's first amended complaint describes the Apple Shop as "our [i.e., Best Buy's] store-within-a store for all things Apple." Dkt. 55 ¶ 20 & n.11 (citing https://stores.bestbuy.com/tx/plano/2800-n-central-expy-202.html); Ex. 11 (printout of same) at 4. Apple Shops plainly are not a place of business of Apple when neither Apple nor Best Buy holds out those locations as Apple's. *See Cray*, 871 F.3d at 1363 ("Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business."); *4WEB*, 2024 WL 1932416, at *3 (finding defendant's "surgeon locator tool" did not serve to ratify hospitals or surgery centers as place of defendant when it "explicitly states that [defendant] is not associated with any of the surgeons or hospitals on the locator"); *AptusTech*, 2020 WL 1190070, at *4 (finding venue improper including because defendant did not "hold these stores out as its own on its website" merely by listing "the names of the independent retailers" where customers can find defendant's goods).

While Wapp relies upon the fact that Apple Shops in Best Buy's stores "are dedicated to selling Apple products" (Dkt. 55 ¶ 20), Best Buy also sells products of other manufacturers within their own defined spaces within Best Buy stores. Ex. 11 at 1 (Plano Best Buy location offers "Windows Store," "Samsung Experience Shop," "LG Experience," and "Sony Experience" in

addition to "Apple Shop"). The fact that Best Buy organizes its merchandise by manufacturer does not indicate that Best Buy is a place of business for all these manufacturers. Third-party retailers commonly adopt this "store-within-a-store" model, designating areas within their stores as "shops" focused on a particular manufacturer's products, without transforming the third-party's store into a place of business of the manufacturer. *See, e.g.*, *Int'l Techs.*, 2018 WL 4963129, at *8 (finding that Samsung's statements on its website that "Experience Shops are 'installed in' Best Buy stores to showcase Samsung products to Best Buy customers" was "not sufficient to establish that Samsung holds the Experience Shops out as its own place of business"). Best Buy's use of Apple's branding simply indicates what products Best Buy is selling, and it is nothing like what *Cray* suggested might support venue, such as placing the defendant's "name on a sign associated with or on the building itself." 871 F.3d at 1363–64.

Finally, statements on Best Buy's website about repairs of Apple products at Best Buy locations as an "Apple Authorized Service Provider" (Dkt. 55 ¶ 18) do not suggest that Best Buy's stores are places of business of Apple. On the contrary, the material cited in the first amended complaint makes clear that it is Best Buy employees called Geek Squad Agents who provide repair services, not Apple employees. Dkt. 55 ¶ 18 n.10 (citing https://www.bestbuy.com/site/services/apple-service-repair/pcmcat1554741516170.c); Ex. 12 (printout of same) at 1 ("Our Geek Squad® Agents are Apple-trained and use genuine Apple parts on every repair."). The quoted advertising from Best Buy seeks to reassure customers precisely because the repairs are performed at Best Buy by Best Buy employees instead of at an Apple location by Apple employees. *See* Ex. 12 at 2 ("Our [Geek Squad®] Agents are Apple-trained, so you can trust us with all your Apple devices, no matter where you bought them.").

Nor is Best Buy's provision of "Apple-certified" repairs using Best Buy employees who are "Apple-trained" and "use genuine Apple parts" a basis for venue. Dkt. 55 ¶ 18. The Federal Circuit has squarely rejected that argument. *See Volkswagen III*, 28 F.4th at 1211–12 (rejecting argument that car dealerships were places of business of distributor because warranty and maintenance work was consistent with distributor's quality specifications and performed by distributor-trained employees).

### 4.    Apple's places of business in other venues differ significantly from Best Buy's and Target's stores.

In *Cray*, the Federal Circuit recognized that courts may also consider "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." 871 F.3d at 1364. This factor, too, indicates that venue is improper. Outside this District, Apple has its own Apple Stores that operate completely differently from the Retailer locations on which Wapp's venue allegations rest. For example, unlike third-party stores where customers can cross-shop products made by different manufacturers, Apple Stores provide an experience focused exclusively on Apple products and related accessories. Dockendorf Decl. ¶ 15; *see* Ex. 2 § ███████████████████████ ████████████████████████, §§ █████████████████ ███████████████████████████████████ ████████████████████████████████. At Apple Stores, Apple leases the storefronts, owns the merchandise, controls the inventory, provides security, and sets the hours of operation, Dockendorf Decl. ¶ 15, none of which Apple does at Best Buy or Target stores. The comparison with Apple Stores outside the District thus reveals that the Retailers' stores in the District are "not really a place of business at all" for Apple. *Cray*, 871 F.3d at 1364.

Apple's actual places of business, insofar as Wapp's allegations are concerned, also differ from the Retailers, and are located in other venues. For example, Apple maintains offices in San Diego, which is part of the Southern District of California. ██████████████████

█████████████████████████████████████████████████████

████████████████. *See* Dkt. 55 ¶¶ 52–53. As another example, software engineering teams responsible for development of Xcode and its associated functionalities are located at Apple offices in Cupertino, which is the location of Apple's headquarters and is within the Northern District of California. These places of business are offices where Apple employees regularly work. They are not third-party retail stores.

\* \* \*

Taken together, these factors confirm that Best Buy and Target are third-party retailers that operate their own stores independently from Apple. The Retailers' stores in the District do not make venue proper as to Apple, and Wapp therefore has not carried its burden of establishing proper venue.

### B.    If Not Dismissed Outright, This Case Should Be Transferred To A Proper Venue.

The appropriate remedy for Wapp's failure to file its claims against Apple in a proper venue is dismissal. *See e.g.*, *Agis Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-24-JRG-RSP, 2021 WL 6616856 (E.D. Tex. Nov. 10, 2021) (Payne, M.J.), *report and recommendation adopted*, 2022 WL 178804 (E.D. Tex. Jan. 19, 2022) (Gilstrap, J.) (dismissing case without prejudice where venue was improper and parties disagreed about proper venue); *Blue Spike, LLC v. Caterpillar, Inc.*, No. 6:16-cv-01361-RWS, 2017 WL 4129321, at *2 (E.D. Tex. Sept. 19, 2017) (dismissing defendant who "d[id] not maintain any warehouse, distribution center, or inventory in Texas"). While the Court alternatively may transfer Wapp's claims against Apple "in the interest of justice"

to "any district or division in which [they] could have been brought," 28 U.S.C. § 1406(a), this is not a case where Wapp made an understandable mistake in filing in the wrong venue. *See Seville*, 53 F.4th at 896 ("A district court might excuse this sort of mistake where plaintiff's attorney could not have reasonably anticipated the venue problem.").

Here, Wapp knew of the limited relationship between Apple and Best Buy. Its first amended complaint cites a declaration submitted by an Apple employee in another case in which Apple challenged venue based on allegations that echo Wapp's. Dkt. 55 ¶ 19 (citing Declaration of Stephanie Calhoun Jemmings submitted in *Slyde Analytics LLC v. Apple Inc.*, No. 2:24-cv-00331-RWS-RSP, attached as Ex. 13). That cited declaration in fact explains that Apple employees who periodically visit Best Buy do not have access to, sell, or repair Apple merchandise at those stores, and that Best Buy maintains complete control over the operation of those stores. Ex. 13 ¶¶ 7–12. Another declaration submitted by Apple in the same case notes that Apple has not had any stores in the District since 2019 (hence Wapp's allegations based solely on Best Buy and Target). Ex. 14 ¶ 14 (Declaration of Stephanie Dockendorf submitted in *Slyde Analytics*); Dkt. 55 ¶ 20 (citing same). The same declaration discloses that Apple does not own, lease, or rent space within Best Buy's stores. Ex. 14 ¶ 7.

Thus, prior to filing its complaint, Wapp had detailed information about the nature of Best Buy's "Apple Shops" and Apple's limited involvement with those third-party locations. In addition, Wapp failed to locate any information suggesting a different situation at Target stores, relying instead on cursory allegations and a press release by Target (not Apple). Dkt. 55 ¶ 24. Despite these deficiencies, Wapp nonetheless chose to pursue its claims in this District. "[T]ransfer is normally unwarranted" where, as here, "the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper." *Seville*, 53 F.4th at 896 (quotation omitted); *see*

*also Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382-1383 (Fed. Cir. 2019) (affirming dismissal for improper venue where plaintiff "disregard[ed] controlling law, here *Cray* and *ZTE*" and failed to plead facts "showing [defendant] had a regular and established place of business physically located" in the relevant district).

Wapp could have sued Apple in a proper venue. For example, ███████████████ █████████████████████████, *see* Dkt. 55 ¶¶ 51–53, ██████████████████████ ████████████████████. Apple is incorporated in California and maintains Apple Stores in San Diego. *See* Exs. 15, 16 (Apple webpages showing Apple Store locations in San Diego). These stores are Apple's places of business. Furthermore, Wapp's theories of infringement would encompass acts allegedly committed in that district and elsewhere. *See* Dkt. 55 ¶¶ 13, 15. Thus, Wapp could have filed suit against Apple in the Southern District of California.

It is "obviously not 'in the interest of justice' to allow [§ 1406(a)] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district." *Seville*, 53 F.4th at 894 (citing *Dubin v. United States*, 380 F.2d 813, 816 n.5 (5th Cir. 1967)). But if the Court nevertheless is inclined to transfer the claims against Apple, it should sever them from the claims against the Bank Defendants and transfer them to the Southern District of California. *See, e.g., Duke Univ. v. Sandoz Inc.*, No. 2:17-cv-528-JRG, 2018 WL 4258520, at *1 (E.D. Tex. Apr. 3, 2018) (severing claims against defendants so that they could be transferred to separate districts where venue was proper as to each defendant). Alternatively, the claims against Apple could be severed and transferred to the Northern District of California, where Apple's headquarters is located.

## VI.    CONCLUSION

Wapp's claims against Apple lack venue under 28 U.S.C. § 1400(b) and should therefore be dismissed under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

Dated: September 5, 2025

Respectfully submitted,

/s/ *Melissa R. Smith*

Indranil Mukerji
Ranganath Sudarshan
Brianne Bharkhda Sullivan (*pro hac vice*)
Matthew Kudzin (*pro hac vice* forthcoming)
John Veiszlemlein (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
imukerji@cov.com
rsudarshan@cov.com
bsullivan@cov.com
mkudzin@cov.com
jveiszlemlein@cov.com

Michael E. Bowlus
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission St., Ste. 5400
San Francisco, CA 94105
(415) 591-6000
mbowlus@cov.com

Melissa R. Smith
Texas State Bar No. 24001351
**GILLAM & SMITH LLP**
303 S. Washington Ave.
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 5, 2025, to all counsel of record via email.

/s/ *Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), counsel for Defendant met and conferred with counsel for Plaintiffs, and counsel for Plaintiffs indicated that Plaintiffs are opposed to the relief sought by this Motion.

/s/ *Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that a motion to seal this document has been filed concurrently herewith.

/s/ *Melissa R. Smith*
Melissa R. Smith