## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **WAPP TECH LIMITED** | § | |
| **PARTNERSHIP and** | § | |
| **WAPP TECH CORP.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-00230** |
| | § | |
| **APPLE INC.,** | § | **JURY TRIAL DEMANDED** |
| **CAPITAL ONE, N.A.,** | § | |
| **CAPITAL ONE SERVICES, LLC,** | § | |
| **FROST BANK, and** | § | |
| **CULLEN/FROST BANKERS, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS FROST BANK
## AND CULLEN/FROST BANKERS, INC.'S PARTIAL
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT ................................................................................1

II.  PROCEDURAL BACKGROUND..........................................................................2

III.  RULE 12(B)(6) LEGAL STANDARDS..................................................................2

IV.  FROST'S DIRECT INFRINGEMENT ARGUMENTS ARE MERITLESS.......................4

V.  FROST'S INDIRECT INFRINGEMENT ARGUMENTS ARE MERITLESS ..................8

VI.  FROST'S MARKING ARGUMENTS ARE MERITLESS................................................11

VII.  IF NECESSARY, WAPP SHOULD BE GIVEN LEAVE TO FILE A SECOND AMENDED COMPLAINT ................................................................................15

VIII.  CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
876 F.3d 1350 (Fed. Cir. 2017) ...................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................................3

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012) ..........................................................................................2

*Canon, Inc. v. TCL Electronics Holdings Ltd.*,
No. 2:18-cv-546, Dkt. 114 (E.D. Tex. Mar. 25, 2022) ...................................................9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL,
2015 U.S. Dist. LEXIS 112095 (E.D. Tex. June 3, 2015)................................................3

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) .......................................................................................5

*Express Mobile, Inc. v. DreamHost LLC,* Civil Action No. 1:18-cv-01173-RGA,
2019 U.S. Dist. LEXIS 101468 (D. Del. June 18, 2019)...............................................14

*Freedom Patents LLC v. Dish Network Corp. et al.*,
No. 4:23-cv-303, Dkt. 76 (E.D. Tex. Mar. 28, 2024) .....................................................4

*In re Bill of Lading Transmission & Processing Sys. Patent Lit.*,
681 F.3d 1323 (Fed. Cir. 2012) ...............................................................................3, 11

*Lans v. Dig. Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001) .....................................................................................15

*Liberty Peak Ventures, LLC v. Regions Financial Corp.*,
No. 2:21-cv-417, Dkt. 29 (E.D. Tex. Mar. 15, 2022) .....................................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) .......................................................................................3

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ..........................................................................................2

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007) .......................................................................................3

*Monolith Power Sys. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*,
No. 6:20-cv-8876-ADA,
2021 U.S. Dist. LEXIS 166703 (W.D. Tex. Sept. 1, 2021) ..........................................11

*Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-cv-354-DAE,
2025 U.S. Dist. LEXIS 16068 (W.D. Tex. Jan. 29, 2025).......................................7, 10

*Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-cv-49,
2025 U.S. Dist. LEXIS 110453 (E.D. Tex. June 11, 2025) ..........................................10

*NorthStar Sys. v. Volkswagen AG*, No. 2:22-cv-486-JRG,
2023 U.S. Dist. LEXIS 156661 (E.D. Tex. Sept. 5, 2023) .............................................7

*Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES,
2019 U.S. Dist. LEXIS 160197 (C.D. Cal. June 26, 2019) ..........................................13

*Sino Star Glob. Ltd. v. Shenzhen Haoqing Tech. Co., Ltd.*, No. 4:22-cv-980-ALM,
2025 U.S. Dist. LEXIS 111512 (E.D. Tex. June 12, 2025) .............................................5

*Sqwin SA v. Walmart, Inc.*, No. 4:22-CV-1040-SDJ,
2023 U.S. Dist. LEXIS 111651 (E.D. Tex. June 28, 2023) .............................................5

*Sutton Place 1 Townhouse v. Amguard Ins. Co.*,
668 F. Supp. 3d 684 (W.D. Tex. 2023) ..........................................................................15

*Uniboard Aktiebolag v. Acer Am. Corp.*,
118 F. Supp. 2d 19 (D.D.C. 2000)..................................................................................15

*Varela v. Gonzalez*,
773 F.3d 704 (5th Cir. 2014) ..........................................................................................15

*VirtaMove v. Hewlett Packard Enter. Co.*, Case No. 2:24-cv-00093-JRG,
2024 U.S. Dist. LEXIS 189040 (E.D. Tex. Oct. 16, 2024) ...........................................14

*Voit Techs., LLC v. Drucker Labs, L.P.*,
No. 4:16-cv-695, Dkt. 32 (E.D. Tex. May 4, 2017).........................................................9

**Statutes**

35 U.S.C. § 271 ......................................................................................................................4

35 U.S.C. § 287 ..............................................................................................................11, 14

**Rules**

Fed. R. Civ. P. 12 .............................................................................................................2, 4, 15

Wapp Tech Limited Partnership and Wapp Tech Corp. ("Plaintiffs" or "Wapp") oppose Defendants Frost Bank and Cullen/Frost Bankers, Inc.'s (collectively, "Frost") Partial Motion to Dismiss Plaintiffs' First Amended Complaint for Patent Infringement (Dkt. No. 60 or "Motion").

## I.    SUMMARY OF ARGUMENT

Despite Wapp's 120-page First Amended Complaint (FAC) that includes almost 600 pages of detailed infringement charts (Dkt. Nos. 55 and 55-8 through 55-17), Frost continues to raise three arguments, none of which have a scintilla of merit. Under any reasonable application of the liberal "notice" pleading standard, the FAC is more than adequate.

Regarding direct infringement, Frost has dropped its complaint as to five of the six claims mentioned in the FAC, focusing only on claim 60 of the '192 patent. Ironically, Frost's concession that Wapp's FAC is adequate as to '192 claim 1 bars Frost from even challenging claim 60 because this Court's law only requires allegations that the accused products meet each and every element of **one claim** of an asserted patent. Additionally, the FAC's infringement charts provide dozens of pages showing why Frost infringes '192 claim 60, which easily demonstrate the "plausibility" of Wapp's infringement theories.

With respect to inducing infringement, the FAC includes explicit allegations that Frost is inducing the direct infringement of its agents and third parties that it hires to develop mobile banking apps. The FAC further states that Frost instructs such agents and third parties to "use" Xcode and Android Studio in an infringing manner, with a specific intent of encouraging this direct infringement. This is a "plausible" inducement theory of which Frost has clear notice.

Finally, Frost's arguments regarding marking must fail because the FAC expressly pleads compliance with the marking statute, which is all that is required at the pleading stage. Further details are not necessary *until* discovery begins and Frost carries its "initial burden" to identify *with specificity* any alleged unmarked products that it believes support its marking defense.

## II.    PROCEDURAL BACKGROUND

On July 25, 2025, instead of filing an answer to Wapp's complaint, Frost filed a 29-page motion to dismiss for failure to state a claim under Rule 12(b)(6). Dkt. No. 41. This was surprising—not to mention meritless—given that no other prior bank defendant (Wells Fargo, Bank of America, and Chase) had ever raised any complaints about similar pleadings. It is also remarkable that the other two sets of Defendants (Apple and Capital One) have not raised any issues about the adequacy of Wapp's pleadings regarding infringement or claim to past damages.

While Wapp's initial Complaint satisfies any reasonable "notice" pleading standard, Wapp generously agreed to file a First Amended Complaint (FAC) that mooted Frost's initial motion to dismiss. The FAC includes: (1) roughly *60 new pages of detailed pleadings* (compare 64-page initial complaint (Dkt. No. 1) to 120-page FAC (Dkt. No. 55)); (2) *ten new infringement charts* for six claims in the five asserted patents, totaling *583 pages* of detailed infringement theories (Dkt. Nos. 55-8 through 55-17); and (3) at least *38 paragraphs* that are specific to Frost and its infringement (*see, e.g.*, ¶¶37-42, 196-201, 213, 215-216, 232-234, 245, 247, 251-253, 264, 266, 270-272, 283, 285, 289-291, 302, 304, and 308-310), and *several hundred paragraphs* that are generally applicable to all three sets of Defendants. Yet "no good deed goes unpunished"—Frost persists with its complaints, notwithstanding the many hundreds of new pages of detailed allegations in the FAC and infringement charts.

## III.    RULE 12(B)(6) LEGAL STANDARDS

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). When considering a Rule 12(b)(6) motion, all well-pleaded facts are assumed to be true and those facts are viewed in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). A complaint must merely plead "enough facts to state a claim [for] relief that is ***plausible***

on its face."[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even Frost reiterates these points: "Although '***detailed factual allegations are not required***…a complaint must allege sufficient factual matter, ***accepted as true***, to state a claim that is ***plausible*** on its face.'" Motion at 7-8 (quoting *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 U.S. Dist. LEXIS 112095, at \*2 (E.D. Tex. June 3, 2015) ). Particular standards that apply to Frost's three arguments are set forth below:

**<u>Direct and Indirect Infringement:</u>** As acknowledged by Frost, a complaint must merely "place the alleged infringer ***on notice*** of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017); *see also Core Wireless*, No. 6:14-CV-751-JDL, 2015 U.S. Dist. LEXIS 112095, at \*2 (E.D. Tex. June 3, 2015) (only necessary to "plead facts sufficient to place the alleged infringer ***on notice*** as to what he must defend") (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed Cir. 2007)). The *Iqbal*/*Twombly* plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). However, plausibility should not be treated as a "probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" the defendant is liable for the alleged misconduct. *In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

---

[1] All emphases are added unless expressly noted to the contrary.

***Inducement of Infringement:*** Under Section 271(b) of the Patent Statute, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. §271(b). Pages 5-6 of Frost's Motion include uncontroversial points regarding inducement, such as (i) a third party has engaged in direct infringement, (ii) the defendant knew of the asserted patent, and (iii) the defendant had a specific intent to encourage the third party's direct infringement. Conspicuously absent from this section of Frost's Motion are any cases that require a strict pleading standard for inducement, even though "intent" is required. Instead, the broad "notice" pleading standard described above is applicable. This Court has applied that standard to deny Rule 12(b)(6) complaints regarding inducing infringement. *See, e.g.*, *Freedom Patents LLC v. Dish Network Corp. et al.*, No. 4:23-cv-303, Dkt. 76 at 4-5 (E.D. Tex. Mar. 28, 2024).

***Marking:*** Pages 6-7 of Frost's Motion generally address the law under the marking provision of the Patent Statute. This section shows that Frost understands the basic principle that any marking requirement only applies to patented "articles" that are made or sold by a patentee or a licensee. *See, e.g.*, Motion at 6 (citing *Arctic Cat I* for the proposition that "a patentee who ***makes and sells a patented article*** must mark…."); *id.* (citing *Arctic Cat II* for the proposition that the "marking obligation also arises if the patentee's licensees ***make or sell practicing products***"). Yet Frost disregards this fundamental point in relying on "articles"—namely, Xcode and Android Studio software development tools—that are made and sold by Apple and Google who are *not* licensed—there is *no* requirement, therefore, for these tools to be marked.

## IV.     FROST'S DIRECT INFRINGEMENT ARGUMENTS ARE MERITLESS

The FAC includes almost 600 pages of infringement charts—which are not required at this stage—for six claims in the five asserted patents. (Dkt. Nos. 55-8 through 55-17). While Frost's original MTD challenged all six claims (Dkt. No. 41 at 12-24), the current Motion concedes the

adequacy of the FAC for five of the asserted claims addressed in the pleading. The sole remaining challenge is limited to claim 60 in the '192 patent.

As a preliminary matter, Frost is barred from challenging '192 claim 60 because it has conceded the adequacy of the FAC for '192 claim 1. Under this Court's law, a complaint only needs sufficient allegations for *one claim* in an asserted patent. *Sino Star Glob. Ltd. v. Shenzhen Haoqing Tech. Co., Ltd.*, No. 4:22-cv-980-ALM, 2025 U.S. Dist. LEXIS 111512, *8 (E.D. Tex. June 12, 2025) ("To state a claim for direct infringement, a plaintiff need only allege facts giving rise to a plausible inference and fair notice of infringement by identifying the accused products and alleging that the accused products meet each and every element of at least ***one claim*** of the asserted patents."); *Sqwin SA v. Walmart, Inc.*, No. 4:22-CV-1040-SDJ, 2023 U.S. Dist. LEXIS 111651, *4 (E.D. Tex. June 28, 2023) ("'Fair notice'…requires the plaintiff to plausibly allege that the accused products meet 'each and every element of at least ***one claim***' of the asserted patent.") (quoting *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)). This should end the inquiry, and Frost should withdraw its Motion.

But there is more. Frost concedes that "detailed factual allegations are not required" under the "notice" pleading standard. *See, e.g.,* Motion at 7-8. This liberal standard notwithstanding, exhibits H and I to the FAC (with the cross-references to claim 1 of the '192 patent) include over 100 pages of detailed allegations regarding '192 claim 60. These detailed allegations lay bare the falsity of Frost's assertion that Wapp is merely "parroting the claim language." With respect to the specific claim limitation at issue ("an application configured to enable a user to modify a photo on the mobile device"), Frost's Motion admits that the FAC "cites a Frost web page that states users can '[s]nap a picture to deposit your checks.'" Motion at 9 (referencing FAC at ¶39, n. 17). In addition, exhibit H states: "[U]pon information and belief, the Photos application and the check deposit

feature of the Capital One Mobile and Frost applications are configured to enable a user to modify a photo on the mobile device. These modifications may include (but are not limited to): resizing, scaling, cropping, filtering, reformatting, and color adjustment." Dkt. 55-8 (Ex. H to FAC) at 63; *see also* Dkt. 55-9 (Ex. I to FAC) at 37 (similar).

This language clearly puts Frost and Capital One (who does *not* challenge the pleading) on "notice" that the banks' mobile apps (i) can photograph checks for deposit and (ii) can modify the photo in numerous specific ways (in fact, *six* ways), including "resizing, scaling, cropping, filtering, reformatting, and color adjustment." While that level of detail was not required for the FAC, Wapp generously provided these *specific* examples—which must be accepted as true—in advance of the deadline for infringement contentions. Importantly, Frost does *not* argue that these examples of photo modification fail to satisfy the claim limitation at issue, thereby conceding Wapp's infringement theory is "plausible."

Frost's desire for more information puts the cart before the horse and attempts to override the local patent rules—infringement contentions are not due until early November under the Court's standard schedule. Wapp will add even more details at that appropriate point and if Frost is still dissatisfied, it is free to raise another complaint at that time. But its current complaint is premature, especially given that Wapp's infringement contentions will likely be tendered before the Court rules on the current Motion.

While Wapp plans to add more details to its contentions for '192 claim 60, it is also important to acknowledge—as Frost does—that it is perfectly appropriate for a party to plead "upon information and belief" "'when essential information lies uniquely within another party's control…." *See* Motion at 8 (citing *Exergen*). That is precisely the case here because the information showing the exact way in which the Frost app modifies the photo will be found in

documents and/or software that Frost and/or a third party working with Frost must produce in discovery. This is precisely what happened in the previous *Chase* case, where Wapp subpoenaed third party Mitek for infringement evidence (in addition to standard discovery requests to Chase).

Frost's two cited cases—*NorthStar* and *Mullen*—are both distinguishable. The *NorthStar* asserted claims were limited to method claims, and the court found that "NorthStar does not allege how BMW uses the inventions claimed in the Patents-in-Suit." *NorthStar Sys. v. Volkswagen AG*, No. 2:22-cv-486-JRG, 2023 U.S. Dist. LEXIS 156661, at *2, *6 (E.D. Tex. Sept. 5, 2023). However, the court found simply asserting that "BMW uses the Patents-in-Suit by testing and troubleshooting the accused features…would cure this deficiency…." *Id.* at *6. As an initial matter, '192 claim 60 is not a method claim. More importantly, the FAC specifically identifies which part of the Frost application satisfies the "photo modification" limitation—the "check deposit feature." *See* Dkt. 55-8 (Ex. H to FAC) at 63; Dkt. 55-9 (Ex. I to FAC) at 37. Additionally, the FAC identifies six specific types of modifications that satisfy this limitation: "resizing, scaling, cropping, filtering, reformatting, and color adjustment." *Id.* The FAC goes *well beyond* parroting claim language; it identifies which feature of the Frost application satisfies this limitation and indicates the manner in which that feature modifies photos.

*Mullen* is distinguishable for essentially the same reasons. There, the court found that the complaint "simply parrots claim language without explaining what facts show how the accused products practice the [claim limitation]." *Mullen Indus. LLC v. Meta Platforms, Inc.*, No. 1:24-cv-354-DAE, 2025 U.S. Dist. LEXIS 16068, at *13 (W.D. Tex. Jan. 29, 2025). In contrast, the FAC specifically identifies which feature of the Frost application ("the check deposit feature") satisfies this limitation and provides six examples of modifying. These facts—which must be accepted as

true—provide ample notice to Frost of what is accused of infringement and how the claim limitations are met by the accused feature. This is hardly "parroting" claim language.

## V.    FROST'S INDIRECT INFRINGEMENT ARGUMENTS ARE MERITLESS

For Wapp's inducement claim under Section 271(b), Frost does not challenge any specific asserted claim or any specific claim limitation. Instead, ignoring the law that "detailed factual allegations are not required," it again stubbornly complains about the level of details.

As background, the FAC includes numerous paragraphs that put Frost "on notice" regarding "plausible" allegations that it is inducing the direct infringement of its agents or third parties that it hires to develop apps, including paragraphs 38, 41, 198, 213, 215, 245, 247, 264, 266, 283, 285, 302, 304. The FAC specifically asserts that Frost's own in-house app developers are "using" Xcode and Android Studio "in an infringing manner" to develop and test the Frost mobile banking app. *See, e.g.*, FAC at ¶¶ 197-200. As an alternative to this direct infringement theory, Wapp further asserts that Frost's "agents" and "third parties" acting "on their behalf" directly infringe through their "use" of Xcode and Android Studio in an infringing manner. For example, in the context of the '192 patent, paragraphs 213 and 215 of the FAC provide:

> 213. Defendants Capital One and Frost infringe at least Claim 1 of the '192 Patent when their employees or *agents* use Apple's Xcode or Google's Android Studio (and potentially other software development tools) to author mobile applications.
> * * *
> 215. In addition to direct infringement, at least by the filing date of the original Complaint, Defendants Capital One and Frost also indirectly infringe the '192 Patent. On information and belief, Defendants Capital One and Frost have induced *third parties to author mobile applications on their behalf* using Apple's Xcode or Google's Android Studio. At least by the filing date of the original Complaint, Defendants Capital One and Frost were *aware of the infringement allegations* regarding the '192 Patent contained herein. Defendants Capital One and Frost *knowingly encourage* and intend to induce infringement of the '192 Patent by instructing *third parties* to author applications compatible with Apple's iOS or Google's Android operating systems on these Defendants' behalf, *knowing and specifically intending that Apple's Xcode or Google's Android Studio will be used in an infringing manner to author the mobile applications*.

On top of these specific factual allegations (which must be taken as true), the hundreds of pages of infringement charts set forth in great detail how "developers"—including Frost's "agents" and "third parties"—use Xcode and Android Studio in an infringing manner. Again, it is telling that Capital One does *not* complain about being put on notice of inducing infringement based on this information. Against this backdrop, Frost makes two arguments, neither of which have merit.

First, Frost argues "the FAC fails to plead direct infringement by any third party" because it only refers to "some unknown" third parties. Motion at 11. But there is *no* requirement that Wapp identify a specific third party by name, which is information "uniquely within" Frost's control and which will be learned through discovery. Nor does Frost cite any case requiring such specificity. Instead, it is sufficient to refer to Frost's agents and third parties whom (upon information and belief) it specifically hires to develop mobile banking apps. *See Liberty Peak Ventures, LLC v. Regions Financial Corp.*, No. 2:21-cv-417, Dkt. 29 at 5-6 (E.D. Tex. Mar. 15, 2022) (finding allegations regarding "distributors, partners, customers, clients, subsidiaries, and/or consumers" sufficient); *Canon, Inc. v. TCL Electronics Holdings Ltd.,* No. 2:18-cv-546, Dkt. 114 at 11 (E.D. Tex. Mar. 25, 2022) (finding allegations regarding "agent-subsidiaries, affiliates, partners, CDN service providers, importers, resellers, customers, and/or end users" sufficient); *see also Voit Techs., LLC v. Drucker Labs, L.P.*, No. 4:16-cv-695, Dkt. 32 at 3-4 (E.D. Tex. May 4, 2017) (holding that identification of "another entity" as performing method steps attributable to the accused infringer was sufficient to allege direct infringement).

Furthermore, the quoted paragraphs above are explicit that those agents and third parties are using Xcode and Android Studio "in an infringing manner," *i.e.*, they are directly infringing in the specific ways laid out in hundreds of pages of infringement charts. Frost is clearly on notice about

what type of parties are directly infringing and how they are directly infringing in the context of the inducement claims.

Frost's reliance on *Mullen Indus. LLC v. Samsung Elecs. Co.* is misplaced. In that case, plaintiff alleged that Samsung induced Google Maps users to directly infringe. *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-cv-49, 2025 U.S. Dist. LEXIS 110453, at *10-11 (E.D. Tex. June 11, 2025). However, the complaint failed to allege how Google Maps directly infringed. *Id.* at *13. The court also found that the complaint failed to allege how Google's end users "control or possess any part of Google's server system." *Id.* at *12. On these facts involving a "three-party infringement theory," the court dismissed the inducing infringement allegations. *Id.* at *13. The instant case bears no similarity. Rather, the FAC alleges that Frost induces third-party application developers to develop its mobile application in an infringing manner, as detailed in the infringement charts attached to the amended complaint.

Second, Frost argues "the FAC fails to adequately plead any specific intent to induce infringement." Motion at 11. Seemingly arguing against itself, Frost then admits the "FAC alleges only encouragement and instruction of some unknown third parties 'to author applications compatible with Apple's iOS or Google's Android operating systems'—not encouragement of *infringement*." (emphasis in original). But paragraph 215, for example, expressly states Frost specifically "intends" the "third parties" to use Xcode and Android Studio "***in an infringing manner***." That paragraph also expressly states that Frost "knowingly encourage[s]" the third parties' use "in an infringing manner." In fact, Frost has known about Wapp's patents since at least the filing date of the original Complaint and has (upon information and belief) continued to encourage such infringing use by third parties. This is more than adequate notice of Wapp's inducement theory. Discovery will, of course, add further details about the specific names of any

third parties that Frost hires and how Frost encourages those parties to perform in an infringing manner, but such details are not required at this stage.

Frost cites the inapposite case of *Monolithic Power*. In that case, the plaintiff relied on the knowledge of a prior employee about the asserted patents. *Monolith Power Sys. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*, No. 6:20-cv-8876-ADA, 2021 U.S. Dist. LEXIS 166703, at *13 (W.D. Tex. Sept. 1, 2021). The court found that this knowledge alone "does not advance a plausible inference of induced infringement…[because] there must be facts alleging a specific intent to induce the direct infringer." *Id.* Here, the FAC alleges knowledge of the patents (at least as of service of the complaint), along with instructions to third parties to develop the Frost mobile application "in an infringing manner." That is all that is required at the pleading stage. Frost demands that Wapp prove its case at the outset, but that demand is unsupported by the law. *See In re Bill of Lading*, 681 F.3d at 1339 (there is no requirement that a plaintiff "must prove its [inducement] case at the pleading stage.").

## VI.    FROST'S MARKING ARGUMENTS ARE MERITLESS

The FAC expressly pleads "Plaintiffs have complied with 35 U.S.C. §287(a) and therefore Plaintiffs are entitled to past damages for Defendants' infringement." *See, e.g.*, ¶¶ 239, 258, 277, 296 and 315. For each count, the FAC further states (*e.g.*, in the context of the '192 patent):

> 240.    Plaintiffs have not made, offered for sale, or sold within the United States any article covered by the asserted claims. Furthermore, Plaintiffs have not imported into the United States any article covered by the asserted claims. Accordingly, Plaintiffs have never had any duty to mark products under Section 287(a).
> 241.    If a defendant wishes to assert that Plaintiffs' damages are limited by § 287(a), that defendant would need to carry an "initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). No defendant has yet met or attempted to meet this burden. If and when a defendant identifies allegedly unmarked patented articles, Plaintiffs will respond to such allegations in due course via, e.g., Plaintiffs' discovery responses and/or expert opinions.

FAC at ¶¶ 239-241, 258-260, 277-279, 296-298, 315-317. This is all that is required at the pleading stage because Frost is on notice regarding Wapp's position that (1) it has complied with the marking statute and (2) it will respond to any allegations of failure to mark during discovery *if and when* Frost carries its *initial burden of production* to specifically identify any allegedly unmarked *patented articles*. Frost's attempt to litigate complex and fact intensive marking issues at the pleading stage is both unproductive and contrary to the accepted framework that Frost carries an initial burden for its marking defense.

The crux of Frost's argument is based on the misguided notion that it has identified allegedly unmarked products in its original MTD and therefore Wapp must provide a detailed response in the FAC to Frost's allegations. As explained above, this is *not* how the process works. Instead, *during discovery* (not now), Wapp will tender an interrogatory asking Frost to specifically identify all allegedly unmarked products and the specific dates when such alleged unmarked products were sold. Assuming Frost carries its *initial burden* of providing such requested information, Wapp will then conduct detailed discovery into the allegedly unmarked products, which will require extensive and complex investigations into the features of the products, the dates of sale, etc. No case requires Wapp to do all of this at the pleading stage.

Frost's Motion refers broadly to allegedly unmarked products sold by three entities: (1) Apple; (2) Google; and (3) Micro Focus. While Wapp is under no obligation to address these improper allegations in the FAC, it will do so here to underscore the problems with litigating these issues at the pleading stage.

Regarding Apple and Google, Frost contends that "WAPP licensed Wells Fargo and Bank of America in 2022 and JPMorgan in 2023 with respect to all five Asserted Patents for their **use** of **Apple's** Xcode and **Google's** Android Studio." Motion at 14; *see also id.* at 15 (referring to "**Apple**

Xcode" and "*Google's* Android Studio"). The fundamental flaw in Frost's reliance on Xcode and Android Studio is obvious—these are Apple and Google products (not Wells Fargo, Bank of America and JPMorgan products) and neither Apple nor Google is licensed under the Wapp patents. As a result, no *licensee* is making or selling such products, which are therefore not subject to any marking requirement. Similarly, the prior defendant banks' infringing *use*, by definition, cannot be marked (because it is not a "patented article" as required by Section 287) and is therefore irrelevant to the marking statute. Wapp was not required to explain the futility of Frost's position in the FAC.

Frost's argument regarding Micro Focus products fares no better. Frost generically refers to "Micro Focus's LoadRunner, Performance Center, StormRunner, and Mobile Center" products. Motion at 14. But much more specificity is required for Frost to carry its "initial burden." *See Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) (requiring defendant to identify the "***specific unmarked products*** which the alleged infringer believes practice the patent"). For example, alleged version numbers and dates of sale are necessary for Wapp to be able to adequately investigate the specific features for those version numbers (to determine whether they are covered by the patents) and how the dates match up to the licensing period. Without such specificity, Wapp is left with a "fishing expedition" that is contrary to the *Arctic Cat* framework. *Id*. ("Permitting infringers to allege failure to mark without identifying any products could lead to a large scale fishing expedition and gamesmanship."); *see also, e.g., Pavo Sols. LLC v. Kingston Tech. Co.,* No. 8:14-cv-01352-JLS-KES, 2019 U.S. Dist. LEXIS 160197, at *6 (C.D. Cal. June 26, 2019) (requiring an alleged infringer to identify the specific unmarked products and that such products were sold in the United States).

Additionally, Frost is aware that two of the asserted patents (the '811 and '579 patents) were never asserted against Micro Focus. Nor does Frost cite any evidence suggesting that the Micro Focus products should be marked because they fall within the scope of these two patents (that were never asserted against Micro Focus). Wapp will address any relevant and specific Micro Focus products at the appropriate time in discovery, *after* Frost carries its initial burden, as set forth in the controlling law. Moreover, Frost cites *no* cases that "a patentee ***must plead*** that its licensees have complied with the marking statute" (Motion at 12).

Frost cites *Express Mobile* and *VirtaMove* in support of its position regarding marking. Motion at 13. Both are distinguishable. In *Express Mobile,* the court dismissed plaintiff's claim for past damages because plaintiff had failed to plead compliance with the marking statute, even where plaintiff had nothing to mark. *Express Mobile, Inc. v. DreamHost LLC,* Civil Action No. 1:18-cv-01173-RGA, 2019 U.S. Dist. LEXIS 101468, at \*4-5 (D. Del. June 18, 2019). Similarly, in *VirtaMove,* the court concluded that plaintiff failed to plead compliance with the marking statute for one of its patents by erroneously contending that it only asserted a method claim. *VirtaMove v. Hewlett Packard Enter. Co.,* Case No. 2:24-cv-00093-JRG, 2024 U.S. Dist. LEXIS 189040, at \*17-18 (E.D. Tex. Oct. 16, 2024). The court noted that the patent contains "no method claims" and thus it had to plead compliance with the marking statute. *Id.* at \*18. Contrary to *Express Mobile* and *VirtaMove,* Wapp has pled compliance with the marking statute, even when it had no product to mark. *See, e.g.,* FAC ¶¶ 239, 258, 277, 296, 315 ("Plaintiffs have complied with 35 U.S.C. § 287(a) and therefore Plaintiffs are entitled to past damages for Defendants' infringement."). Accordingly, both cases are readily distinguishable.

In the legal standard section, Frost also cites *Lans v. Digital Equipment* for the proposition that "marking ***may*** be ruled on at the motion to dismiss stage." Motion at 6. However, in *Lans*, the only

asserted patent had expired months before the suit was filed. *Lans v. Dig. Equip. Corp.*, 252 F.3d 1320, 1326 (Fed. Cir. 2001). Plaintiff did not allege it complied with the patent marking provision, so absent actual notice, no damages could be collected. *Uniboard Aktiebolag v. Acer Am. Corp.*, 118 F. Supp. 2d 19, 22 (D.D.C. 2000); *Lans,* 252 F.3d at 1328. *Lans* is inapplicable because Wapp asserts unexpired patents and alleges it complied with the marking statute, as explained further below.

## VII.    IF NECESSARY, WAPP SHOULD BE GIVEN LEAVE TO FILE A SECOND AMENDED COMPLAINT

Assuming for the sake of argument that the Court credits any of Frost's arguments, Wapp should be given leave to file a second amended complaint. "Ordinarily, when granting a Rule 12(b)(6) motion, courts must freely grant plaintiffs leave to amend the complaint instead of dismissing the case entirely[,]" as long as the amendment would not be futile. *Sutton Place 1 Townhouse v. Amguard Ins. Co.*, 668 F. Supp. 3d 684, 699 (W.D. Tex. 2023) (quoting *Varela v. Gonzalez,* 773 F.3d 704, 707 (5th Cir. 2014)).

## VIII.   CONCLUSION

For all the foregoing reasons, Frost's motion fails and should be withdrawn.

15

DATED: September 19, 2025        Respectfully submitted,

/s/*Leslie V. Payne*
Leslie V. Payne
State Bar No. 0784736
lpayne@hpcllp.com
R. Allan Bullwinkel
State Bar No. 24064327
abullwinkel@hpcllp.com
Alden G. Harris
State Bar No. 24083138
aharris@hpcllp.com
Christopher L. Limbacher
State Bar No. 24102097
climbacher@hpcllp.com
Carlos I. Ruiz
State Bar No. 24110614
cruiz@hpcllp.com
HEIM PAYNE & CHORUSH, LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

**ATTORNEYS FOR PLAINTIFFS WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 19th day of September, 2025, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/*Leslie V. Payne* _____
Leslie V. Payne

17