# Exhibit E

# Order Granting Request for Ex Parte Reexamination

# U.S. Patent No. 8,924,192

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/016,031 | 03/06/2026 | 8924192 | 16888.9005-00000 | 3406 |

97066          7590          04/22/2026
Innovation Capital Law Group, LLP
19900 MacArthur Blvd., Suite 610
Irvine, CA 92612

| EXAMINER |
|---|
| CARLSON, JEFFREY D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/22/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER
901 NEW YORK AVENUE, NW
WASHINGTON DC 20001-4413

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/016,031* .

PATENT UNDER REEXAMINATION  *8924192* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

/JDC/

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/016,031 | Patent Under Reexamination 8924192 | |
|---|---|---|---|
| | Examiner Jeffrey D Carlson | Art Unit 3992 | AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 03/06/2026 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,      b)☑   PTO/SB/08,      c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /JEFFREY D CARLSON/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

Application/Control Number: 90/016,031                                    Page 2
Art Unit: 3992

## DECISION ON REQUEST FOR *EX PARTE* REEXAMINATION

The present application is being examined under the pre-AIA first to invent provisions.

Third-party requester Apple Inc. submitted a request ("the request") for *ex parte* reexamination with a filing date of 3/6/2026, requesting reexamination of claims 1–2, 4–5 and 60–61 US Patent 8,924,192 ("the patent"). Requester also provided declarations (Ching x3, Cullimore, Gluckman and Wiest) which have been considered along with the request.

At least one substantial new question of patentability affecting claims 1–2, 4–5 and 60–61 of the patent in effect at the time is raised by the request. Accordingly, claims 1–2, 4–5 and 60–61 will be reexamined.

### *Publications Asserted as Raising Substantial New Question(s) of Patentability*

The asserted substantial new question(s) of patentability (SNQs) are based on the following publications.

- Beginning Mobile Phone Game Programming (Morrison)
- A Simulation Test-bed for Mobile Adaptive Architecture (Kazman)
- BlackBerry Simulator User Guide, Version 3.6 (Blackberry)
- US 2003/0045298 (Linton)
- KR 2003-0049670 (Lee)
- US 7,813,910 (Poulin-910)

### *Analysis of Substantial New Questions of Patentability (SNQs)*

SUMMARY OF REQUESTED US PATENT US PATENT 8,924,192

US Patent 8,924,192 is titled "Systems Including Network Simulation For

Application/Control Number: 90/016,031                                      Page 3
Art Unit: 3992

Mobile Application Development And Online Marketplaces For Mobile

Application Distribution, Revenue Sharing, Content Distribution, Or Combinations

Thereof" and is summarized as follows:

"A system and methods emulate an application executing in real time in a mobile
device. The mobile device is emulated in real time using a model running on a
processor extrinsic to the mobile device. The model is based on characteristics
indicative of performance of the mobile device. The application is executed in real
time within the model and the application executing in the model is monitored to
determine resource utilization information by the application for the mobile device.
The resource utilization information for the mobile device is displayed" (at
Abstract).

        Patented claims 1 and 60 are representative and are reproduced below:

1. A system for developing an application for a mobile device comprising:

a software authoring interface configured to simultaneously visually emulate, via
one or more profile display windows, a plurality of network characteristics
indicative of performance of the mobile device when executing the application;

wherein the software authoring interface is further configured to simulate a
network connection state encountered by the mobile device.

60. A system comprising:

an application configured to enable a user to modify a photo on the mobile device,

wherein the application is developed using a software authoring platform
configured to simultaneously visually emulate, via one or more profile display
windows, a plurality of hardware characteristics indicative of performance of the
mobile device when executing the application.

## ORIGINAL PROSECUTION HISTORY

Application 13/673,692 filed 11/9/2012 presented claims 1–43.

Application/Control Number: 90/016,031                                          Page 4
Art Unit: 3992

An office action mailed 11/6/2013:

  ▪ Rejected claims 1–43 for nonstatutory double patenting over US Patent 8,332,203.

A response filed 4/7/2014:

  ▪ Added claims 44–69. Claims 1–69 were pending.

  ▪ Included a Terminal Disclaimer for US 8,332,203 (approved).

A Notice of Allowance mailed 7/17/2014:

  ▪ Allowed claims 1–69.

A rule 312 amendment filed 10/17/2014 requested:

  ▪ Amendment of the Title.

  ▪ Preference for examiner to re-number claim 44 as claim 1.

A response to rule 312 amendment mailed 10/27/2014:

  ▪ Authorized entry of the rule 312 amendment.

US Patent 8,924,192 issued 12/30/2014 with claims 1–69.

## POST-GRANT HISTORY AT THE PTO

*IPR2025-01325 (denied)*

A petition for *inter partes* review of the patent (US Patent 8,924,192) was filed 7/18/2025.

  ▪ Petitioners Capital One, N.A. and Capital One Services, LLC sought review

Application/Control Number: 90/016,031                                    Page 5
Art Unit: 3992

of claims 60–69. The petitioned grounds were:

| RLP | Claims | Basis |
|---|---|---|
| RLP 1 | 60–65 | Lee[1] |
| RLP 2 | 66 | Lee and Jiang |
| RLP 3 | 67–69 | Lee and Tran |
| RLP 4 | 60–65 | Lee and Poulin-910[2] |
| RLP 5 | 66 | Lee, Poulin-910 and Jiang |
| RLP 6 | 67–69 | Lee, Poulin-910 and Tran |

- The PTAB discretionarily denied institution of the trial on 11/20/2025.

PROPOSED SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

A request for *ex parte* reexamination of the patent (US Patent 8,924,192) was filed 3/6/2026.

- Requester Apple Inc. now seeks reexamination of claims 1–2, 4–5 and 60–61. The requested grounds are:

| SNQ | Claims | Basis |
|---|---|---|
| SNQ 1 | 1 | Morrison and Kazman |
| SNQ 2 | 1–2, 4–5 | Morrison, Kazman and Blackberry |
| SNQ 3 | 1–2 | Morrison, Kazman and Linton |
| SNQ 4 | 1–2, 4–5 | Morrison, Kazman, Linton and Blackberry |
| SNQ 5 | 60–61 | Lee |
| SNQ 6 | 60–61 | Lee and Poulin-910 |
| SNQ 7 | 60–61 | Morrison, Kazman and Lee |

---

[1] Same Lee reference as asserted in this request.
[2] Same Poulin-910 reference as asserted in this request (US 7,813,910).

Application/Control Number: 90/016,031                                    Page 6
Art Unit: 3992

None of these publications in the asserted SNQs were applied by the examiner in a rejection or otherwise discussed on the record by the examiner in the original prosecution of the patent. The Lee and Poulin-910 publications were presented in the IPR2025-01325 petition but were not discussed in the PTAB's discretionary denial.

The question(s) of patentability in this reexamination request based upon the particular asserted combinations were not: (A) decided in a final holding of invalidity by a federal court in a decision on the merits involving the claim, after all appeals; (B) decided in an earlier concluded examination or review of the patent by the Office; or (C) raised to or by the Office in a pending reexamination or supplemental examination of the patent.

SNQ 1:    Morrison and Kazman

Morrison[3] teaches:

"The J2ME emulator does exactly what its name implies: It emulates a physical mobile device on your desktop computer, This allows you to test MIDlets within the comforts of your desktop computer without having to download the code onto a device…the bulk of the game testing takes place in the J2ME emulator before the physical device enters the picture" (Morrison p. 51).

"J2ME emulator is used to test mobile games on your desktop computer without the hassle of downloading and running them on a physical mobile phone. A useful feature of the emulator allows you to tweak the default emulation devices to match a target physical phone. For example, you might want to emulate a mobile phone with a certain screen size" (Morrison p. 52).

"the J2ME Wireless Toolkit includes emulation support for the following generic devices…Table2.1 lists the specific attributes of each of these devices…The table reveals how much variance is possible in J2ME devices. Notice that the phones and media control skin have vertically oriented screens whereas the Qwerty device has a horizontal screen. Also, the gray phone supports 256 shades of gray, whereas

---

[3] Citations to Morrison are done with respect to the "Page xxx of 206" footer of Morrison.

Application/Control Number: 90/016,031                                      Page 7
Art Unit: 3992

the remaining devices support 256 colors. The key sets on the devices vary as well" (Morrison p. 59).

"The table reveals how much variance is possible in J2ME devices. Notice that the phones and media control skin have vertically oriented screeris1 whereas the Qwerty device has a horizontal screen. Also, the gray phone supports 256 shades of gray, whereas the remaining devices support 256 colors. The key sets on the devices vary as well. The Qwerty device includes a full QWERTY key set similar to your computer keyboard~ this…memory monitoring is done live while a MIDlet is running. When you enable memory monitoring and run a MIDlet in the J2ME emulator, a memory monitor window launches along with the emulator" (Morrison p. 202).

       Kazman[4] teaches:

"A simulation test-bed for mobile adaptive architectures" (Kazman p. 1).

"mobile devices must endure widely varying network connectivity and quality of service conditions and must be constantly frugal about the power that they consume from their batteries" (Kazman p. 2).

"Finally, the user's environment is changing dynamically. The battery power on the system is always changing. A user might add or remove a battery. The communication signal strength required for sending or receiving data might change over time and with changes in the user's location. Available network bandwidth might change considerably over time due to nominal fluctuations in the load on the network. To be able to conduct research in determining appropriate software structures for dealing with all of these complexities, we propose to explore different architectural alternatives for such mobile devices; to do this, we need to create a simulation test-bed" (Kazman p. 3).

"Resource layer. This lowest layer simulates hardware resources. This layer consists of the basic resources that are needed to run an application on a mobile device. A software module represents each resource: the CPU, memory, I/O device(s), communication devices, and the battery" (Kazman p. 3).

"Environment layer. This layer simulates the environment within which the mobile device operates. This layer simulates a stochastic environment from the perspective

---

[4] Citations to Kazman are done with respect to the "Page x of 8" footer of Kazman.

Application/Control Number: 90/016,031 Page 8
Art Unit: 3992

of the mobile device, including user events, changes in network bandwidth and availability, and external application events (e.g. the arrival of a phone call or a short message)" (Kazman p. 4).

"At run-time, the simulation controller also takes commands from the simulation GUI to control runtime parameters and to determine what information to feed back to the operator of the simulation (such as what variables to monitor). It then loops, one simulation frame at a time (where the size of the frame is another system parameter, permitting different resolutions of simulations), to generate a set of outputs indicating the actual performance of the system in response to its tasks and the events that occur (Fig. 3)" (Kazman p. 4).

"The resource component type represents the usable system resources such as battery, CPU, memory, and network bandwidth of which the battery is a special kind of resource (draining over a period of time). The resources are targets for competition between task components. The task component type simulates each unit of meaningful work such as a voice call, file download, playing of music, etc." (Kazman p. 5).

"In this section, we describe how one can use the simulator test-bed. We consider that, for the sake of our example, the mobile device user has the following task characteristics: • the tasks executable are Voice call and FTP • every 10 min, the device makes/gets a 5-min-long voice call • every 30 min, the device user downloads 300 KB files using FTP. Correspondingly, the resource characteristics are: • battery: 1300 mA h • CPU: 250 MIPS that requires 75 mA • memory: 16 MB that requires 24 mA • network: 43.2 kbps network that requires 125 mA" (Kazman p. 6–7).

Morrison and Kazman together thus teach various elements including: programming of mobile software, a software execution interface that emulates mobile device characteristics and performance when executing the software, visual monitoring of this emulation in a window, monitoring of resources such as memory, network availability and bandwidth.

Because these teachings are relevant to allowed independent claim 1 of the patent, there is a substantial likelihood that a reasonable examiner would consider the teachings important in evaluating the patentability of claims 1–2 and 4–5.

Application/Control Number: 90/016,031                                              Page 9
Art Unit: 3992

Morrison and Kazman together therefore raise a substantial new question of
patentability with respect to claims 1–2 and 4–5.

SNQ 2 through SNQ 4:

Each of SNQ 2 through SNQ 4 include at least the combination of SNQ 1
(Morrison and Kazman). Because this combination has been determined above to
raise an SNQ, this combination when supplemented with the teachings of
Blackberry and Linton will also raise an SNQ.

Each combination of SNQ 2 through SNQ 4 therefore raises a substantial
new question of patentability with respect to claims 1–2 and 4–5.

SNQ 5:       Lee

Lee[5] teaches:

"relates to a method for editing a photo and sending a photo mail, and a mobile
phone implementing the same. The mobile phone is comprised of a memory for
storing a program that has an algorithmic structure that supports configuring a
photo or picture as a photo mail and editing it, a control unit for processing a user's
command so that the photo or picture in the photo mail can be edited and sent, and
a keypad for transmitting the commands from the user so that the photo or picture
can be edited and sent as a photo mail. In accordance with this, by providing a
specific function for the user to edit a picture or photo to be sent as a photo mail, it
is possible to produce various forms of pictures" (Lee p. 9).

"The present invention relates to a method for editing a photo and sending a photo
mail, and to a mobile phone implementing the same. More specifically, the present
invention relates to a method for implementing various functions so that a photo or
picture to be used in a photo mail can be edited according to a user's taste on a
mobile phone, and to a mobile phone implementing the method" (Lee p. 10).

Lee thus teaches at least an application configured to enable a user to modify

---

[5] Citations to Lee are done with respect to the "Page xx of 21" footer of Lee.

Application/Control Number: 90/016,031                               Page 10
Art Unit: 3992

a photo on a mobile device.

Because these teachings are relevant to allowed independent claim 60 of the patent, there is a substantial likelihood that a reasonable examiner would consider the teachings important in evaluating the patentability of claims 60–61.

Lee therefore raises a substantial new question of patentability with respect to claims 60–61.

SNQ 6:

SNQ 6 includes at least the publication of SNQ 5 (Lee). Because this publication has been determined above to raise an SNQ, this publication when supplemented with the teachings of Poulin-910 will also raise an SNQ. This is so regardless of whether or not Poulin-910 qualifies as prior art against claims 60–61 of US Patent 8,924,192.

SNQ 6 therefore raises a substantial new question of patentability with respect to claims 60–61.

SNQ 7:

SNQ 7 includes at least the publication of SNQ 5 (Lee). Because this publication has been determined above to raise an SNQ, this publication when supplemented with the teachings of Morrison and Kazman will also raise an SNQ. Likewise, SNQ 7 includes at least the publications of SNQ 1 (Morrison and Kazman). Because these publications have been determined above to raise an SNQ, these publications when supplemented with the teachings of Lee will also raise an SNQ.

SNQ 7 therefore raises a substantial new question of patentability with respect to claims 60–61.

Application/Control Number: 90/016,031                                    Page 11
Art Unit: 3992

## *35 USC 325(d)*

Section 325(d) states in part, "[i]n determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." Thus, for the Director to exercise discretion as to whether to Order a reexamination under chapter 30, the request must first be determined to be based on the same or substantially the same prior art or arguments that were previously presented to the Office.

A review of the post grant history of the patent (US Patent 8,924,192) indicates one post grant challenge filed prior to the filing of the current request: IPR2025-01325. This is summarized above – see section "POST-GRANT HISTORY AT THE PTO".

A comparison between the prior art and arguments presented in the current request and those presented in IPR2025-01325 indicates that at least one ground (Lee; Lee and Poulin-910) asserted as raising an SNQ in the current request is based on the identical prior art combination that was previously presented in the prior IPR.

Therefore, the statutory threshold permitting the Director to exercise discretion to deny the request for reexamination under 35 USC 325(d) has been met. However, in view of the following facts, the Examiner declines to exercise discretion to deny this request.

- The fact that in the discretionary denial of the prior IPR petition, the Board did not provide on the record any discussion or evaluation of the arguments or the prior art references presented in the petition.

Application/Control Number: 90/016,031                                              Page 12
Art Unit: 3992

- The fact that there is no prior determination of serial abusive post grant challenges to the patent.
- The fact that the current requestor is not the same entity as the prior petitioner.
- The fact that the Examiner has determined that new/additional arguments in the request raise a substantial new question of patentability.

Accordingly, the Examiner declines to discretionarily deny reexam under 35 USC 325(d). The reexamination is ordered as described above.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Submissions*

In order to ensure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first Office action on the merits (which does not result in a close of prosecution). Submissions after the second Office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced.

Application/Control Number: 90/016,031                                      Page 13
Art Unit: 3992

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent requested for reexamination throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

By Mail to:     Mail Stop *Ex Parte* Reexam
                Central Reexamination Unit
                Commissioner for Patents
                United States Patent & Trademark Office
                P.O. Box 1450
                Alexandria, VA 22313-1450

By FAX to:      (571) 273-9900
                Central Reexamination Unit

By hand:        Customer Service Window
                Randolph Building
                401 Dulany Street
                Alexandria, VA 22314

Information regarding the status of reexamination proceedings may be obtained from Patent Center. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about

Application/Control Number: 90/016,031                                        Page 14
Art Unit: 3992

Patent Center and https://www.uspto.gov/patents/docx for information about filing

in DOCX format. For additional questions, contact the Electronic Business Center

(EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO

Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or

571-272-1000.

Any inquiry concerning this communication should be directed to **the
Central Reexamination Unit** at telephone number **517-272-7705.**


/JEFFREY D CARLSON/
Primary Examiner, Art Unit 3992

Conferee:

/M.F/
Supervisory Patent Examiner, Art Unit 3992