# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

WAPP TECH LIMITED PARTNERSHIP,
*et al.*,

               Plaintiffs,

v.

APPLE INC., *et al.*,

               Defendants.

C.A. No. 4:25-cv-00230-ALM

**NONPARTY OPENTEXT CORP.'S RESPONSES AND
OBJECTIONS TO PLAINTIFFS' DOCUMENT SUBPOENA**

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, and the Local Rules for the Eastern District of Texas ("Local Rules"), Nonparty OpenText Corp. ("OpenText") hereby responds and objects to Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp.'s (collectively, "Wapp" or "Wapp Tech") April 1, 2026 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena"). Without obligating itself to do so, OpenText reserves the right to amend or supplement these responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, interpretations, contentions, and/or legal theories which may apply.

**DEFINITIONS**

1.       "General Objections" means the general objections, privileges, and reservations of rights set forth in this document, which are incorporated into each individual response and objection to the Requests as if fully set forth therein.

2.      "Lawsuit" means the civil action captioned *Wapp Tech Limited Partnership and Wapp Tech Corp. v. Apple Inc., Capital One, N.A., Capital One Services, LLC, Frost Bank, and Cullen/Frost Bankers, Inc.*, No. 4:25-cv-00230-ALM, pending in the United States District Court for the Eastern District of Texas, Sherman Division.

3.      "Local Rules" means the Local Rules for the Eastern District of Texas.

4.      "OpenText" means non-party OpenText Corp.

5.      "Protective Order" means the Protective Order entered in the Lawsuit between the parties thereto.

6.      "Request" or "Requests" means the document requests set forth in Plaintiffs' Subpoena, dated April 1, 2026, to which these Responses and Objections are directed.

7.      "Topic" or "Topics" means the topics for deposition identified in the Plaintiffs' Subpoena, dated April 1, 2026 including the topics set forth in the "Topics for Deposition" section thereof.

8.      "Subpoena" means Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp.'s April 1, 2026, Amended Subpoena Duces Tecum and Notice of Deposition, served on OpenText in the Lawsuit.

9.      "Wapp" means Plaintiffs Wapp Tech Limited Partnership and Wapp Tech Corp., collectively.

## OBJECTIONS TO DEFINITIONS

1.      OpenText objects to the definition of "You" and "Your" to the extent it seeks to impose an obligation greater than that imposed under the Federal Rules of Civil Procedure or any of the Local Rules. OpenText further objects to this definition as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense

2

in this Lawsuit or seeks privileged information. OpenText further objects to this definition insofar as it implicates any of OpenText's past and present affiliates, operating divisions, parent corporations, subsidiaries, directors, officers, agents, employees, representatives, and all predecessors in interest without any time limitation.

2.      OpenText objects to the definition of "MF Products" to the extent it is overbroad and unduly burdensome. The definition includes 18 purported variants of the same software by demanding not only multiple products, but also multiple versions of those products and multiple configurations of each version. This definition is overly broad, is not proportional to the needs of the case, and imposes an undue burden and expense by demanding production of software configurations OpenText does not ordinarily create, distribute, or preserve. Compliance would require OpenText to create, reconstruct, or configure an unreasonably large volume of software materials in forms that OpenText does not maintain. The sheer quantity of software demanded (spanning multiple versions and configurations) renders this definition not proportional to the needs of the case and imposes an undue and unnecessary burden. Additionally, any marginal evidentiary value of such an expansive definition is substantially outweighed by the burden and security risk associated with recreating and producing unsupported or legacy software configurations.

3.      OpenText objects to the definition of "MF Products" because the definition is vague, ambiguous, and indefinite. The definition is unclear and internally inconsistent. The definition references "the aforementioned products (a), (b), and (c) and version numbers," and then separately lists OpenText Functional Testing Lab for Mobile and Web, versions 2021 R2 and 26.1, and Virtual User Generator, versions 2021 R2 and 26.1, in relation to versions of the software in sections (a), (b), and (c). However, both the Virtual User Generator and Functional Testing Lab

3

for Mobile and Web are standalone products and not configurations of the software mentioned in subsection (a), (b), and (c). The software historically known as "LoadRunner" is a legacy product name that has been carried forward through successive rebranding. As reflected on the Micro Focus product lifecycle page (https://www.microfocus.com/lifecycle/), "LoadRunner" now refers to three distinct OpenText products: OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, and OpenText Core Performance Engineering. Similarly, the product formerly known as "LoadRunner Cloud" corresponds to OpenText Core Performance Engineering. The LoadRunner versions produced in response to this subpoena therefore correspond to the products identified in subsections (a), (b), and (c) of the definition of "MF Products": OpenText Professional Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; OpenText Enterprise Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; and OpenText Core Performance Engineering, versions 2021 R2 (or a contemporaneously released version of version 2021 R2 of products (a) and (b) above) and 26.1, with Network Virtualization.

4.      OpenText objects to the definition of "MF Products" at subsection (d) and (e), which reference the Virtual User Generator and OpenText Functional Testing Lab for Mobile and Web software because the request is unduly burdensome, not proportional to the needs of the case, and would impose unnecessary expense on OpenText. These programs are separate and distinct software products and are not automatically tied to the OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, or OpenText Core Performance Engineering software referenced in subsections (a), (b), and (c) of the definition of "MF Product." Requiring OpenText to collect documents and information relating to software that is independent

4

of other products identified in the definition of "MF Product" would therefore be unduly burdensome and not proportional to the needs of the case.

5.      OpenText objects to the definition of "document" to the extent it seeks to impose an obligation greater than that imposed under the Federal Rules of Civil Procedure or any of the Local Rules.

6.      OpenText objects to the definition of "relating to," "reflecting," "referring to," "concerning," or "evidencing," to the extent it seeks to encompass documents or information protected by the attorney-client privilege, work product doctrine, and/or any other applicable protection from discovery.

7.      OpenText objects to the definition of "communication" insofar as it purports to include transfers of information that do not have corporeal form on the ground that, by definition, they are not subject to production. OpenText further objects on the grounds that electronic communications are not properly sought in these requests for production.

8.      OpenText objects to the definition of the term "thing" to the extent it seeks to impose obligations beyond, or inconsistent with, those set forth in the Federal Rules of Civil Procedure. OpenText will interpret "thing" consistent with the Federal Rules of Civil Procedure.

9.      OpenText objects to this Definition No. 8 to the extent it is vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. The definition improperly seeks to expand OpenText's obligations by purporting to include an indeterminate and virtually unlimited group of persons and entities (such as affiliates, parents, subsidiaries, predecessors, successors, joint-venture partners, and persons or entities "purporting to act" or acting "in concert") without reasonable temporal, functional, or agency limits, and by attempting to attribute possession, custody, or control of documents to OpenText for materials held by

5

separate legal entities or individuals not within OpenText's possession, custody, or control. Without waiving these objections, OpenText will interpret references to any entity narrowly and reasonably, consistent with its status as a non-party under the Federal Rules of Civil Procedure.

10. OpenText objects to the definitions of "and," "and/or," and "or" to the extent they are overbroad, unduly burdensome, and inconsistent with the Federal Rules of Civil Procedure. The definition improperly mandates the "broadest possible scope" of discovery and seeks to eliminate reasonable, text-based limitations by requiring an expansive construction of "and," "and/or," and "or," thereby attempting to compel production beyond what is relevant, proportional, or within OpenText's possession, custody, or control. Without waiving these objections, OpenText will construe these terms consistent with the Federal Rules of Civil Procedure and its status as a non-party.

11. OpenText objects to this definition of the term "any" as overly broad, unduly burdensome, vague, and not proportional to the needs of the case. This definition improperly expands the scope of discovery by requiring the production or identification of all conceivable documents, things or information regardless of relevance, materiality, or reasonable limits. It also attempts to preclude reasonable and appropriate narrowing of Responses. Subject to and without waiving these objections, OpenText will interpret the term "any" reasonably and in accordance with the Federal Rules of Civil Procedure and Local Rules.

12. OpenText objects to Definition No. 11 to the extent it is overly broad, vague, and improperly expands the scope of discovery beyond what is permitted by Federal Rules of Civil Procedure. This definition attempts to remove reasonable grammatical and substantive limitations by converting singular to plural, imposing all tenses of verbs, and eliminating ordinary interpretive

6

boundaries, thereby increasing the burden of responding to discovery without a corresponding showing of relevance or proportionality.

13.    OpenText objects to the definitions of "relating to," "reflecting," "referring to," "concerning," and "evidencing" as overly broad, unduly burdensome, vague, and not proportional to the needs of the case. The definition impermissibly expands the scope of discovery by encompassing virtually any reference, mention, or connection (no matter how remote or tangential) to the subject matter, thereby exceeding the limits of relevance and reasonable particularity required under the Federal Rules of Civil Procedure. Subject to and without waiving these objections, OpenText will interpret these terms reasonably and in accordance with the Federal Rules of Civil Procedure and Local Rules.

14.    OpenText objects to the definition of "Identify" as overly broad, unduly burdensome, vague, and not proportional to the needs of the case. This definition exceeds the requirements of the Federal Rules of Civil Procedure by demanding extensive personal, business, and technical details that may be irrelevant, not reasonably accessible, or unavailable to OpenText.

15.    OpenText objects to the definition of "Identify" to the extent it requires disclosure of private or confidential information (including personal contact information), information not within OpenText's possession, custody, or control, or information protected by privacy rights, or contractual obligations. OpenText also objects to this definition insofar as it seeks detailed technical or product-specific information, not necessary to respond to the requests at issue. Subject to and without waving these objections, OpenText will identify persons, entities, documents, and things in a reasonable manner consistent with the Federal Rules of Civil Procedure and Local Rules.

## OBJECTIONS TO INSTRUCTIONS

1.    OpenText objects to the instructions to the extent they seek to impose any obligations in excess of those required by the Federal Rules of Civil Procedure, the Local Rules, or other applicable rules.

2.    OpenText objects to the instructions as overbroad and unduly burdensome insofar as they fail to define any temporal limitation.

3.    OpenText objects to the instructions to the extent they seek to dictate the format, manner, or sequence of OpenText's responses or production of documents beyond what is required by the Federal Rules of Civil Procedure, Local Rules, or any applicable order of the Court.

4.    OpenText objects to Instruction No. 2 as inconsistent with OpenText and Wapp's agreement regarding service of the subpoena. As reflected in the email from C. Ruiz to T. Carroll et al., dated March 19, 2026, at 4:55 PM CT, OpenText agreed to accept service of the subpoena on the understanding that the parties would "make this process as easy as possible for both sides and avoid motion practice." Instruction No. 2, which imposes a detailed and burdensome privilege-logging obligation on a non-party, is incompatible with the agreement between OpenText and Wapp. OpenText's agreement to accept service of the subpoena should not be construed as consent to onerous discovery obligations that exceed what would ordinarily be required of a non-party.

5.    OpenText further objects to Instruction No. 2 as not proportional to the needs of the case. The instruction demands that OpenText compile and produce a privilege log containing nine categories of information for each withheld document, including "all other facts or information" relied upon to assert a privilege claim. This requirement imposes a burden on a non-party that is not proportional to any legitimate need served by such privilege-log entries. The obligation to identify every fact or piece of information supporting each privilege assertion goes beyond what is necessary to evaluate whether a privilege applies and would require OpenText to

marshal legal arguments on a document-by-document basis—an obligation that is unreasonable even as between parties to litigation, let alone when imposed on a non-party.

6.    OpenText further objects to Instruction No. 2 to the extent it is inconsistent with Federal Rule of Civil Procedure 45(d)(1), which provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." OpenText is a non-party to this litigation and is entitled to protection against burdensome discovery obligations. The privilege-logging requirements set forth in Instruction No. 2 would impose undue burden and expense on OpenText by requiring it to devote substantial time and resources to cataloging privileged documents across nine separate fields of information. Rule 45(d) requires the issuing party to take reasonable steps to minimize such burdens, and Instruction No. 2 does not satisfy that standard.

7.    OpenText objects to Instruction No. 3 to the extent it contemplates that the Protective Order entered in the underlying lawsuit is the sole basis upon which OpenText may protect its confidential information from disclosure. Federal Rule of Civil Procedure 45(d)(3)(B)(i) provides that the court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Instruction No. 3 offers no mechanism for withholding documents containing such information and instead requires OpenText to produce them subject only to the terms of a Protective Order negotiated by and between the parties to this litigation—an order in which OpenText had no role and which may not adequately address OpenText's confidentiality concerns. OpenText does not construe the subpoena as requiring the production of any documents that would be subject to a motion to quash under Rule 45(d)(3)(B)(i).

8.       OpenText further objects to Instruction No. 3 as inconsistent with OpenText and Wapp's agreement reflected in the email from C. Ruiz to T. Carroll et al., dated March 19, 2026, at 4:55 PM CT, in which OpenText agreed to accept service of the subpoena on the understanding that the process would be made "as easy as possible for both sides." Requiring OpenText to produce highly sensitive or confidential information, with the Protective Order as the only available safeguard, is inconsistent with that understanding. OpenText agreed to cooperate in responding to the subpoena, not to waive its right to withhold documents that may properly be the subject of a motion to quash or modify under Rule 45(d)(3)(B)(i).

9.       OpenText further objects to Instruction No. 3 to the extent it seeks the production of end-of-life software that is no longer supported or maintained. Compliance with this Instruction would impose an undue burden and create material and unreasonable security risks, including the risk of exploitation of known and unpatched vulnerabilities. Distribution of such versions could expose systems to security breaches and undermine established cybersecurity controls. Such production is not proportional to the needs of the case, outweighs any potential evidentiary value, and exposes OpenText to unnecessary operational, contractual, and regulatory risks.  In addition, legacy versions contain proprietary and trade-secret information that is protected under applicable confidentiality, licensing, and intellectual-property frameworks. Disclosure of such materials would create an unreasonable risk of misuse or reverse engineering and is not appropriate. OpenText will produce the latest versions of the requested software to the extent such software is within OpenText's possession, custody, or control.

## **GENERAL OBJECTIONS**

1.       OpenText asserts the following General Objections, privileges, and reservations of rights (collectively, the "General Objections"). Each individual response and/or objection to the

10

Requests are subject to, and limited in accordance with, the following General Objections, which are incorporated therein as if fully set forth in each response.

2.      OpenText objects to each and every Request to the extent that any Request seeks information and/or documents that are protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable legal privilege.

3.      OpenText objects to each and every Request to the extent that any Request obligates OpenText to seek documents or information from any person or entity other than itself.

4.      OpenText objects to each and every Request to the extent that any Request seeks information or documents that are not limited in time or scope.

5.      OpenText objects to each and every Request to the extent that any Request contains undefined or other terminology that is vague, ambiguous or colloquial, insofar as such terminology does not permit it to ascertain the content of the Request, rendering it unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.      OpenText objects to each and every Request to the extent any Request seeks documents or information that is irrelevant to or outside the scope of the issues currently being tried in this case and/or is not calculated to lead to the discovery of admissible evidence.

7.      OpenText objects to each and every Request, to the extent that any Request seeks documents or information already in Wapp's possession, custody, or control.

8.      OpenText objects to each and every Request to the extent that any Request seeks the production of documents or information readily available through public sources, from sources that are more convenient, less burdensome or less expensive, or from sources that are more readily available to Wapp than to OpenText.

11

9.      OpenText objects to each and every Request, to the extent that any Request contains an express or implied assumption of fact or law with respect to matters at issue in this Lawsuit.

10.     OpenText objects to each and every Request to the extent that any Request imposes obligations beyond those provided by the Federal Rules of Civil Procedure and any Local Rule.

11.     OpenText objects to each and every Request to the extent that any Request obligates OpenText to obtain all documents and things, when representative documents are sufficiently responsive to the Request.

12.     OpenText objects to each and every Request to the extent that any Request obligates OpenText to seek disclosure of information that violates any Protective Order.

13.     OpenText objects to each and every Request to the extent any Request requires OpenText to produce information in violation of a legal or contractual obligation of nondisclosure or confidentiality to a third party.

14.     OpenText objects to each and every Request to the extent it is cumulative, duplicative, or premature.

15.     OpenText's production of any document is not intended to be, and shall not be, construed as an admission that the document is relevant, material, admissible in evidence or reasonably calculated to lead to the discovery of admissible evidence, and/or as a waiver of any other applicable privilege.

16.     Each Response herein is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on the grounds which would require its exclusion or a portion of it to be excluded from evidence.

17.     OpenText reserves the right to supplement its Responses and Objections at any time.

## SPECIFIC OBJECTIONS AND RESPONSES TO SUBPOENA REQUESTS

**DOCUMENT REQUEST NO. 1:**

Authentic documents detailing the function, operation, characteristics, and capabilities of the MF Products, including but not limited to, manuals, specifications, datasheets, user guides, and release notes.

**RESPONSE TO DOCUMENT REQUEST NO. 1:**

The foregoing general objections are hereby incorporated by reference. OpenText objects to this Request as vague and ambiguous because it uses undefined and subjective terms including "function," "operation," "characteristics," and "capabilities," making it impossible to determine the scope of documents sought.

Furthermore, OpenText objects to this Request as vague, ambiguous, and indefinite because the description of the "MF Products" is unclear and internally inconsistent. The Request references "the aforementioned products (a), (b), and (c) and version numbers," and then separately lists OpenText Functional Testing Lab for Mobile and Web, versions 2021 R2 and 26.1, and Virtual User Generator, versions 2021 R2 and 26.1, in relation to versions of the software in sections (a), (b), and (c). This is vague and ambiguous because both the Virtual User Generator and Functional Testing Lab for Mobile and Web are standalone products and not configurations of the software mentioned in subsection (a), (b), and (c). This lack of clarity prevents OpenText from determining the scope of documents sought and renders the Request impermissibly vague and indefinite.

OpenText objects to this Request to the extent it seeks production of information associated with 18 purported variants of the same software by demanding not only multiple products, but also multiple versions of those products and multiple configurations of each version. This Request is

13

not proportional to the needs of the case and imposes an undue burden and expense by demanding production of information associated with a large quantity of software versions that OpenText does not ordinarily create, distribute, or preserve. The sheer quantity of software information demanded (spanning multiple versions and configurations) renders the Request not proportional to the needs of the case and imposes an undue and unnecessary burden and expense.

OpenText further objects to this Request because it seeks discovery that goes beyond the scope of the agreement as reflected in the email from C. Ruiz to T. Carroll et al., dated March 19, 2026, at 4:55 PM CT, in which the parties expressly agreed to make the discovery process as efficient as possible and to avoid unnecessary motion practice. Notwithstanding those representations, this Request seeks a large-scale production of information associated with numerous software configurations that materially expands the scope of discovery and imposes undue burden that is not proportional to the needs of the case. Such an expansive request is inconsistent with the prior agreement.

OpenText objects to producing documents and information associated with the Virtual User Generator and OpenText Functional Testing Lab for Mobile and Web software because the request is unduly burdensome, not proportional to the needs of the case, and would impose unnecessary expense and burden on OpenText. These programs are separate and distinct software products and are not automatically tied to the OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, or OpenText Core Performance Engineering software referenced in subsections (a), (b), and (c) of the definition of "MF Product." Requiring OpenText to collect documents and information relating to software that is independent of the products identified in the definition of "MF Product" would therefore be unduly burdensome and not proportional to the needs of the case. OpenText objects to this Request to the extent it seeks

14

information protected by the attorney-client privilege, work product doctrine, and/or any other applicable protection from discovery.

OpenText objects to this Request on the ground that the information sought is in the possession of, known to, or otherwise equally available to Wapp based on publicly available information. Documents relating to the operation of OpenText's products and services are publicly available on OpenText's  official website (e.g., https://admhelp.microfocus.com/lre/download-early-versions.htm).

OpenText also objects to the extent the Request is overbroad and unduly burdensome. The Request seeks documents "including but not limited to" manuals, specifications, datasheets, user guides, and release notes, without any temporal, custodial, or subject-matter limitation. As framed, it would require the collection of potentially voluminous and duplicative materials, including documents that are publicly available.

OpenText further objects to this Request to the extent it seeks information that is not maintained by OpenText in the ordinary course of business, or that would require OpenText to conduct an unreasonable investigation or create documents not currently in existence.

OpenText further objects to the extent the Request seeks "authentic" documents. The term "authentic" is undefined in the Subpoena and subject to multiple interpretations. To the extent the term calls for a determination of authenticity under the rules of evidence, that is a legal issue reserved for the Court, not a matter for document production by a non-party or for certification by a fact witness.

Subject to and without waiving the foregoing objections, OpenText responds as follows:

OpenText will produce, in accordance with Rules 34 and 45 of the Federal Rules of Civil Procedure, non-privileged documents in its possession, custody, or control sufficient to show

15

responsive manuals, specifications, and related documentation for multiple LoadRunner versions. OpenText will not produce documents associated with OpenText Functional Testing Lab for Mobile and Web, and Virtual User Generator software.

The software historically known as "LoadRunner" is a legacy product name that has been carried forward through successive rebranding. As reflected on the Micro Focus product lifecycle page (https://www.microfocus.com/lifecycle/), "LoadRunner" now refers to three distinct OpenText products: OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, and OpenText Core Performance Engineering. Similarly, the product formerly known as "LoadRunner Cloud" corresponds to OpenText Core Performance Engineering. The LoadRunner versions produced in response to this subpoena therefore correspond to the products identified in subsections (a), (b), and (c) of the definition of "MF Products": OpenText Professional Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; OpenText Enterprise Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; and OpenText Core Performance Engineering, versions 2021 R2 (or a contemporaneously released version of version 2021 R2 of products (a) and (b) above) and 26.1, with Network Virtualization.

Without obligating itself to do so, OpenText reserves the right to amend or supplement these responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, interpretations, contentions, and/or legal theories which may apply.

**DOCUMENT REQUEST NO. 2:**

Authentic documents detailing the dates each identified version of the MF Products were made, offered for sale/license and/or sold/licensed, and ceased to be offered for sale/license and/or sold/licensed.

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

The foregoing general objections are hereby incorporated by reference. OpenText objects to this Request as vague and ambiguous because the description of the "MF Products" is unclear and internally inconsistent. The Request references "the aforementioned products (a), (b), and (c) and version numbers," and then separately lists OpenText Functional Testing Lab for Mobile and Web, versions 2021 R2 and 26.1, and Virtual User Generator, versions 2021 R2 and 26.1, without clarifying whether those products are independent, standalone software offerings or whether they are components, modules, or functionalities of products (a), (b), and (c). This lack of clarity prevents OpenText from determining the scope of documents sought and renders the Request impermissibly vague. The Request is further vague and ambiguous as to the meaning of "made," "offered for sale/license," "sold/licensed," and "ceased to be offered," which are undefined and subject to multiple interpretations. This lack of clarity prevents OpenText from determining the scope of documents sought and renders the Request impermissibly vague.

OpenText objects to producing documents and information associated with the Virtual User Generator and OpenText Functional Testing Lab for Mobile and Web software because the request is unduly burdensome, not proportional to the needs of the case, and would impose unnecessary expense and burden on a non-party. These programs are separate and distinct software products and are not automatically tied to the OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, or OpenText Core Performance Engineering

17

software referenced in subsections (a), (b), and (c) of the definition of "MF Product." Requiring OpenText to collect documents and information relating to software that is independent of the products identified in the definition of "MF Product" would therefore be unduly burdensome and not proportional to the needs of the case. OpenText objects to this request on the grounds that it is compound, conjunctive, and/or disjunctive.

OpenText objects to this Request on the ground that the information sought is in the possession of, known to, or otherwise equally available to Wapp Tech based on publicly available information.  Documents relating to the operation of OpenText's products and services are publicly available at OpenText's documentation websites (e.g., https://admhelp.microfocus.com/lre/download-early-versions.htm).

OpenText further objects to this Request to the extent it seeks information that is not maintained by OpenText in the ordinary course of business, or that would require OpenText to conduct an unreasonable investigation or create documents not currently in existence.

OpenText further objects to this Request to the extent it seeks information that is not maintained by OpenText in the ordinary course of business, or that would require OpenText to conduct an unreasonable investigation or create documents not currently in existence.

OpenText objects to this Request to the extent it seeks production of documents as "authentic," as it improperly calls for a legal conclusion regarding authenticity under the rules of evidence. Determinations of authenticity and admissibility are legal issues reserved for the Court, not matters for document production by a non-party or for fact witnesses to certify. OpenText does not concede authenticity by producing documents.

Subject to and without waiving the foregoing objections, OpenText responds as follows:

OpenText will produce, in accordance with Rules 34 and 45 of the Federal Rules of Civil Procedure, non-privileged, documents in its possession, custody, or control sufficient to show responsive materials reasonably available in the ordinary course of business, including release notes, manuals, and user guides that identify the month and year when different  LoadRunner software versions were released. OpenText will not produce documents associated with OpenText Functional Testing Lab for Mobile and Web, and Virtual User Generator software.

The software historically known as "LoadRunner" is a legacy product name that has been carried forward through successive rebranding. As reflected on the Micro Focus product lifecycle page (https://www.microfocus.com/lifecycle/), "LoadRunner" now refers to three distinct OpenText products: OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, and OpenText Core Performance Engineering. Similarly, the product formerly known as "LoadRunner Cloud" corresponds to OpenText Core Performance Engineering. The LoadRunner versions produced in response to this subpoena therefore correspond to the products identified in subsections (a), (b), and (c) of the definition of "MF Products": OpenText Professional Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; OpenText Enterprise Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; and OpenText Core Performance Engineering, versions 2021 R2 (or a contemporaneously released version of version 2021 R2 of products (a) and (b) above) and 26.1, with Network Virtualization.

Without obligating itself to do so, OpenText reserves the right to amend or supplement these responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, interpretations, contentions, and/or legal theories which may apply.

**DOCUMENT REQUEST NO. 3:**

Authentic copies of each software version of the MF Products, in a form that will allow Wapp to test and operate the software.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

The foregoing general objections are hereby incorporated by reference. OpenText objects to the extent the Request seeks the production of executable software. Trial versions of the current MF Products are available online (see, e.g., https://www.opentext.com/products/professional-performance-engineering), and any demand for production of executable software is therefore not proportional to the needs of the case. Where the requesting party can obtain the same or functionally equivalent materials through publicly available channels, imposing the burden and expense of formal production on a non-party is not warranted.

Furthermore, OpenText objects to this Request as vague, ambiguous, and indefinite because the description of the "MF Products" is unclear and internally inconsistent. The Request references "the aforementioned products (a), (b), and (c) and version numbers," and then separately lists OpenText Functional Testing Lab for Mobile and Web, versions 2021 R2 and 26.1, and Virtual User Generator, versions 2021 R2 and 26.1, in relation to versions of the software in sections (a), (b), and (c). This is vague and ambiguous because the Virtual User Generator and Functional Testing Lab for Mobile and Web are standalone products and not configurations of the software mentioned in subsection (a), (b), and (c). This lack of clarity prevents OpenText from determining the scope of documents sought and renders the Request impermissibly vague.

OpenText objects to this Request to the extent it seeks production of 18 purported variants of the same software by demanding not only multiple products, but also multiple versions of those

20

products and multiple configurations of each version. This Request is not proportional to the needs of the case and imposes an undue burden and expense by demanding production of software configurations OpenText does not ordinarily create, distribute, or preserve. Compliance would require OpenText to create, reconstruct, or configure an unreasonably large volume of software materials in forms that OpenText does not maintain and that are not within its possession, custody, or control. The sheer quantity of software demanded (spanning multiple versions and configurations) renders the Request not proportional to the needs of the case and imposes an undue and unnecessary burden and expense. Additionally, any marginal evidentiary value of such an expansive production is substantially outweighed by the burden and operational risk associated with recreating and producing unsupported or legacy software configurations. OpenText further objects to this Request because it seeks discovery that goes beyond the scope of the agreement reached with Carlos Ruiz on March 19, 2026, in which the parties expressly agreed to make the discovery process as efficient as possible and to avoid unnecessary motion practice. Notwithstanding those representations, this Request seeks a large-scale production of software, versions, and configurations that materially expands the scope of discovery and imposes a undue burden and not proportional to the needs of the case. Such an expansive request is inconsistent with the prior agreement.

OpenText objects to this Request to the extent it seeks the production of end-of-life software that is no longer supported or maintained. Compliance with this Request would impose an undue burden and create material and unreasonable security risks, including the risk of exploitation of known and unpatched vulnerabilities. Distribution of such versions could expose systems to security breaches and undermine established cybersecurity controls. Such production is not proportional to the needs of the case, outweighs any potential evidentiary value, and exposes

OpenText to unnecessary operational, contractual, and regulatory risks.  In addition, legacy versions contain proprietary and trade-secret information that is protected under applicable confidentiality, licensing, and intellectual-property frameworks. Disclosure of such materials would create an unreasonable risk of misuse or reverse engineering and is not appropriate.

OpenText objects to this Request to the extent it calls for production of source code of any version of the requested software on the grounds that source code is among OpenText's most sensitive trade secrets and confidential security-related information. Disclosure would create unacceptable security risks and competitive harm, and is not proportional or appropriate, especially in the context of non-party discovery.

OpenText objects to the extent the Request seeks production of software, programs, or source code. Disclosure of such materials would pose significant security risks, including disclosure of system architecture, software vulnerabilities, and confidential technical information.

The request is overly broad, unduly burdensome, and not proportional to the needs of the case. Identifying, collecting, validating, and packaging historical versions (many of which are no longer maintained, documented, or distributable) would be voluminous and require substantial time and resources, outweighing any potential relevance or need.

Furthermore, OpenText objects to this Request as vague and ambiguous to the extent it seeks production of software "in a form that will allow Wapp to test and operate the software." The Request fails to specify what form, configuration, environment, functionality, tools, licenses, permissions, or technical requirements are necessary to satisfy this phrase. Without clarity as to what "test and operate" entails, OpenText cannot determine what is being Requested or what would constitute compliance. This ambiguity renders the Request impermissibly vague and prevents OpenText from identifying the scope of production. This lack of specificity prevents

OpenText from determining what would constitute compliance and would require OpenText to speculate as to Wapp Tech's technical needs or to undertake extensive technical efforts to configure, package, validate, and potentially support executable software in a manner not maintained in the ordinary course of business. Such efforts would impose a undue burden that is burden on OpenText that is not proportional to the needs of the case, particularly given its status as a non-party, and exceed the scope of reasonable discovery under Rules 34 and 45 of the Federal Rules of Civil Procedure.

OpenText objects to this Request to the extent it seeks production of documents as "authentic," as it improperly calls for a legal conclusion regarding authenticity under the rules of evidence. Determinations of authenticity and admissibility are legal issues reserved for the Court, not matters for document production by a non-party or for fact witnesses to certify. OpenText does not concede authenticity by producing documents.

Subject to and without waiving the foregoing objections, OpenText responds as follows:

OpenText will make available for inspection, in accordance with Rules 34 and 45 of the Federal Rules of Civil Procedure, only responsive current, supported versions of the requested software, more specifically, OpenText will make available for inspection current versions of the OpenText Professional Performance Engineering program, OpenText Core Performance Engineering, and OpenText Enterprise Performance Engineering software. OpenText will provide licenses to enable access to the current versions of the aforementioned software once Wapp provides the name and contact information of the individual who requires access so that credentials may be issued. OpenText will not make available the OpenText Functional Testing Lab for Mobile and Web, and Virtual User Generator software.

The software historically known as "LoadRunner" is a legacy product name that has been carried forward through successive rebranding. As reflected on the Micro Focus product lifecycle page (https://www.microfocus.com/lifecycle/), "LoadRunner" now refers to three distinct OpenText products: OpenText Professional Performance Engineering, OpenText Enterprise Performance Engineering, and OpenText Core Performance Engineering. Similarly, the product formerly known as "LoadRunner Cloud" corresponds to OpenText Core Performance Engineering. The LoadRunner versions produced in response to this subpoena therefore correspond to the products identified in subsections (a), (b), and (c) of the definition of "MF Products": OpenText Professional Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; OpenText Enterprise Performance Engineering, versions 2021 R2 and 26.1, with Network Virtualization; and OpenText Core Performance Engineering, versions 2021 R2 (or a contemporaneously released version of version 2021 R2 of products (a) and (b) above) and 26.1, with Network Virtualization.

Without obligating itself to do so, OpenText reserves the right to amend or supplement these responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, interpretations, contentions, and/or legal theories which may apply.

Dated: April 21, 2026

Respectfully submitted,

*/s/ Timothy J. Carroll*
Timothy J. Carroll (Ill. Bar No. 6269515)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
353 N. Clark St., Suite 3600
Chicago, IL 60654
Telephone: 312.924.9800
Facsimile: 312.924.9899
tim.carroll@orrick.com

**ATTORNEY FOR NONPARTY**
**OPENTEXT CORP.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2026, the foregoing document was served on the following by email:

Leslie Payne                                         lpayne@hpcllp.com
Allan Bullwinkel                                   abullwinkel@hpcllp.com
Alden Harris                                         aharris@hpcllp.com
Blaine Larson                                       blarson@hpcllp.com
Christopher Limbacher                          climbacher@hpcllp.com
Carlos Ruiz                                           cruiz@hpcllp.com
Heim Payne & Chorush LLP
609 Main, Suite 3200
Houston, TX 77002

J. Michael Young                                  myoung@wynnesmithlaw.com
Wynne, Smith & Young, PLLC
707 W. Washington
Sherman, TX 75092

Indranil Mukerji                                    imukerji@cov.com
Brianne Bharkhda                                 bbharkhda@cov.com
Jia Hui Jiang                                         jhjiang@cov.com
John Veiszlemlein                                 jveiszlemlein@cov.com
Matthew Kudzin                                    mkudzin@cov.com
Ranganath Sudarshan                           rsudarshan@cov.com
Covington & Burling LLP
850 10th Street NW
Washington, DC 20001

Melissa Smith                                       melissa@gillamsmithlaw.com
Gillam & Smith, LLP
303 S. Washington Ave.
Marshall, TX 75670

Andrew Gorham                                    tom@gillamsmithlaw.com
Travis Underwood                                 travis@gillamsmithlaw.com
McKellar Karr                                       mckellar@gillamsmithlaw.com
Gillam & Smith, LLP
7232 Crosswater Ave.
Tyler, TX 75703

Bethany Stevens                                    bstevens@wscylaw.com
Hannah Cannom                                    hcannom@wscylaw.com
Walker Stevens Cannom Yang LLP
500 Molino, Suite 118
Los Angeles, CA 90013

| | |
|---|---|
| Michael Bowlus | mbowlus@cov.com |
| Covington & Burling LLP | |
| 415 Mission Street | |
| San Francisco, CA 94105 | |
| | |
| Matthew Moore | matthew.moore@lw.com |
| Adam Greenfield | adam.greenfield@lw.com |
| Gabriel Bell | gabriel.bell@lw.com |
| Jorge Morales | jorge.morales@lw.com |
| Tiffany Weston | tiffany.weston@lw.com |
| Latham & Watkins LLP | |
| 555 Eleventh Street, NW, Suite 1000 | |
| Washington, DC 20004 | |
| | |
| Brian Kim | brian.kim@lw.com |
| Latham & Watkins LLP | |
| 505 Montgomery, Suite 2000 | |
| San Francisco, CA 94111 | |
| | |
| John Svendsen | john.svendsen@lw.com |
| William Vieth | william.vieth@lw.com |
| Latham & Watkins LLP | |
| 1271 Avenue of the Americas | |
| New York, NY 10020 | |
| | |
| Raghav Bajaj | raghav.bajaj@lw.com |
| Latham & Watkins | |
| 300 Colorado, Suite 2400 | |
| Austin, TX 78701 | |
| | |
| Christa Brown-Sanford | christa.sanford@bakerbotts.com |
| Alexis Robison | alexis.robison@bakerbotts.com |
| Douglas Kubehl | doug.kubehl@bakerbotts.com |
| Emily Deer | emily.deer@bakerbotts.com |
| Morgan Mayne | morgan.mayne@bakerbotts.com |
| Baker Botts LLP | |
| 2001 Ross Ave., Suite 900 | |
| Dallas, TX 75201 | |

*/s/ Timothy J. Carroll*
Timothy J. Carroll

26