## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | § § § | |
| *Plaintiffs,* | § § | Case No. 4:25-cv-00230 |
| v. | § § § | |
| APPLE INC., CAPITAL ONE, N.A., CAPITAL ONE SERVICES, LLC, FROST BANK, and CULLENT/FROST BANKERS, INC., | § § § § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § § | |

## PLAINTIFFS' MOTION TO COMPEL A RESPONSE TO
## INTERROGATORY NO. 15 AND PRODUCTION OF RELATED DOCUMENTS

**TABLE OF CONTENTS**

I.   Factual and Procedural Background ................................................................... 2

II.  Arguments .......................................................................................................... 3

   A.   App Store Financials are Relevant and Admissible Under *Georgia-Pacific* .............. 3

   B.   Wapp's Expert will Properly Analyze the App Store Financials ................................ 5

   C.   The Information Sought is Proportional to the Needs of the Case ............................. 6

   D.   Apple is Wrong That Wapp Needs to Show Each App Infringes Wapp's patents ...... 7

III. Conclusion ......................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) ....................................................................... passim

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984) ................................................................................. 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ................................................................................. 5

*Via Vadis, LLC v. Blizzard Entm't*,
  No. 1:14-CV-00810-LY, 2021 U.S. Dist. LEXIS 135631 (W.D. Tex. July 21, 2021) .............. 7

*WhitServe LLC v. Computer Packages, Inc.*,
  No. 3:06-cv-01935(AVC), 2008 U.S. Dist. LEXIS 139026 (D. Conn. Aug. 27, 2008)............. 8

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................... 6

Fed. R. Evid. 702 ............................................................................................ 3, 4, 5, 6

Wapp respectfully moves the Court to compel Apple to produce the revenues and profits that Apple receives from the Apple App Store on an annual basis since 2019. This is a simple and narrow request that is important for Wapp's damages model. Apple can provide this information by filling out the empty cells in the table below and producing the supporting documents:

| App Store | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|---|
| Revenues | | | | | | | | |
| Profits | | | | | | | | |

The parties previously raised this issue with the Court during a telephonic hearing on May 11. During the hearing, the Court stated: "I do think the information is relevant" and "the information, as a general matter, I agree should be produced in some form." Ex. A at 16:8-9, 16:13-15. At the hearing, the Court granted Wapp leave to file this motion to compel. *Id.* at 20:23-25.

Apple does not deny this information exists, nor does Apple dispute that Wapp has requested it.[1] Apple's only argument is that App Store revenues and profits are irrelevant and not proportional to the needs of the case. Ex. A at 13:17-21, 15:12-17. Apple is wrong. While the App Store itself is not an accused product, Apple's Xcode customers are required to use the accused product Xcode to develop apps and load them into the App Store. The accused product Xcode is the but-for cause of Apple's App Store revenues. Federal Circuit precedent holds that, when an accused product is used to "generate sales of [non-accused] products" then the revenues and profits from the non-accused products are relevant and admissible under (at least) *Georgia-Pacific* Factor 6: "the effect of selling the patented specialty in promoting sales of other products of the

---

[1] Wapp has served discovery requesting this information. For example, this information is directly responsive to Wapp's Interrogatory No. 15: "On an annual basis since 2019, identify and describe the revenues and profits (e.g., gross profit, contribution profit, and net profit) generated by Apple from the sale of Third Party Mobile Applications sold through the App Store, including commissions from app sales, in-app purchases, and app subscriptions." Ex. B at 10. Moreover, Apple has a duty under Federal Rule 26 and Local Rule CV-26 to produce relevant information without awaiting a discovery request. *See* Dkt. 56 at 4-5.

[infringer]." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003). To be clear, *Micro Chem* not only found this information relevant, it found it **admissible under Rule 702**, which is a much higher bar.

Wapp's request is not burdensome. Nevertheless, to address Apple's concerns about proportionality, Wapp has offered to use public information about App Store revenues and profits if Apple will agree that information is accurate and admissible. Apple has refused to agree. Wapp has done all it can to reduce the burden on Apple given the importance of this information under *Georgia-Pacific.* Apple's refusal to either answer the interrogatory or agree that Wapp can use public information leaves Wapp no option but to file this motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Wapp's Amended Complaint asserts Apple directly infringes by making, selling, and offering for sale Xcode software.[2] Dkt. 55, ¶214. Apple provides a limited trial version of Xcode to its customers for free, and offers a full version at the steeply discounted price of $99. *Id.* ¶13 (*citing*   https://developer.apple.com/support/compare-memberships/).   Apple   deliberately underprices Xcode, because Xcode generates money for Apple through the Apple App Store. Apple's App Store "enables users to easily find and download mobile applications developed by third parties [who use Xcode]." *Id.* ¶71. In order to develop mobile applications that meet the criteria set by Apple for publishing on the App Store, third-party developers must use the tools in Xcode. *Id.* Once posted on the App Store, Apple device users may purchase the app, subscribe to the app, and/or make in-app purchases. Apple keeps a share of these revenues through a "developer revenue sharing model…." *Id.* ¶236. Developers cannot post their app on Apple's App Store unless they submit the app through Xcode and agree to share app revenues with Apple. *Id.* ¶¶71, 98; *see*

---

[2] Wapp also accuses Apple of directly infringing by using Xcode in an infringing manner.

2

*also* Update for the latest OS Releases (https://developer.apple.com/app-store/submitting/) (last visited on June 18, 2026).

On March 3, 2026, Wapp served Interrogatory No. 15. Ex. B at 10, 12. On April 10, Apple objected to the Interrogatory and ultimately declined to respond. The parties exchanged correspondence and met and conferred, but remained at an impasse.

On May 14, 2026, the Court held a discovery hearing where Wapp moved to compel Apple to answer Interrogatory No. 15 by providing its App Store revenues and profits since 2019. The Court concluded that the Interrogatory seeks relevant information and that it should be produced. Ex. A at 16:8-9 ("I do think the information is relevant."); *id.* at 16:13-14 ("the information, as a general matter, I agree should be produced in some form…."). However, the Court expressed concern about the proportionality of Wapp's request. *Id.* at 16:14-15 ("but what [Wapp is] asking for seems to be maybe not as proportional to the needs."). The Court declined to order Apple to respond at the time but gave Wapp leave to file this motion to compel. *Id.* at 20:23-25.

After the hearing, Wapp tried to reach a compromise with Apple. Wapp suggested the parties resolve the dispute by stipulating that a public article containing information about Apple's App Store revenue is accurate and admissible. Ex. C at 1-2. Apple refused. *Id.* at 1. Given the Court's correct observation that this information is relevant, and given Apple's unwillingness to agree to Wapp's alternative proposal, Wapp moves to compel.

## II. ARGUMENTS

### A. App Store Financials are Relevant and Admissible Under *Georgia-Pacific*

This Court has already correctly found the App Store revenues and profits are relevant. Ex. A at 16:8-9, 16:13-14. The Federal Circuit has held this type of information is not only relevant to the *Georgia-Pacific* damages analysis, it is admissible under Rule 702 and *Daubert*. In *Micro Chem.,* Lextron's sales of its livestock medical records system infringed. *Micro Chem.*, 317 F.3d

3

at 1389. Lextron "underpriced" the infringing records system, providing it to feedlots "for free or at a substantial loss," in order to "generate sales of its [other non-accused] animal health products…." *Id.* The district court ruled that Micro Chem "could not recover a royalty on the [non-accused] animal health products themselves," but could rely on Lextron's revenues[3] from sales of the non-accused products to "show that sales of animal health products were relevant to a reasonable royalty determination because Micro Chemical alleged that the defendants used their infringing systems as loss leaders to promote animal health product sales." *Id.* at 1390. Micro Chem's expert opined, under the *Georgia-Pacific* factors, "the reasonable royalty on the defendants' infringing systems would increase because their placement in customers' feedlots would promote sales of the defendants' other products." *Id.* at 1393. The Federal Circuit agreed that this opinion was admissible under Rule 702 and relevant to "Georgia-Pacific factor[] [6] – 'the effect of selling the patented specialty in promoting sales of other products of the [infringer].'" *Id.* To the extent Lextron's expert disagreed with those opinions, the Federal Circuit held this was a question of fact for the jury. *Id.*

Wapp intends to use the App Store revenues and profits consistent with how the animal health product revenues were used in *Micro Chem.* Wapp does not intend to use the App Store revenues or profits to calculate a royalty base, but will instead analyze them under the relevant *Georgia-Pacific* factors. Like in *Micro Chem,* Wapp alleges that Apple uses Xcode as a "loss leader" to promote the sale of apps through the App Store. Xcode is offered for free, or for the low price of $99 dollars per year. However, developers **must** use Xcode to get their apps published on

---

[3] *Micro Chem* addresses revenues, but Federal Circuit cases also hold that profits from non-accused products are relevant to *G-P* factor 6. For example, *Micro Chem* cites *Trans-World* for the holding that "profits from sale of non-patented eyeglasses displayed on infringing racks were relevant." *Micro Chem.*, 317 F.3d at 1393 (citing *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568, 224 USPQ 259, 269-70 (Fed. Cir. 1984)).

the Apple App Store. Dkt. 55, ¶¶71, 98. When the app is sold on the App Store, or when transactions take place within the app, Apple takes a share of the revenue. Dkt. 55, ¶236. As in *Micro Chem.,* the revenue and profits from Apple's App Store are relevant to *Georgia-Pacific* and proper for Wapp's expert Mr. Weinstein to consider under Rule 702. Here, the App Store revenues and profits are even more closely linked to the accused product than in *Micro Chem*. In *Micro Chem*, the accused product merely "promoted" the non-accused product. Here, Xcode is **required** to upload an app to the App Store. To the extent Apple disagrees, that would be a question for the jury to decide. *Micro Chem*, 317 F.3d at 1393 ("Whether placing the infringing systems in feedlots actually promoted derivative sales of the defendants' other products is a question of fact for the jury").

### B.  Wapp's Expert will Properly Analyze the App Store Financials

Wapp's damages expert, Mr. Weinstein, summarizes in his attached declaration ("Weinstein Dec.") how he intends to use Apple's App Store revenues and profits in his opinions on a hypothetical negotiation between Wapp and Apple in the context of a *Georgia-Pacific* analysis.[4] Weinstein Dec. ¶5. Importantly, Mr. Weinstein **does not** intend to use the dollar amount of revenues or profits from Apple's App Store as a royalty **base**. *Id*. ¶7. Instead, Mr. Weinstein intends to analyze how the App Store revenues and profits would influence the hypothetical negotiation via the *Georgia-Pacific* factors. *Id*. ¶¶5, 7. This is the type of use the Federal Circuit held was proper and admissible under Rule 702 in *Micro Chem*.

For example, Mr. Weinstein intends to analyze this information under *G-P* factor 6, because the infringing sales of Xcode enable Apple to sell other products (third-party mobile apps through the App Store) and keep a share of that revenue. *Id*. ¶7. No third-party mobile app can be

---

[4] The Federal Circuit has "sanctioned the use of the Georgia-Pacific factors to frame the reasonable royalty inquiry." *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1317 (Fed. Cir. 2011).

posted on the App Store except through Xcode. Dkt. 55, ¶¶71, 98. Customers' use of Xcode also enhances Apple's app ecosystem, which increases the value proposition of mobile devices using the App Store apps. Weinstein Dec. ¶7. The information is also relevant to *Georgia-Pacific* factors 8, 9, and 10 because financial information related to the sale of apps in the App Store would tell a party in a hypothetical negotiation the profitability, commercial success, and popularity of Xcode, and how Apple benefits from the sale of Xcode. *Id*. Similarly, the information is relevant to *Georgia-Pacific* factor 11 because it can be used as a proxy for usage of Xcode and the value of that use. *Id*.

Of course, the Court need not decide at this time whether Mr. Weinstein's opinions are admissible under Rule 702 and *Daubert*. But the fact that Mr. Weinstein's anticipated opinions are consistent with Federal Circuit *Daubert* affirmances like *Micro Chem* further supports the relevance and discoverability of Apple's App Store revenues and profits.

### C.  The Information Sought is Proportional to the Needs of the Case

Under Rule 26, a request must be proportional to the needs of the case when considering "the importance of the issues at stake in the action…, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Apple's App Store financial data is proportional to the needs of the case. *First*, the information is important because it is relevant to multiple *Georgia-Pacific* factors that Mr. Weinstein intends to rely on. *See supra* Section II.B. *Second*, Wapp has done all it can to eliminate any burden. Wapp suggested the parties agree that an article containing information about Apple's App Store revenue is accurate and admissible, which would have resolved the dispute with zero burden on Apple. Ex. C at 1-2. Apple refused. *Id.* at 1. *Third*, Apple's annual App Store revenues

and profits are readily accessible to Apple. Apple does not dispute this, and has never claimed the information is unavailable or burdensome to obtain. All Apple needs to do is fill out the sixteen empty cells in the table on page 1 of this motion. This narrow request for relevant information is proportional to the needs of the case.

### D. Apple is Wrong That Wapp Needs to Show Each App Infringes Wapp's patents

During the hearing, Apple argued that Apple's app store revenues are irrelevant because "there are 2 million third-party apps on the App Store" and Wapp has "zero proof" that those apps "infringe [Wapp's] specific emulation/simulation patents." Ex. A at 12:22-24, 13:11-16. Contrary to Apple's position, Wapp does not need to allege or show that the third-party mobile apps infringe. As described above, Wapp only needs to show that sales of Xcode infringe, and that those infringing sales generate or promote App Store revenues and profits under, for example, *Georgia-Pacific* Factor 6.

Courts have consistently found revenues and profits from non-accused products are relevant under *Georgia-Pacific*, without any need to show that such non-accused products infringe. One such case is *Micro Chem.*, discussed extensively above. 317 F.3d at 1393 (considering revenues from non-accused animal health products relevant under *Georgia-Pacific* Factor 6).

Similarly, in *Via Vadis,* Plaintiffs sought "[f]inancial and sales information relating to each Blizzard Title…." *Via Vadis, LLC v. Blizzard Entm't*, No. 1:14-CV-00810-LY, 2021 U.S. Dist. LEXIS 135631, at *12-13 (W.D. Tex. July 21, 2021). Defendant Blizzard argued that such information would be irrelevant because "the allegedly infringing peer-to-peer functionality was never used when Blizzard's games were played; instead, it was used optionally only during distribution of the files." *Id.* at *13. In other words, "how Blizzard's video games are distributed does not affect, and is not functionally related to, the video games' operation and success." *Id.* The court disagreed, finding that "Plaintiffs have made a sufficient preliminary showing of relevance

7

under *Georgia-Pacific* Factor 6." *Id.* at \*14. Similarly, in *WhitServe,* the court found similar information relevant under *Georgia-Pacific* factor 10. *WhitServe LLC v. Computer Packages, Inc.,* No. 3:06-cv-01935(AVC), 2008 U.S. Dist. LEXIS 139026, at \*27-28 (D. Conn. Aug. 27, 2008) ("There is no dispute that CPI's customers used the products that allegedly infringe WhitServe's patents, and that CPI's customers received revenues from their clients in connection with that use. Such revenues reflect the 'benefits to those who have used the invention . . . [and] the value of that use,' and thus are relevant to determining what constitutes a reasonable royalty.").

### III. CONCLUSION

Wapp respectfully requests the Court order Apple to respond to Wapp's Interrogatory No. 15 by filling in the sixteen cells in the table on page 1 of this motion and produce documents supporting that information.

DATED: June 18, 2026                    Respectfully submitted,

By:  /s/ *Carlos I. Ruiz*
     Leslie V. Payne
     State Bar No. 0784736
     lpayne@hpcllp.com
     R. Allan Bullwinkel
     State Bar No. 24064327
     abullwinkel@hpcllp.com
     Alden G. Harris
     State Bar No. 24083138
     aharris@hpcllp.com
     Christopher L. Limbacher
     State Bar No. 24102097
     climbacher@hpcllp.com
     Carlos I. Ruiz
     State Bar No. 24110614
     cruiz@hpcllp.com
     Blaine A. Larson
     State Bar No. 24083360
     blarson@hpcllp.com
     HEIM PAYNE & CHORUSH, LLP
     609 Main Street, Suite 3200
     Houston, Texas 77002
     Telephone: (713) 221-2000
     Facsimile: (713) 221-2021

     J. Michael Young
     WYNNE, SMITH & YOUNG, PLLC
     State Bar No. 00786465
     707 W. Washington
     Sherman, Texas 75092
     (909) 893-8177
     (903) 892-0916 (fax)
     E-mail: myoung@wynnesmithlaw.com

     **ATTORNEYS FOR PLAINTIFFS
     WAPP TECH LIMITED PARTNERSHIP and
     WAPP TECH CORP.**

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via email on June 18, 2026.

*/s/ Carlos I. Ruiz*
Carlos I. Ruiz

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that Wapp and Apple conducted a lead and local meet and confer on June 11, 2026. Les Payne, Allan Bullwinkel, Blaine Larson, and Michael Young participated on behalf of Wapp. Indy Mukerji, Michael Bowlus, and Travis Underwood participated on behalf of Apple. As described in the Motion above, the parties are at an impasse, leaving the issue ripe for judicial review.

*/s/ Carlos I. Ruiz*
Carlos I. Ruiz
