# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | § § § § | |
| *Plaintiffs*, | § | Civil Action No. 4:25-cv-230 |
| v. | § | Judge Mazzant |
| | § | |
| APPLE INC., | § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Apple Inc.'s Renewed Motion to Dismiss (the "Motion") (Dkt. #62). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

### I.    Factual Background and Procedural History

This is a patent infringement case. On March 6, 2025, Plaintiffs WAPP Tech Limited Partnership and WAPP Tech Corp. (collectively, "Plaintiffs" or "WAPP") filed this action asserting that Defendant Apple Inc. ("Defendant" or "Apple"), among others, has and continues to infringe at least five patents: (1) U.S. Patent No. 8,924,192; (2) U.S. Patent No. 9,298,864; (3) U.S. Patent No. 9,971,678; (4) U.S. Patent No. 10,353,811; and (5) U.S. Patent No. 10,691,579 (collectively, the "Patents-in-Suit") (Dkt. #1 at ¶ 68).[1]

---

[1]    In their first amended complaint, Plaintiffs also assert that Defendants Capital One, N.A., Capital One Services, LLC, Frost Bank, and Cullen/Frost Bankers, Inc. has and continues to infringe the Patents-in-Suit (collectively, "Bank Defendants") (*See* Dkt. #55). Since the filing of the instant Motion, each of the Bank Defendants have settled their claims with Plaintiffs and have been dismissed from this case (*See* Dkt. #197; Dkt. #198).

On July 25, 2025, Defendant filed its first motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) (Dkt. #39).[2] On September 5, 2025, Plaintiffs moved for leave to conduct venue discovery related to Defendant's forthcoming motion to dismiss for improper venue (Dkt. #58), which the Court granted on September 18, 2025 (Dkt. #66). Since then, the parties have engaged in extensive and drawn-out venue discovery over the course of approximately six months. During the venue discovery period, the Court conducted numerous discovery dispute hearings, and the deadline for completing discovery was extended several times at the parties' request (*See* Dkt. #80; Dkt. #101; Dkt. #127). As such, Plaintiffs have had an ample opportunity to obtain all the necessary information that they believed to be pertinent to responding to Defendant's motion to dismiss for improper venue.

## II.     Plaintiffs Alleged Basis for Venue in this Court

Apple is a California corporation with its principal place of business in Austin, Texas (Dkt. #55 at ¶ 3). Apple designs, manufactures, and sells a wide range of consumer products through its website and Apple Stores, and to third-party retailers and distributors (Dkt. #62 at p. 8). Apple has not had any physical Apple Store locations in the district since 2019, a fact which Plaintiffs concede (*See* Dkt. #62 at p. 6; Dkt. #139 at p. 18). As such, Plaintiffs neither allege nor argue that venue is proper in the Eastern District of Texas based on the presence of Apple Stores in this district. Instead, Plaintiffs rely entirely on "Apple Shops at Best Buy stores" and "Apple at Target shop-in-shops within this district" within this district as their basis to establish that venue is proper here (Dkt. #55 at ¶¶ 17, 24).

---

[2]   Defendant's first motion to dismiss for improper venue was rendered moot by the filing of Plaintiffs' First Amended Complaint (Dkt. #57 at pp. 4–5).

### III.    The Instant Motion

On September 5, 2025, Defendant moved to dismiss Plaintiffs' action pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(b) or, in the alternative, to transfer this case to the Southern District of California (Dkt. #62 at pp. 5–6). Defendant argues that Plaintiffs have failed to establish that venue is proper in this district under 28 U.S.C. § 1400(b) because it neither "resides" nor has a "regular and established place of business" in this district (Dkt. #62 at p. 5). Defendant contends that Plaintiffs know this, and do not allege that Apple is based here or has any Apple Stores in the district (Dkt. #62 at p. 5). Instead, according to Defendant, Plaintiffs improperly base the entirety of their venue allegations on the presence of Apple products in, and sporadic visits by Apple employees to, third-party Best Buy and Target stores (Dkt. #62 at p. 5). On March 27, 2026, Plaintiffs filed their Response to Defendant's Motion, opposing each of Defendant's purported bases for dismissal (Dkt. #139). On April 24, 2026, Defendant filed its Reply in Support of its Motion (Dkt. #164). On May 15, 2026, Plaintiffs filed its Sur-Reply in Opposition to Defendant's Motion (Dkt. #177).

The Motion is now ripe for adjudication.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1

3

(E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

Whether venue is proper in this case is governed by 28 U.S.C. § 1400(b), the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265 (2017). Under Section 1400(b), a patent infringement case may only be brought in the judicial district where (1) the defendant resides, or (2) where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Under the first prong of Section 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland LLC*, 581 U.S. at 266. As to the second prong, the Federal Circuit has interpreted the "regular and established place of business" inquiry to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). If any statutory requirement is not satisfied, venue is improper under Section 1400(b). *Id.*

## ANALYSIS

As mentioned above, under 28 U.S.C. § 1400(b), a claim for patent infringement must be brought either "(1) in the judicial district where the defendant resides," or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, it is undisputed that Defendant does not "reside" in this district and

4

therefore the first prong of Section 1400(b) does not apply (*See* Dkt. #55 at ¶ 3 (alleging that California is the state of incorporation for Defendant)). Venue, therefore, is only proper in this district if the second prong of Section 1400(b) is satisfied. As to the second prong, Defendant does not dispute that Plaintiffs have adequately alleged that it has committed acts of infringement within this district (Dkt. #62 at p. 14). Nor does Defendant dispute that the Apple Shop locations are "physical places" within this district (Dkt. #62 at p. 14).[3] The parties' dispute, however, focuses on the latter two *Cray* elements: (1) whether the Apple Shop locations are regular and established places of business for Defendant; and (2) whether Defendant has established or ratified the Apple Shop locations as Defendant's places of business. The Court's analysis will proceed in three parts. First, the Court resolves a preliminary issue raised by the parties in their briefing relating to the timing of the venue determination under Section 1400(b). Second, after resolving this threshold issue, the Court turns to the merits of Defendant's Motion. Third, if necessary, the Court will decide whether it should dismiss this action or transfer it to an appropriate court.

## I.    Timing of Venue Determination

Before turning to the merits, the Court must resolve the parties' dispute as to the timing of the venue determination under Section 1400(b). Defendant argues that venue is assessed based on the facts existing at the time that the complaint is filed (Dkt. #164 at p. 9). Plaintiffs disagree, arguing that events that occur prior to the filing of the complaint are relevant to the venue analysis

---

[3]  Indeed, Defendant explicitly states in its Motion that it is only challenging whether Plaintiff has established the second and third *Cray* factors—i.e., whether Defendant has a "regular and established place of business" in the district and whether that "regular and established place of business" is the "place of the defendant" (*See* Dkt. #62 at p. 14). Thus, the Court need not address whether or not Defendant has "a physical place in the district." *See Gen. Design Sign Co. v. Am. Gen. Design, Inc.*, No. CIV. 3:02-CV-2298-H, 2003 WL 251931, at *1 (N.D. Tex. Jan. 31, 2003) ("Any possible ground for dismissal not raised in the first motion is waived."); *see also Honestech, Inc. v. Sonic Sols.*, 430 F. App'x 359, 361 n.3 (5th Cir. 2011) ("Only the issues presented and *argued* in the brief are addressed." (citation modified)).

(Dkt. #177 at p. 11). The Court agrees with Defendant. It is well established that venue under Section 1400(b) should be analyzed based on the facts and circumstances that exist at the time an action is filed. *See, e.g.*, *Parallel Network Licensing LLC v. Arrow Elecs., Inc.*, No. 4:21-CV-00714, 2022 WL 1597364, at *3 (E.D. Tex. May 19, 2022); *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 941 n.7 (E.D. Tex. 2018); *Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017). As such, events that occurred prior or subsequent to the filing of suit are irrelevant to the venue analysis under Section 1400(b). *See Pers. Audio, LLC*, 280 F. Supp. 3d at 931 ("This Court concludes that venue is determined under § 1400(b) by the facts and situation as of the date the suit is filed. This is the plain reading of § 1400(b), the pertinent provision of which are written in *present* tense." (emphasis added)); *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *8 (E.D. Tex. July 15, 2019) ("Based on this rule [regarding timing of venue determination § 1400(b)], venue is not affected by events that occur subsequent to filing . . . . Accordingly, the Court does not consider any post-filing facts in its venue analysis and its analysis remains unchanged."). There is, however, an exception to this rule. This exception, though, is extremely narrow and only applies in limited circumstances. *See Pers. Audio, LLC*, 280 F. Supp. 3d at 931 ("Events occurring prior to the filing of suit are irrelevant *except to the extent* they could logically help prove a continuous presence up to [the date of filing]." (emphasis added)). That said, the exception does not relieve a plaintiff of its obligation to present specific facts establishing that venue was proper in this district at the time the case was filed. *See GreatGigz Sols., LLC v. ZipRecruiter, Inc.*, No. W-21-CV-00172-ADA, 2022 WL 432558, at *3 (W.D. Tex. Feb. 11, 2022) ("A prior regular and established place of business does not create a current regular and established place of business."). Thus, the Court finds that the date the suit was filed is the relevant date for

the venue analysis—here, March 6, 2025. Events occurring prior to the filing of suit are irrelevant except to the extent that they could logically help prove a continuous presence up to March 6, 2025.

With this preliminary issue resolved, the Court now turns to the heart of the controversy before it: whether Defendant has "a regular and established place of business" in this district.

## II.    Whether Venue is Proper in the Eastern District of Texas

As mentioned above, to show that Defendant has a "regular and established place of business" in this district "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d at 1360. The crux of the parties' dispute here focuses on the latter two *Cray* elements: (1) whether the Apple Shop locations are regular and established places of business for Defendant; and (2) whether Defendant has established or ratified the Apple Shop locations as Defendant's places of business. The Court addresses each element in turn.

### A.    Whether the Apple Shop Locations are Regular and Established Places of Business

Under the second *Cray* factor, a "regular and established place of business" requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged place of business." *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). A "place" requires "a building or part of a building set apart for any purpose" or "quarters of any kind" from which business is conducted. *In re Cray Inc.*, 871 F.3d at 1362 (citation modified). A business may be "regular" if it operates in a "steady, uniform, orderly, and methodical manner." *Id.* (citation modified). In other words, "sporadic activity cannot create venue." *Id.* An "established" place of business is settled or fixed permanently, and not transient. *Id.* at 1363.

7

Plaintiffs advance two separate theories in support of their argument that the second *Cray* factor is met. The first theory is that Apple employees, known as "Community Specialists," frequent Apple Shop locations in Best Buy stores within the district to conduct Apple's business (Dkt. #139 at p. 34). The second theory is that Defendant exerts sufficient interim control over the Best Buy employees and certain third-party merchandising contractors hired by Apple, known as "Brand Advocates," to establish an agency relationship (Dkt. #139 at pp. 35–39). The Court will first consider Plaintiffs' argument regarding Apple's employees and then, if necessary, turn to Plaintiffs' argument regarding the existence of an agency relationship.

### 1.    Regular, Physical Presence of Apple Employees

Defendant argues that its Community Specialists cannot establish venue because their presence at the Apple Shop locations within the district are "sporadic" (Dkt. #62 at p. 21). Plaintiffs disagree, arguing that Defendant mischaracterizes its employees' presence as "sporadic" (Dkt. #139 at p. 34). Plaintiffs contend that, contrary to Defendant's characterization of its employees' presence, Apple's Community Specialists are "regularly physically present" at the Apple Shops within the district where they conduct Apple's business (Dkt. #139 at p. 34). In support of this argument, Plaintiffs primarily rely on two pieces of evidence. First, Plaintiffs cite to several provisions of the Channel Retail Playbook[4] which requires, *inter alia*, that Community Specialists visit Apple Shop locations with a "high level of frequency" and pursuant to four-week "block schedules" that must be repeated "weekly" and from which Community Specialists cannot deviate without prior approval (Dkt. #139 at p. 34). Second, they present time records for several

---

[4]    The Channel Retail Playbook is a document specifically created by Apple to provide to each of its Community Specialists, which outlines their duties, expectations, and responsibilities as employees of Apple (*See* Dkt. #139-5 at p. 5).

Community Specialists showing that they visited Apple Shop locations within the district on "at least a weekly basis" and "sometimes multiple times per week," clocking in 1,434 visits totaling about 7,198 hours at thirteen Apple Shops within the district from March 6, 2024 to August 15, 2025 (Dkt. #139 at p. 34). This, Plaintiffs contend, suffices to show a "regular, physical presence" of Apple employees at physical places of business within the district (Dkt. #139 at pp. 34–35).

The Court finds that Plaintiffs have sufficiently alleged facts showing the "regular, physical presence" of Apple's employees at physical places of business in this district. As an initial matter, the Court notes that the fact that Apple's Community Specialists frequently visited the Apple Shops is not, standing alone, sufficient to establish that Defendant has a regular and established place of business in this district. Regularity denotes "steady, uniform, orderly, and methodical" as opposed to "sporadic" or "merely temporarily, or for some special work or particular transaction." *In re Cray Inc.*, 871 F.3d at 1362. In making this determination, courts in this district focus not on the number of visits, but on whether the defendant's employees' presence within the district is "predictable, subject to any pattern, or consistent with regard to the time of day or with regard to the date of the week or month." *Westport Fuel Sys. Can., Inc. v. Ford Motor Co.*, No. 2:21-CV-00453-RWS-RSP, 2022 WL 17734410, at *3 (E.D. Tex. Sept. 12, 2022) [hereinafter *Westport I*]; *see also Westport Fuel Sys. Can., Inc. v. Ford Motor Co.*, No. 2:21-CV-00453-RWS, 2022 WL 4280490, at *1 n.1 (E.D. Tex. Sept. 15, 2022) [hereinafter *Westport II*] (finding that the defendant's employees presence in the district was "sporadic" as opposed to "steady, unform, orderly, and methodical"

where the "time and frequency of [defendant]'s employees' . . . visits are *discretionary*." (emphasis added)).[5]

The evidence presented here not only shows that Apple's Community Specialists frequently visited the Apple Shop locations within the district—i.e., sixteen Apple employees made a total of 1,434 visits to thirteen different Apple Shops within the district between March 2024 and August 2025—but also that their presence within the district was "predictable" as opposed to "sporadic" or "discretionary." For example, Apple requires its Community Specialists to create a four week "visit schedule" setting forth the precise timing and frequency of their Apple Shop visits for the relevant time period (*See* Dkt. #139–5 at p. 19 ("At the beginning of each quarter, in partnership with your Manager, you will set up a four week visit schedule for your Community . . . . This four week schedule *should be repeated* until the next quarter and then adjusted as necessary with your Manager.")). The Community Specialists must strictly adhere to their assigned visiting schedules, and they cannot deviate from it without prior supervisory approval (*See* Dkt. #139-5 at p. 19 ("Community specialists *will* follow this schedule weekly . . . . One off changes to support business needs *must be* approved by your manager. Any long-term consistent changes to

---

[5]    The Court finds that both cases are inapposite to the instant case. In *Westport I* and *Westport II*, the district court's finding that the plaintiff failed to offer any evidence that demonstrates that the employee visits were steady, uniform, orderly, and methodical turned not on the number of visits, but their irregularity. *See Westport I*, 2022 WL 17734410, at *3 (finding that the plaintiff's evidence showing that defendant sent six of its employees to visit five third-party dealerships in the district, with one employee visiting at least 18 times between the fall of 2018 and May of 2022 and another visiting at least 13 times between September 2020 and April 2022, was insufficient because their presence was "sporadic" as opposed to "steady uniform, orderly, and methodical."); *Westport II*, 2022 WL 4280490, at *1 n.1 (finding that the plaintiff's evidence showing defendant sent five of its employees to forty-two third-party dealerships in the district 588 times over the course of a year was insufficient because their presence was "sporadic," due to the time and frequency of the visits being "discretionary," as opposed "steady, uniform, orderly, and methodical."). Here, in contrast to *Westport I* and *Westport II*, Plaintiffs provide ample evidence demonstrating that Apple's employees visits to the Apple Shops in the district were "steady, uniform, orderly, and methodical" as opposed to "sporadic."

door coverage, such as weekly hours spent per door, *must be* approved by your manager and the Sales Support team in advance of the schedule being changed." (emphasis added)).

Moreover, Apple requires its Community Specialists to visit Apple Shops with a "high level of frequency," but these visits must occur no less frequently than once a week, if not more frequently (*See* Dkt. #139-5 at pp. 19–20 (explaining that Community Specialists visit schedules are based on whether they are assigned to a "zero, one, or two anchor" community with visits to zero anchor communities expected to occur "once to twice per week"; visits to one anchor communities expected to occur on "Friday, Saturday, and Sunday each week for the entire eight hour shift each day"; and visits to two anchor communities expected to occur on "Friday, Saturday, and Sunday each week" and requires them to "visit one of the anchor locations for two-eight hours days" and visit the other location for "one eight-hour day.")). The frequency at which Apple requires these visits to occur is further corroborated by the deposition testimony of one of Apple's Community Specialists in this district (*See* Dkt. #139-13 at p. 15 ("Q. So at the beginning of each month you receive a schedule from your [Apple] manager. Is that how it works? A. Yes. Q. And as part of that schedule, you visit the Beaumont Best Buy and the Port Arthur Best Buy on *at least a weekly basis*. Is that fair to say? A. Yes. Q. And sometimes multiple times per week. Is that true? A. Sometimes." (emphasis added)). Based on the foregoing, Apple's employees' presence within the district cannot be characterized as "sporadic," but is rather "steady, uniform, orderly, and methodical." *In re Cray*, 871 F.3d at 1362.

Having found that Plaintiffs have sufficiently shown the regular, physical presence of Apple's employees at its "place of business" within this district, the Court now turns to the question of whether these employees were conducting Apple's business. *See In re Google LLC*, 949

11

F.3d at 1345 (holding that a "regular and established place of business requires the regular, physical presence of an employee . . . of the defendant *conducting the defendant's business* at the alleged place of business." (citation modified)). Plaintiffs argue that Community Specialists conduct Apple's business at Apple Shops in the district by "selling, marketing, and merchandising Apple Products, monitoring and maintaining the Lease Spaces, and training Best Buy employees" (Dkt. #139 at p. 35). Defendant disagrees, arguing that Plaintiffs incorrectly claim that Community Specialists engage in Apple's business at Apple Shops by, among other things, "selling" Apple products (Dkt. #164 at p. 11). The thrust of Defendant's argument is that when Community Specialists use the term "sell," they mean advocate for Apple products, which are the sort of "ancillary" functions that are inadequate to satisfy the second *Cray* requirement (Dkt. #164 at p. 11). The Court agrees with Plaintiffs. As an initial matter, the Court notes that Defendant has failed to address many of Plaintiffs' arguments including, *inter alia*, that Community Specialists conduct Apple's business within the district by "marketing and merchandising Apple Products" (*See* Dkt. #164 at p. 11 (disputing only Plaintiffs' argument that Community Specialists engage in Apple's business at Apple Shops by "selling" Apple products)).[6] This failure, standing alone, is dispositive of this issue. *See Xlink Res. Grp., LLC v. Expo Petroleum Oil & Gas USA, LLC*, No. 4:24-CV-35, 2025 WL 2412646, at *6 (E.D. Tex. Aug. 20, 2025) ("Failure to brief an argument constitutes a waiver of the

---

[6] In support of this argument, Plaintiffs cite the deposition testimony of Apple's Rule 30(b)(6) witness admitting that marketing and merchandising are Apple's business (*See* Dkt. #139-15 at p. 8 ("Q. Part of Apple's business is marketing Apple products? A. Yes. Q. And part of Apple's business is merchandising Apple products? A. Yes . . . . Q. Does Apple market Apple products at Apple Shops in [EDTX]? A. Yes. Q. Does Apple merchandise Apple products at Apple Shops in [EDTX]? A. Yes.")). Defendant has not offered any evidence to dispute this fact (*See* Dkt. #164 at p. 11). Thus, it is undisputed that Community Specialists engage in Apple's business at Apple Shops by "marketing and merchandising" Apple products, regardless of whether they "sell" products. This alone is dispositive of the issue. *See Clasen v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, No. 4:15-CV-625-DBB, 2015 WL 9489507, at *3 (E.D. Tex. Dec. 30, 2015) ("To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue." (citing *Braspetro Oil Servs., Co.*, 240 F. App'x at 615)).

argument."); *Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) (holding that a failure to respond to an argument results in abandonment, waiver, or concession of the argument (collecting cases)).

Even if the Court were to consider Defendant's argument, it would still fail because the Court must resolve all factual conflicts in Plaintiffs' favor at this stage. *See Troy Constr. LLC v. Zurich Am. Ins.*, No. 1:17-CV-337, 2017 WL 11296989, at *2 (E.D. Tex. Nov. 29, 2017) ("On a Rule 12(b)(3) motion, the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." (citing *Braspetro Oil Servs., Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007)). Here, Plaintiffs have presented ample evidence in support of their contention that Community Specialists engage in Apple's business at Apple Shops by "selling" Apple products. For example, the Channel Retail Playbook makes clear that its role as a Community Specialists requires it to engage in Apple's business at Apple Shops by selling Apple's products (*See* Dkt. #139-5 at pp. 5, 7 (explaining that Community Specialists are expected to "[d]rive Average Selling Price through . . . upselling"; that Community Specialist is a "full-time sales role"; and that "Community Specialists spend time in store [i.e., Apple Shops] focusing on driving sales.")). The Channel Retail Playbook also provides Apple's list of "5 Steps to a Great Store Visit," with "Direct Sell" being listed as the most important (Dkt. #139-5 at p. 21). In addition, Plaintiffs cite the deposition testimony of one of Apple's Community Specialists which demonstrate that they engage in Apple's business at Apple Shops by selling Apple Products (*See* Dkt. #139-12 at pp. 4–5 (agreeing that a lot of its role as a Community Specialist is "talking to customers," for example, "if a customer walks into an Apple Shop at Best Buy and says I'm interested in an iPhone, [I] would talk to them

and help them pick out the iPhone that they want.")).[7] Accordingly, given the ample evidence offered in support and that the Court must resolve all conflicts in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently shown that Community Specialists conduct Apple's business at the Apple Shops. *See AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *3 n.4 (E.D. Tex. May 12, 2022) (resolving all factual disputes in the plaintiff's favor, and finding that "[plaintiff] has shown enough to support its contention that [defendant] employees were regularly conducting business at the Flower Mound Facility."); *Fed. Trade Comm'n v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960, 987 (W.D. Tex. 2019) (finding that the defendant's evidence does not negate the plaintiff's sufficient jurisdictional allegations since "[defendant]'s submissions only serve to create a conflict of fact which must be resolved in [p]laintiffs' favor.").

### 2.    Regular, Physical Presence of Agents of Apple

Because this Court has already found that Apple's employees presence at Apple Shops within the district satisfies the second *Cray* factor, it need not reach the additional grounds raised by Plaintiffs—i.e., that the second *Cray* factor is satisfied by virtue of the regular, physical presence of Apple's agents at Apple Shops within the district (Dkt. #139 at pp. 35–39). *See In re Google LLC*,

---

[7] Apple's argument that its Community Specialists do not "sell" Apple products seems to be based on its mistake belief that a person does not "sell" a product unless they are the one who finalizes the transaction at checkout (*See* Dkt. #164-14 at p. 15; Dkt. #164-15 at p. 4 (explaining that Community Specialists do not "sell" Apple products at the Apple Shops because they "don't go get the product," "don't take money," "don't bring the product out," and "don't give [the product] to the customer." )). Not so. This argument fails because it depends upon an artificially narrow construction of the plain, unambiguous meaning of the term "sale." The term "sale" is defined as, among other things, "opportunity of selling or being sold" and "operations and activities involved in promoting and selling goods or services." *Home Depot, U.S.A., Inc. v. Fed. Ins. Co.*, 241 F. Supp. 2d 702, 707 (E.D. Tex. 2003) (citing Merrian-Webster's Collegiate Dictionary 1028–29 (10th ed. 1993)). The evidence proffered by Apple in support of this argument, in fact, supports the opposite conclusion because it clearly shows that Community Specialists engage in "operations and activities involved in promoting and selling" Apple products (*See* Dkt. #164-15 at p. 4 (stating that, *inter alia*, that as a Community Specialists they "talk to customers about the product," "try to find a solution for them," and "talk to [the customer] and help them pick out the iPhone that they want.")). Therefore, the Court finds that Apple's arguments to the contrary are without merit.

14

949 F.3d at 1345 (holding that a "regular and established place of business requires the regular, physical presence of an employee *or* other agent of the defendant conducting the defendant's business at the alleged place of business." (citation modified)); *Westport I*, 2022 WL 17734410, at *3 ("Because [plaintiff]'s evidence of agency is insufficient, the question is whether [defendant] had an employee with a regular, physical presence at its 'place of business' and whether that employee was conducting [defendant]'s business." (citation modified)).

* * *

Therefore, the Court finds that Apple has a regular and established place of business in this district satisfied by the regular, physical presence of its employees at the Apple Shops within this district. *See In re Google LLC*, 949 F.3d at 1345. Indeed, this decision is consistent with two other recent cases decided in this district. *See Advanced Coding Techs. LLC v. Apple Inc.*, Civil Action No. 2:24-cv-572 (E.D. Tex. Sept. 29, 2025), Dkt. #79 at p. 1 (finding that "the Apple Shop locations in Best Buy stores are physical places in the district that are regular and established places of business."); *Avant Location Techs. LLC v. Apple Inc.*, Civil Action No. 2:24-cv-757 (E.D. Tex. Sept. 29, 2025), Dkt. #93 at p. 1 (same). Accordingly, whether patent venue is proper in this district depends on whether the Apple Shops are "the places of the defendant."

## B.      Whether the Apple Shop Locations are Places of Defendant

Under the third *Cray* factor, the "regular and established place of business" must be the "place of the defendant." *In re Cray Inc.*, 871 F.3d at 1363. To be the place of the defendant, "the defendant must establish or ratify the place of business." *Id.* The Federal Circuit has articulated a number of factors to be considered in making this determination: (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (2) "whether the defendant conditioned employment on an employees continued residence in the

district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; (3) whether the defendant has made "representations that it has a place of business in the district"; and (4) "the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues." *Id.* at 1363–64. These enumerated considerations, however, are not exhaustive but are rather merely illustrative of the types of information relevant for determining whether a physical place is "of the defendant." *Entropic Commc'ns, LLC v. DIRECTV, LLC*, No. 2:22-CV-00075, 2022 WL 19076756, at *3 (E.D. Tex. Oct. 24, 2022).

Plaintiffs argue that the Apple Shop locations within the district are "the place of the defendant" because (1) Apple leases and controls the space; (2) Apple controls the location of its employees' residences; (3) Apple holds the Apple Shops out as its own place of business; and (4) the Apple Shops mimic the Apple Stores in other venues (Dkt. #139 at pp. 40–45). According to Plaintiffs, this suffices to show that Apple ratified the Apple Shop locations within the district as its own place of business. The Court addresses each argument in turn. As explained in more detail below, the Court finds that Plaintiffs have failed to prove that Apple has a regular and established place of business in this district because Apple (1) does not own or lease any place in this district; (2) does not exercise other attributes of possession or control over any place in this district; (3) has not represented that it has a place of business in this district; and (4) the nature and activity of its alleged place of business in the district is distinct from its other places of business in other venues.

### 1.    Apple Does Not Own or Lease the Apple Shop Locations

Plaintiffs argue that Apple leases the Apple Shops because (1) Apple's own documents refers to the Apple Shops as an "Apple Lease Space" and (2) Apple is, for all practical purposes, paying rent for the spaces it leases from Best Buy since Apple pays for all costs necessary to install

and maintain the Apple Shops (Dkt. #139 at pp. 20, 40). The Court disagrees. As Plaintiffs themselves acknowledge, the fact that Apple's own document refers to the Apple Shops as an "Apple Lease Space" is not conclusive as to its character. *See, e.g.*, *United States v. R.F. Ball Const. Co.*, 355 U.S. 587, 593 (1958) ("Substance, not form or labels, controls the nature and effect of legal instruments."); *Hubbard v. USA Merch. Sys., Inc.*, No. 1:07-CV-044, 2007 WL 9725194, at *7 (E.D. Tex. Aug. 21, 2007) ("How the parties to a transaction choose to characterize their relationship is not the controlling factor in determining the legal nature of their relationship."). While it is true that no particular words are necessary to create a lease, "it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and the other to occupy them." *Tex. A&M Univ. 12th Man Found. v. Hartford Lloyds Ins. Co.*, 596 F. Supp. 3d 788, 795 (S.D. Tex. 2022); *see also In re Pearson*, 570 B.R. 237, 245 (Bankr. N.D. Tex. 2017) ("[O]ne of the essential of a valid leasing of premises is that exclusive possession of the premises rightfully belonging to one party is transferred to another." (citation modified)).

Nothing in the record demonstrates that Best Buy intended to "dispossess itself" of the Apple Shops or transfer "exclusive possession of the premises" to Apple. Quite the contrary. Indeed, the agreements between Best Buy and Apple, titled as "Vendor Agreement" and "Apple InStore Program Addendum to the Vendor Agreement," contain almost none of the hallmarks of a lease. Although no requirement exists for the use of particular words, the agreement usually contains terms such as "lease," "lessee," "lessor," "demise," "grant" and the like. *See Matter of Tillery*, 571 F.2d 1361, 1365 (5th Cir. 1978) (noting that the agreement at issue "appears to be a 'pure' lease" because the agreement "is denominated a 'lease' and the parties as 'Lessor' and 'Lessee.'"); *Sherrod v. Powell*, No. 10-10-00173-CV, 2012 WL 503651, at *3 (Tex. App.—Waco Feb.

17

15, 2012, no pet.) (finding that "the terminology used throughout the document is "demise" and "lease," which are both indicative of the intent of the parties that the document was indeed a lease."). The agreements here, however, contain no such language (*See* Dkt. #62-6 at p. 2; Dkt. #62-8 at p. 2 (referring to the parties as "Vendor" and "Dealer" and stating that the agreement is "intended to set forth the terms and conditions applicable to the purchase of goods from Vendor and their distribution, marketing, and resale by Best Buy Co., Inc.")). The agreements also do not identify any specific piece of property to be transferred, nor do they contain a definite and agreed price of rental (*See* Dkt. #62-6; Dkt. #62-8).[8] *See Tex. A&M Univ. 12th Man Found.*, 596 F. Supp. 3d at 795 (finding that the evidence failed to demonstrate that the party "intended to dispossess itself" of the alleged premises because the alleged agreements asserted by the plaintiffs "don't identify any specific piece of property to be transferred."); *Woodmark Aus. Ltd. P'ship v. Coinmatic, Inc.*, No. 07-06-0054-CV, 2007 WL 4339724, at *3 (Tex. App.—Amarillo Dec. 11, 2007, no pet.) (explaining that prerequisites of a valid lease require, *inter alia*, that the agreement "fixed a definite and agreement price [of rental] and manner of payment." (citing *Vallejo v. Pioneer Oil Co.*, 744 S.W.2d 12, 14 (Tex. 1988)). Finally, Best Buy's detailed control over Apple's activities in, and use of, the Apple Shop under the agreements terms are inconsistent with Apple having acquired a leasehold interest in the Apple Shop space (*See, e.g.*, Dkt. #62-2 at ¶ 13; Dkt. #62-3 at ¶ 14 (showing, among other things, that "Best buy can permanently close storefronts that contain Apple Shops";

---

[8] The Court finds that Plaintiffs' argument that Apple leases the Apple Shops because it is, for all practical purposes, paying rent for the spaces by paying for all costs necessary to install and maintain the Apple Shops is without merit (*See* Dkt. #139 at pp. 20, 40). The Supreme Court has long defined "Rent" as follows: "Rent is 'a fixed sum, or property amounting to a fixed sum, to be paid at stated times for the use of the property; it does not include payments, uncertain both as to amount and time, made for the cost of improvements.'" *M.E. Blatt Co. v. United States*, 305 U.S. 267, 277 (1938). Here, the Court finds that a one-time up-front payment of the installation costs as well as payment of any potential (but not certain, fixed, or definite) maintenance costs clearly do not fall within this definition.

that "Best Buy sets the hours of operations for its stores"; and that "Best Buy controls who can be present in its stores and has a right to remove Community Specialists from Best Buy's stores").

Instead, what is alleged here is best understood as a license, which is "a privilege to go on premises for a certain purpose, but does not operate to confer on, or vest in, licensee any title, interest or estate in such property." *Arms of Hope v. City of Mansfield*, No. 4:23-CV-00131-O, 2026 WL 473041, at *5 (N.D. Tex. Feb. 19, 2026). Specifically, the Addendum to the Vendor Agreement, by its express terms, only permits Apple to enter the Apple Shops for certain limited purposes, which is a defining characteristic of license (*See* #62-7 at p. 4 (stating that Best Buy shall provide "required access . . . at times pre-arranged between Apple and [Best Buy] . . . *to meet the requirement of this Addendum*, including the install of the Apple Store Configuration, conduct site surveys, and maintain or repair the Apple Instore Configuration" as well as "at agreed times to push content and software updates to Apple Product on display; and to review the connections to confirm internet access and technical requirements of the Instore Configuration can be met.")). Thus, the Court finds that the nature of the rights granted to Apple are those of license, rather than a lease. *See, e.g.*, *Tarrant Reg'l Water Dist. v. Granger*, No. 02-03-00195-CV, 2024 WL 1100786, at *5 (Tex. App.—Fort Worth Mar. 14, 2024, no pet.) (finding that the agreement at issue was a license rather than a lease since "[i]t clearly and unmistakably provides that [defendant] is receiving a non-exclusive right to use the [plaintiff]'s property for a limited time for a limited purpose.").

Therefore, Plaintiffs have not sufficiently demonstrated that Apple leases the Apple Shops in the district. Accordingly, the Court finds that this factor weighs against finding that the Apple Shops within the district are the places of Apple.

### 2. Apple Does Not Exercise Attributes of Possession or Control over the Apple Shop Locations

Plaintiffs argue that even if Apple does not own or lease the Apple Shop spaces from Best Buy, it exercises other attributes of possession or control over the Apple Shops sufficient to make venue proper in this district (Dkt. #139 at pp. 23, 41). Plaintiffs cite several provisions of the Addendum to the Vendor Agreement between Apple and Best Buy to support their contention that Apple exercises plenary control over the Apple Shops (Dkt. #139 at p. 41). These contractual provisions provide Apple with control over (1) the design and layout of these Apple Shops, including the fixtures, products, shelves, cables, product buckets, and other elements; (2) the installation of the Apple Shops; (3) the signage, point of sale materials, and Community Specialists; (4) the operation of the Apple Shops including (i) which products are displayed, including ensuring they are functional, and what software content is loaded on those demonstration units, (ii) the replenishment of Apple products in the Apple Shop shelves, and (iii) the staffing of the Spaces, by both Apple and Best Buy employees, and the training they receive; (4) any proposed or desired relocation of the Apple Shop locations; and (5) the cleaning, maintenance, and overall appearance of the Spaces (Dkt. #139 at p. 41).

The Court is not convinced that Apple exercises the necessary degree of control to establish that the Apple Shops in this district are the places "of the defendant." Plaintiffs' arguments are far too narrow to address the substance of the possession and control inquiry. Under the Addendum to the Vendor Agreement, Best Buy and Apple must *mutually agree* upon the configuration of the Apple Shops; the date of installation; and the decision to disassemble, move, or relocate the Apple Instore Configuration (Dkt. #62-8 at pp. 4–5). These facts illustrate that Apple did not contract for exclusive control over the Apple Shops once installed. *Cf. Seven Networks, LLC*, 315 F. Supp. 3d at

965 (finding that the alleged place of business are places "of the defendant" where the "[defendant]'s ownership of the server and its contents is *absolute*, as is its control over the server's locations, once installed." (emphasis added)). Moreover, the evidence shows that Apple does not exhibit any sort of control over the Apple Shops or the products contained therein once they are installed in the Best Buy locations (*See* Dkt. #62-8 at p. 4 (providing that "[o]wnership of fixtures and other physical property associated with the Apple InStore Configuration and risk of loss or damage to Apple InStore Configuration is transfered to [Best Buy] upon installation at the [Best Buy location]; and that "[Best Buy] will solely determine retail pricing for Authorized Products")). These facts further demonstrate a lack of control by Apple over the Apple Shops. *See AptusTech LLC v. Trimfoot Co., LLC*, No. 4:19-CV-00133-ALM, 2020 WL 1190070, at *4 (E.D. Tex. Mar. 12, 2020) (finding that the defendant did not exercise any attributes of control over the alleged place of business because defendant does not "exhibit any sort of control over the products once they are in the building" of the independent retailers). Lastly, Best Buy is solely responsible for setting the hours of operation for its stores, and thus Apple's operations at the Apple shops are contingent on Best Buy's operating hours (Dkt. #62-3 at ¶ 14). This shows that Best Buy, not Apple, exercised control over both the Apple Shops and their interiors. *See Auguste v. Elementree Inc.*, No. 3:23-CV-0362-B, 2024 WL 264687, at *4 (N.D. Tex. Jan. 24, 2024) (holding that third-party Target stores within the district were not places of business of the defendant because the defendant's operations therein were "contingent on Target's operating hours").

Therefore, Plaintiffs have not sufficiently demonstrated that Apple exercises any attributes of possession or control over the Apple Shops in the district. Accordingly, the Court finds that this factor weighs against finding that the Apple Shops within the district are the places of Apple.

### 3.    Apple Does Control the Location of Employees Residences

Plaintiffs argue that living in this district is a *de facto* requirement for many Community Specialists because they must "live within 60 miles of most of [their] locations" and must get Apple's permission before moving outside the district (Dkt. #139 at p. 43). The Court agrees. It is clear from the record that Apple conditioned employment on its employees continued residence in the district. For example, the Channel Retail Policy Book contains explicit mandatory language regarding the location of Apple's Community Specialists residence. The section entitled "Home Address Change" provides that Community Specialists "must live within 60 miles of most of [their] locations" (Dkt. #139-6 at p. 18).[9] That same section also provides that if a Community Specialist plans to move they "must inform [their] Manager to discuss it before moving" and that "[a]pproval of the new location will be *required* to continue in the Community Specialists position" (Dkt. #139 at p. 18). The existence of this policy was further confirmed by the deposition testimony of one of Apple's Community Specialists in the district (*See* Dkt. #139-13 at p. 15 ("Q. And is there a policy now that if you were going to move, you would need to notify your manager? A. Yes. Q. And would you need to get permission from your manager before you would move? A. Yes.")). This fact alone weighs in favor of finding that Apple conditions its Community Specialists employment on their continued presence in the district. *Cf. GreatGigz Sols., LLC*, 2021 WL 4691145, at *3 (finding that the defendant does not condition its employee's employment on remaining a resident of the district where its employees "are not required to obtain prior permission from [defendant] if they wish to move to one of [defendant]'s several U.S. offices."). In addition, the undisputed evidence

---

[9]    Moreover, this requirement regarding the location of Apple's Community Specialists residence was also specifically listed as one of the requirements for the position in the official job posting (*See* Dkt. #139-46 at p. 2 (explaining that as Apple's Community Specialist for Mckinney, Texas, "you will need to live within 60 miles of the job posting location.")).

also shows that at least five of Apple's Community are required to live in the district as a result of this policy (*See* Dkt. #139-108 at p. 2; Dkt. #139-109 at p. 2; Dkt. #139-110 at p. 2; Dkt. #139-111 at p. 2; Dkt. #139-112 at p. 2 (showing five Apple Community Specialists residing in the district including Plano, Anna, Tyler, Denison, and Beaumont, Texas)).[10] This too weighs in favor of such a finding. *See TMT Sys., Inc. v. Medtronic, Inc.*, No. 6:20-CV-00973-ADA, 2021 WL 5316411, at *4 (W.D. Tex. Oct. 19, 2021) (finding that the defendant conditioned employment on its employees continued residence in the district where plaintiff presented evidence showing that "[defendant] requires its 20 employees to work at the San Antionio facility.").

Even if Apple's Community Specialists employment is not expressly conditioned on residing in the district, the existence of this policy still weighs in favor of finding that these are places "of the defendant." Apple's policy setting a 60-mile restriction on its Community Specialists residences shows that having a presence in the district is important to Apple's business. *See In re Cray*, 871 F.3d at 1365 (identifying relevant considerations to the "of the defendant" inquiry are whether Apple "believed that a location within the [district] to be important to the business performed."). Since Apple no longer operates any physical retail locations in the district, Apple's business specifically depends on its Community Specialists being able to be visit Apple Shops with a "high level of frequency" (*See* Dkt. #139-5 at p. 7 ("Community Specialists will be assigned a Community that is walkable and/or drivable. Having doors close to each other will ensure

---

[10]  It is true, as Apple argues, that its policy requiring Community Specialists residence within 60 miles of the stores they serve may not necessitate living in the district and, in reality, Community Specialists could reside in Louisiana or other districts while remaining within 60 miles (Dkt. #164 at p. 11 n.3). However, Apple has failed to submit evidence demonstrating that such was the case. Thus, Plaintiffs' showing that at least five of Apple's Community Specialists are required to live in this district as a result of this policy remains uncontroverted. *See Clasen*, 2015 WL 9489507, at *3 ("To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue.").

Community Specialists are able to visit doors with a high level of frequency while focusing on engaging with customers, direct selling, building store-level relationship, sharing knowledge with partner store leaders and teams, demoing products, and ensuring our merchandising presence is up to Apple's brand standards.")). Indeed, as the policy emphasizes, it would be extremely difficult for Community Specialists to fulfill their on-site job requirement at the various Apple Shop locations within the district if they lived more than 60 miles from the locations they served (*See* Dkt. #139-6 at p. 18 ("To comply with the role's requirements and be in stores with partners weekly, Wednesday through Sunday, you must live within 60 miles of most of your locations.")). In this respect, the present case differs from *In re Cray Inc.*, where "no evidence show[ed] that [the defendant] believed a location within the [district] to be important to the business performed." 871 F.3d at 1365. Thus, the Court finds that, at the very least, Plaintiffs have presented evidence that satisfies the question *Cray* left open. *See IOT Innovations LLC v. Monitronics Int'l, Inc.*, No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *4–5 (E.D. Tex. Sept. 11, 2023) (holding that even if the defendant's employees employment was not conditioned on living in the district, there is no question defendant's "business specifically depend[s] on employees being physically present at places in the district" since defendant's business includes "installation and maintenance of hardware at customer locations" which is carried out by authorized service dealers located in the district), *report and recommendation adopted*, No. 2:22-CV-00432-JRG-RSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

Therefore, Plaintiffs have sufficiently shown that Apple conditioned its Community Specialists employment on residing in the district, or at least showing that Community Specialists

24

having a presence in the district is important to Apple's business. Accordingly, the Court finds that this factor weighs in favor of finding that the Apple Shops within the district are the places of Apple.

**4.        Apple Does Not Hold the Apple Shops as its own Place of Business**

Plaintiffs argue that Apple holds the Apple Shops out as its own place of business because (1) Apple's website proudly refers to the Apple Shops as "our Apple Shops within partner retailers," not as Best Buy's Apple Shops, and (2) when customers enter the Apple Shops, they are entering an "Apple-designed retail outlet," that is stocked with Apple products, displays only Apple signage and point-of-sale materials, and is staffed by Apple Community Specialists who introduce themselves as Apple's employees and wear Apple paraphernalia (Dkt. #139 at p. 44).

As to Plaintiffs' first argument, the Court finds that it must be rejected. It is true, as Plaintiffs contend, that listing the alleged place of business on the defendant's website may establish that it holds that place out as its own place of business. *See In re Cray*, 871 F.3d at 1363 (identifying potentially relevant inquires when considering "a defendant's representations that it has a place of business in the district" are whether "the defendant lists the alleged place of business on a website."). But this is not what the evidence showed. Instead, the evidence confirms that Apple was holding out these locations as Best Buys and not as Apples. For example, Apple's website includes both a "Find a Store" search feature as well as an "other retailer" search feature (Dkt. #62-1 at ¶¶ 21-22). The website's "Find a Store" search feature points customers only to Apple Store locations, not Apple Shops at Best Buy locations (Dkt. #62-1 at ¶¶ 19–21). To find the Apple Shop locations Plaintiffs rely on (i.e., Apple Shops), one must scroll to the bottom of Apple's website and select the "other retailer" search feature (Dkt. #62-1 at ¶ 22). The website's "other retailer" search feature points customers only to third-party reseller locations, including Apple Shops, and specifically identifies these locations as such (Dkt. #62-1 at ¶ 25 (depicting screenshot

25

of Apple's website listing Apple Shops at Best Buy as "BEST BUY – 0202")). It is well-settled, however, that simply listing the names of third-party retailers on the defendant's website is insufficient to establish that location is a place "of the defendant." *See AptusTech LLC*, 2020 WL 1190070, at *4 ("[Defendant] listed stores within the district on its website under a 'store locator' tab. However, the locations all have the names of the independent retailers on them. The website listings do not indicate that they are [defendant's] stores. Thus, [defendant] does not attempt to hold these stores out as its own on its website."); *Auguste*, 2024 WL 264687, at *4 ("Listing the DFW-based Target stores on the [defendant]'s website does not transfer the stores into places of [defendant]."). Thus, the Court finds that Apple does not attempt to hold these Apple Shops as its own places of business on its website.

With regard to Plaintiffs' second argument, the Court finds that it is similarly insufficient and must be rejected. When looking to the use of signage at the alleged place of business, the Court must consider whether signage supports a conclusion that the defendant is holding out the place of business as its own. *See In re Cray*, 871 F.3d at 1364; *see also In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018) (noting that *Cray* requires the signage to be "associated with or on the building itself" and represent the space as "belonging" to the defendant). There is no evidence supporting or tending to support such a conclusion here. Indeed, all of the evidentiary support on which Plaintiffs rely merely show that the Apple Shops *within* Best Buy stores feature Apple related signage, displays, promotional materials, and in-store advertising (*See* Dkt. #139 at pp. 20, 25, 27, 38, 44). This is simply not enough to establish that Apple holds out the Apple Shops as its own place of business. *See Ice Rover, Inc. v. Lifetime Prods., Inc.*, No. 6:22-CV-00797-ADA-DTG, 2023 WL 5835186, at *2 (W.D. Tex. Sept. 7, 2023) (finding that the signage does not represent the

26

alleged place of business as belonging to the defendant because the signage that plaintiff's rely on "is merely displays, promotional materials, and in-store advertising" as opposed to signage "associated with or on the building itself"). Plaintiffs instead must point to evidence showing that Best Buy displayed Apple signage *on or outside* the Best Buy locations containing Apple Shops. *See, e.g.*, *Fractus, S.A. v. ZTE Corp.*, No. 2:17-CV-00561-JRG, 2018 WL 11363369, at *3 (E.D. Tex. Sept. 28, 2018) (holding that the evidence does not support a finding that the alleged place of business is a place of business of the defendant because there is no "defendant signage on the building," and thus, "no signage indicating that [defendant] owns or operates out of the building."); *Auguste*, 2024 WL 264687, at *4 (holding that the evidence fails to show that the defendant "marketed, advertised, or represented the Target locations were [defendant]'s places of business" because neither "[defendant] nor Target displayed any [defendant] signage on or outside [the alleged] Target stores"). They have not done so. Thus, the Court finds that this advertising within the Apple Shops is not sufficient to establish that Apple holds the Apple Shops out as its own place of business. *See In re Cray Inc.*, 871 F.3d at 1364 ("[T]he mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient.").

Therefore, Plaintiffs have not sufficiently demonstrated that Apple held out the Apple Shops in the district as its own places of business. Accordingly, the Court finds that this factor weighs against finding that the Apple Shops within the district are the place of Apple.

     **5.    The Nature of the Business at the Apple Shops is Distinct from the Business at Apple's Retail Stroes**

Plaintiffs argue that the nature and activity of the Apple Shops in the district mimics Apple's other places of business in other venues (Dkt. #139 at p. 44). The Court disagrees. As an initial matter, the Court notes that the appropriate comparison here is between the Apple Shops in

the district and Apple's other places of business in other venues including, *inter alia*, its headquarters or physical Apple Stores. *See In re Cray*, 871 F.3d at 1364 (comparing "alleged place of business of the defendant in the district" against "other places of business of the defendant in other venues"); *see also Auguste*, 2024 WL 264687, at *4 (holding that the "appropriate comparison" is between the defendant's alleged place of business in the district and its headquarters in San Fransico). Relevant here are Apple's own Apple Stores and Apple's headquarters and corporate offices located in California. Starting with comparing the nature and activity of the Apple Shops in this district with Apple Stores, it is clear that Apple did not "actually engage in business" from the Apple Shops in the district. The Apple Stores, unlike the Apple Shops, are designed to provide a different experience to its customers that is focused solely on Apple products and related accessories (*See* Dkt. #62-2 at ¶ 15 (explaining that in contrast to Apple Stores the Apple Shops are "designed to facilitate cross-selling of products made by different manufactures"). Moreover, Apple plays a much larger role in their operations at the Apple Stores than it does at the Apple Shops. For example, unlike at the Apple Shops, Apple leases the storefronts, owns the merchandise, controls the inventory, provides security, and sets the hours of operation at Apple Stores (Dkt. #62-2 at ¶ 15). Next, comparing the nature and activity of the Apple Shops against Apple's operations at its headquarters and corporate offices located in California, it is also apparent that Apple did not "actually engage in business" from the Apple Shops in the district. Taking Plaintiffs' allegations as true, at least five Apple employees currently live in the district, each of whom is solely responsible for focusing on driving sales (*See* Dkt. #139 at pp. 26, 31). By contrast, Apple has software engineering teams responsible for development of its Xcode software and its associate functionalities at its corporate headquarters in Cupertino, California

(Dkt. #62 at p. 28).[11] Thus, the Court finds that the nature and activity of Apple's alleged place of business in this district compared to that of Apple's other places of business in California indicates that the alleged place of business here "is not really a place of business at all." *In re Cray*, 871 F.3d at 1364. Accordingly, the Court finds that this factor weighs against finding that the Apple Shops within the district are the places of Apple.

* * *

Based on the foregoing, the Court finds that Plaintiffs have failed to adequately show that the Apple Shop locations within the district are the places of Apple as required under the third *Cray* factor. *See In re Cray Inc.*, 871 F.3d 1363. Thus, venue is not proper in this district under Section 1400(b). *Id.* at 1360 ("If any statutory requirement is not satisfied, venue is improper under § 1400(b)."). Indeed, another court in this district recently reached the same conclusion in two cases akin to this one. *See Advanced Coding Techs. LLC.*, Civil Action No. 2:24-cv-572 (E.D. Tex. Sept. 29, 2025), Dkt. #79 at p. 1 (finding that "the Apple Shop locations have not been adequately shown to be place of Apple."); *Avant Location Techs. LLC*, Civil Action No. 2:24-cv-757 (E.D. Tex. Sept. 29, 2025), Dkt. #93 at p. 1 (same). Accordingly, the only remaining question for this Court to decide is whether to dismiss this case or transfer it to a proper venue.

---

[11] Furthermore, while five of Apple's employees currently live in the district, Apple's Linkedin profile shows that it has over 10,000+ employees, all of whom work in Apple's Cupertino, California headquarters. *See Apple*, LINKEDIN, https://www.linkedin.com/company/apple (last visited July 19, 2026). Courts in this circuit have routinely found that this type of distinction between the defendant's alleged place of business in the district with its other places of business shows that the defendant does not have a regular and established place of business in the district. *See, e.g.*, *GreatGigz Sols., LLC*, 2022 WL 432558, at *5 (finding that the defendant does not have a regular and established place of business in the district where the defendant has "17 remote employees [that] currently live in the [d]istrict" while having "over 1,000 other employees—notable, nearing 500 in the surrounding Phoenix, Arizona area and nearly 300 in Los Angeles, California."); *Zilkr Cloud Techs., LLC v. RingCentral, Inc.*, No. 3:21-CV-2807-S, 2022 WL 1102863, at *6 (N.D. Tex. Apr. 12, 2022) (finding that the defendant does not have a regular and established place of business in the district where the defendant has "around 30 remote employees [that] currently live in the [d]istrict" while having "over 1,300 employees nationwide—626 of whom work in [d]efendant's Belmont, California headquarters.").

**III.    Whether the Court Should Dismiss this Action or Transfer it to the Southern District of California Proper Venue**

Because venue is not proper in this district, the Court must decide whether to dismiss this case or transfer it to an appropriate judicial district. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). "The decision whether a transfer or dismissal is in the interest of justice rests within the sound discretion of the district court." *Personal Audio LLC*, 280 F. Supp. 3d at 936; *see also Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 n.1 ("[I]t is enough simply that the district judge, in the sound exercise of discretion, concludes that transfer is in the interest of justice, as many courts have concluded."). Generally, however, the interest of justice requires that the Court transfer the case to the appropriate judicial district rather than dismiss it. *Personal Audio LLC*, 280 F. Supp. 3d at 936.

The Court finds that transfer of this case is "in the interest of justice" for several reasons. First, the parties have engaged in extensive jurisdictional discovery and motion practice. Additionally, fact discovery in this case is well underway and is set to close in less than two weeks (*See* Dkt. #175 at p. 1). A transfer here would be in the interest of justice because it would avoid the costs and delay that would likely result from dismissal and refiling. *See Moore v. C.R. England, Inc.*, No. 2:25-CV-00598-JRG-RSP, 2026 WL 873226, at *2 (E.D. Tex. Mar. 11, 2026) ("Given that the case has already entered discovery, the interest of justice favors transfer, rather than dismissal, as to prevent the parties from 'starting over.'"); *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013) (holding that transfer, rather than dismissal, was in the interest of justice because the parties had already engaged in extensive jurisdictional discovery and motion practice). Second, Apple

would not be unduly burdened by the transfer of this case, as it would be tried in a state where they conduct business and reside. *See Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F. Supp. 3d 560, 568 (E.D. Tex. 2022) (finding that the interest of justice favors transfer of the action where "[defendant] would not be unduly burdened by, and in fact agrees to, trying this case in its home venue."). Third, it will be in the interest of justice to transfer this case rather than dismiss it where, as here, both parties agree about an appropriate venue for transfer (*See* Dkt. #62 at p. 30; Dkt. #139 at p. 47). *Compare Multimedia Techs. Pte. Ltd. v. Vizio, Inc.*, No. 2:23-CV-00124-JRG-RSP, 2024 WL 5348400, at *3 (E.D. Tex. Dec. 27, 2024) (finding that it will be in the interest of justice to transfer the case rather than dismiss it because "[b]oth parties agree that the Central District of California would be an appropriate venue."), *with AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-0072, 2021 WL 6616856, at *7 (E.D. Tex. Nov. 10, 2021) (declining to transfer the case because the parties disagreed about an appropriate venue for transfer). Under these circumstances, the Court finds that it is in the interest of justice to transfer, rather than dismiss, this action.

Having found that this case should be transferred, the Court must determine the proper transferee district. When deciding where to transfer under Section 1406(a), the Court may consider the 28 U.S.C. § 1404(a) convenience factors. *See Brooks & Baker, LLC v. Flambeau, Inc.*, No. 2:10-CV-146-TJW-CE, 2011 WL 4591905, at *6 (E.D. Tex. Sept. 30, 2011). Those factors, however, do not control the Section 1406(a) transfer analysis. *See Uniloc USA, Inc. v. Nutanix, Inc.*, No. 2:17-CV-00174-JRG, 2017 WL 11527109, at *5 (E.D. Tex. Dec. 6, 2017) ("[P]rior orders under § 1404(a) are not binding or controlling in a § 1406 transfer analysis, which does not include the same private and public interest considerations or convenience as those involved in a § 1404(a) analysis.").

Rather, Section 1406(a) *only* requires that a district court transfer the case to a district "in which [the case] could have been brought." 28 U.S.C. § 1406(a); *see also Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2025 WL 2825980, at *13 (N.D. Tex. Sept. 30, 2025) (explaining that in deciding where to transfer under Section 1406(a) "[t]he Court need not strain to determine the best forum."). Thus, the Court must determine whether Plaintiffs could have filed this action in the Southern District of California. The parties do not dispute that this action could have been brought in the Southern District of California pursuant to Section 1400(b) (*See* Dkt. #62 at p. 30; Dkt. #139 at p. 47). The Court agrees. Apple is incorporated in California and maintains Apple Stores in San Diego, California, which is located within the Southern District of California (*See* Dkt. #62-20 at p. 2; Dkt. #62-21 at p. 2 (Apple's website showing Apple Store locations in San Diago, California)). Accordingly, the Court finds that this action could have been brought in the Southern District of California under Section 1400(b). *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

## CONCLUSION

It is therefore **ORDERED** that Defendant Apple Inc.'s Renewed Motion to Dismiss (Dkt. #62) is hereby **GRANTED**. Under these unique facts, the Court finds that the Apple Shop locations in Best Buy stores are physical places in the district that are regular and established places of business. *In re Cray Inc.*, 871 F.3d at 1360. However, under these unique facts, the Court finds that the Apple Shop locations have not been adequately shown to be places of Apple. *Id.*

It is further **ORDERED** that, in the interest of justice, the above-captioned case should be and hereby is **TRANSFERRED** to the United States District Court for the Southern District of California. 28 U.S.C. § 1400(b).

   **IT IS SO ORDERED.**

   **SIGNED this 23rd day of July, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE